DEPOSITION OF:  PAT BEU

```
 1        IN THE UNITED STATES DISTRICT COURT
               DISTRICT OF NEBRASKA
 2
   ------------------------------
 3 LISSETTE LARIOS ROOHBAKHSH,    )
   as personal representative     )
 4 of the ESTATE OF FATIMA        ) Case No. 8:17-cv-00031
   LISSETTE LARIOS and on         ) DEPOSITION OF;
 5 behalf of next of kin,         ) PAT BEU
                                  )
 6        and                     )
                                  )
 7 NELSON LARIOS, as next of kin, )
                                  )
 8        Plaintiffs,             )
                                  )
 9        vs.                     )
                                  )
10 BOARD OF TRUSTEES OF THE       )
   NEBRASKA STATE COLLEGES,       )
11        and                     )
                                  )
12 CHADRON STATE COLLEGE,         )
                                  )
13        Defendants.             )
   ------------------------------
14
15
16    DATE:  May 8, 2018 at 12:59 p.m.
17    PLACE:  Chadron State College
                Miller Hall, Room 109
18              1000 Main Street
                Chadron, NE  69337
19
20
21
22
23 Reported By:    Jacqueline K. Weller
                   Registered Professional Reporter
24                 Black Hills Reporting
                   1601 Mt. Rushmore Rd., Ste. 3280
25                 Rapid City, SD  57701
                   605.721.2600
                                              1
```

**EXHIBIT 12**

```
 1            A P P E A R A N C E S
 2 Representing the Plaintiffs:
       MR. MARTIN GOULD
 3     Romanucci & Blandin
       Attorneys at Law
 4     33 N. LaSalle Street, 20th Floor
       Chicago, IL  60602
 5
   Representing the Defendants:
 6     MR. THOMAS E. JOHNSON
       Johnson & Tabor
 7     Attorneys at Law
       11932 Arbor St., Suite 101
 8     Omaha, NE  68144
 9            I N D E X
10 WITNESS                              PAGE
       PAT BEU
11     EXAMINATION BY MR. GOULD            3
12          E X H I B I T S
13 EXH. NO.  DESCRIPTION                PAGE
14    1      Curriculum Vitae             18
      2      Email stream starting from   73
15           Sherri Simons, January 21, 2015
             re Fatima Larios
16    3-A    April 15, 2018 email to Mr. Johnson  80
             and Ms. Brown from Mr. Gould,
17           re deposition schedule and documents
      3-B    May 4, 2018 email to Mr. Gould  80
18           from Ms. Brown re schedule and
             documents
19    4      Chadron State College Emergency  86
             Action Plan, 10/17
20    5      Campus Safety Presentation outline  101
      6      PowerPoint presentation re domestic 103
21           violence and sexual assault
      7      PowerPoint presentation re success 106
22           at school for athletes
23 REQUEST OF COUNSEL:        PAGE:LINE
                              69   15
24                            86   10
25
                                              2
```

```
 1                                    PAT BEU,
 2 called as a witness herein, having been first duly
 3 sworn, was examined and testified as follows:
 4 EXAMINATION BY MR. GOULD:
 5 Q    Can you please state and spell your first name
 6      for the record.
 7 A    Pat Alan Beu.  P-A-T; A-L-A-N; B-E-U.
 8 Q    How old are you, sir?
 9 A    62.
10 Q    Have you ever taken a deposition before?
11 A    I have.
12 Q    On how many occasions?
13 A    Once.
14 Q    Under what circumstances?
15 A    The school had been sued, and I was one of the
16      witnesses.  Or, I was someone that was involved
17      with the process.
18 Q    Okay.  When was this lawsuit?
19 A    1987 or '88 or '89, maybe.
20 Q    What was your position -- strike that.
21      Were you working at Chadron State College?
22 A    No.
23 Q    Where were you working?
24 A    The College of Great Falls, Great Falls,
25      Montana.
                                              3
```

```
 1 Q    What was your position back then?
 2 A    Learning resource counselor.
 3 Q    What were you a witness to?
 4 A    I provided tutorial services to a student who
 5      had been injured, and the student had sued the
 6      school in the injury, and so they were asking me
 7      about services provided.
 8 Q    What kind of injury was it?
 9 A    Leg -- the student had been disabled and had
10      tripped and fallen on the sidewalk, and so it
11      hurt the leg, if I recall.
12 Q    And what was the substance of your testimony?
13 A    I provided assistance, tutorial services,
14      assistance so that she could continue in school
15      and be successful that semester.
16 Q    Okay.  Do you know if you're named as a witness
17      in any other lawsuits outside of the Fatima
18      Larios case currently?
19 A    No.
20 Q    Before we get started, I'm going to go over some
21      of the rules of the deposition so we're all on
22      the same page.  Okay?
23      As you can see, we have a court reporter
24      here, Jacque.  She's going to be transcribing
25      everything we say.  For her sake and so the
                                              4
```

```
 1        MR. JOHNSON:  Object; foundation.
 2        Go ahead.
 3  A  I'm sorry.  There was a way in which you could
 4     refer to counselors students that you may deem
 5     to be depressed or otherwise at risk.  It went
 6     right to the counselors.  It was not necessarily
 7     directed to anybody else, but you could do that.
 8        Oftentimes those referrals, though, did not
 9     wait for the system, the early alert system.  If
10     you were aware of someone who was depressed or
11     someone at risk, you didn't need a computer
12     program to facilitate that process.
13        You would get on the phone or you would go
14     visit with the counselors and say, I'm working
15     with a student that I'm concerned about.
16     Members of the faculty knew that and they did
17     that.
18  Q  (BY MR. GOULD:)  And when you say you, you're
19     referring to other faculty members or staff at
20     the university?
21  A  Everybody, yes.
22  Q  And they would be the ones that would go to the
23     counselor and say, Hey, look, I have a student I
24     have concerns about because they are depressed
25     or there's some other issue?
                                                41
```

```
 1  A  Correct.
 2  Q  Now were you trained on how to identify students
 3     that had behavioral problems that could result
 4     in self-harm or harm to others?
 5  A  Aside from the formal training of the master's
 6     degree, and I can't even necessarily think
 7     specifically in the doctorate necessarily.  But
 8     aside from that, no formal training regarding
 9     that.
10  Q  Did you receive training through your
11     experiences as an educator over the last 20-plus
12     years?
13  A  I would say --
14        MR. JOHNSON:  Object; form.
15  A  I'd say I received considerable education as it
16     related to students at risk, yes.
17  Q  (BY MR. GOULD:)  Can you tell me some of the
18     things you would look for to help -- strike
19     that.
20        What sorts of things would you look for to
21     determine whether or not a student was at risk
22     of harming themselves or others?
23        MR. JOHNSON:  Object; foundation.
24  A  Certainly depression, anxiety, high anxiety,
25     those types of behaviors.
                                                42
```

```
 1  Q  (BY MR. GOULD:)  What about violence to other
 2     students?
 3        MR. JOHNSON:  Object; foundation.
 4  A  I -- I guess potentially --
 5  Q  (BY MR. GOULD:)  Would that be considered a red
 6     flag of several --
 7  A  At risk of suicide?
 8  Q  At risk of some sort of emotional or
 9     psychological problem with the student?
10        MR. JOHNSON:  Object; foundation.
11  A  I'd say, yes, that's...
12  Q  (BY MR. GOULD:)  Lashing out or violence towards
13     other students would be one indicator that a
14     student has some sort of emotional or
15     psychological problem; right?
16        MR. JOHNSON:  Object; foundation.
17  A  Possibly.
18  Q  (BY MR. GOULD:)  Then from June 2014 to present,
19     you've been the senior director of student
20     affairs at Chadron State College; right?
21  A  That is correct.
22  Q  Can you tell me what your primary job
23     responsibilities are.
24  A  Primarily I'm involved with student conduct, to
25     educate and oversee the students who are either
                                                43
```

```
 1     educated regarding the code of conduct or aware
 2     of the code of conduct, or if they break the
 3     code of conduct, that procedures are in place to
 4     let them know that they are at risk, that they
 5     could -- that it's against board policy.
 6  Q  If the student breaks the code of conduct, they
 7     are at risk of what?
 8  A  Depends on what the breaking of the code was.
 9  Q  So that could vary from discipline from the
10     school up and to being arrested criminally for
11     something; right?
12        MR. JOHNSON:  Object; foundation and form.
13  A  Well, it goes all the way down to where they are
14     at in the residence halls.  If they cover up a
15     fire alarm so they can have a smoke, that's
16     against the code of conduct.  So, yeah.
17  Q  (BY MR. GOULD:)  Here it says that you served as
18     primary campus behavioral conduct officer.
19  A  That is correct.
20  Q  Was that your role since June 2014?
21  A  Yes.
22  Q  Can you explain to me what the job
23     responsibilities are of the campus behavioral
24     conduct officer?
25  A  My job responsibilities include meeting with
                                                44
```

DEPOSITION OF:  PAT BEU

```
 1              E R R A T A   P A G E
 2   I, the undersigned, PAT BEU, have read the foregoing
 3   transcript and, to the best of my knowledge, said
 4   transcript is true and accurate (with the exception of
 5   the following corrections listed below):
 6   PAGE/LINE    CORRECTION AND REASON FOR CORRECTION
 7   _____
 8   _____
 9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22   SIGNATURE_____DATE _____
23
24   See attached sheet(s) for additional information:
     ___Yes___No
25
                                               117
```

```
 1   < Dates >.
     12/21/17 105:24.
 2   2.0 may 35:2.
     2015, January 15, 16 95:15.
 3   April 15, 2018 2:27.
     August 2014 52:9.
 4   December 16, 2021. 118:23.
     December, november 88:7.
 5   February 1, 2015 82:8.
     January 15 97:4.
 6   January 15, 2015 82:8.
     January 16, 2015 97:4.
 7   January 20, 2015 97:2.
     January 2015 52:6, 52:9, 52:17, 56:10, 76:24, 79:25,
 8      87:23, 89:25, 90:6, 90:18.
     January 21, 2015 2:25, 74:2, 76:11, 82:21, 87:5, 92:6,
 9      92:21, 93:20, 95:11, 97:7, 100:10, 100:13, 112:14.
     January 21st 89:22.
10   January 31, 2015 83:2.
     January 31st 89:22.
11   June 2014 43:18, 44:20.
     June, 2018. 118:24.
12   May 4, 2018 2:30.
     May 8, 2018 1:30.
13   November 2014 72:6.
     October 2014 88:8.
14   October 2017 84:22, 84:25.
     October, november 2014 71:20, 72:1.
15   '16/'17 100:6.
     '17 100:6.
16   '82 9:7.
     '84 9:7.
17   '85 9:7.
     '88 3:19, 18:11.
18   '89 3:19.
     /s/ 118:25.
19   .
20   < 1 >.
     1 2:23, 18:1, 97:20.
21   1. 18:4.
     10 2:43.
22   10/17 2:34.
     100 111:13.
23   1000 1:33.
     101 2:13, 2:35.
24   103 2:36.
     106 2:38.
25   109 1:32.
     11932 2:13.
                                                 1
```

```
 1              C E R T I F I C A T E
 2        I, Jacqueline K. Weller, Registered Professional
 3   Reporter, do hereby attest that said proceedings were
 4   taken by me stenographically and thereafter reduced to
 5   typewriting under my supervision; that the foregoing
 6   transcript is a true and accurate record of the
 7   testimony given to the best of my understanding and
 8   ability.
 9        I further assert that I am neither counsel for,
10   related to, nor employed by any of the parties to this
11   case and have no interest, financial or otherwise, in
12   its outcome; that I have no contract with the parties,
13   attorneys, or persons with an interest in the action
14   that affects or has a substantial tendency to affect
15   impartiality, that requires me to relinquish control
16   of an original deposition transcription or copies of
17   the transcript, or that requires me to provide any
18   service not made available to all parties to the
19   action.
20        I further attest that the witness was duly sworn
21   by Lisa Jamison, a notary public in and for Dawes
22   County, State of Nebraska, prior to the taking of
23   testimony, Notary Expiration, December 16, 2021.
24   Dated this 4th day of June, 2018.
25   /s/ Jacqueline K. Weller
     Registered Professional Reporter
                                              118
```

```
 1   12-1 116:9.
     121 111:13.
 2   12:59 1:30.
     13 73:14.
 3   13-1. 116:10.
     15 2:42.
 4   160 29:13.
     1601 1:46.
 5   17-cv-00031 1:6.
     18 2:23.
 6   180 29:13.
     19- 15:24, 16:23, 18:10.
 7   190 29:13.
     1973 7:2.
 8   1979 8:16.
     1982 9:3.
 9   1982. 8:1, 8:21.
     1984 8:21, 9:5, 15:21, 16:11.
10   1984. 8:3.
     1987 3:19, 18:11.
11   1991 8:5, 13:8, 15:25.
     1992 15:25.
12   1993 18:12.
     1997 27:4.
13   1997. 16:6, 18:12.
     1998 8:6, 14:19, 16:21.
14   1998. 16:24.
     1999 15:23, 16:12, 16:20.
15   .
16   < 2 >.
     2 2:24, 18:15, 73:10, 73:13, 74:8.
17   2. 73:16.
     2.0 33:15.
18   20 111:20.
     20- 32:11.
19   20-plus 42:11.
     2000 15:23, 16:12, 16:20.
20   2004 27:4, 32:23.
     2014 15:17, 32:9, 53:4, 71:16, 84:21, 85:3, 100:25.
21   2014. 15:20, 85:20.
     2014/2015 48:4, 48:22, 49:8, 51:24, 53:25, 59:11,
22      95:5, 98:5, 98:21, 102:8.
     2015 32:9, 87:13, 89:22, 95:15.
23   2017/2018 99:18, 99:20.
     2018 99:16.
24   20th 2:6.
     22 93:11.
25   230 18:24.
     24 23:24, 93:11.
                                                 2
```

117

```
 1              E R R A T A   P A G E

 2    I, the undersigned, PAT BEU, have read the foregoing

 3    transcript and, to the best of my knowledge, said

 4    transcript is true and accurate (with the exception of

 5    the following corrections listed below):

 6    PAGE/LINE      CORRECTION AND REASON FOR CORRECTION

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    SIGNATURE _____ DATE 6/8/18

23

24    See attached sheet(s) for additional information:
         ___Yes ✓No

25
```

BLACK HILLS REPORTING   605.721.2600

Notary Public: Stefani Van Vleet  6/8/18



General Notary - State of Nebraska
STEFANI VAN VLEET
My Comm. Exp. June 11, 2018.