Atkinson-Baker, Inc.
www.depo.com

```
 1              IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEBRASKA
 2

 3   LISSETTE LARIOS ROOHBAKHSH,    )
     as personal representative     )
 4   of the ESTATE OF FATIMA        )
     LISSETTE LARIOS and on behalf  )
 5   of next of kin,                )
                                    )
 6   and                            )
                                    )
 7                                  )
     NELSON LARIOS, as next of kin  )
 8                                  )
             Plaintiffs,            )
 9                                  )
     v.                             ) Case No. 8:17-cv-00031
10                                  )
                                    )
11   BOARD OF TRUSTEES OF THE       )
     NEBRASKA STATE COLLEGES,       )
12                                  )
                                    )
13   And                            )
                                    )
14   CHADRON STATE COLLEGE,         )
                                    )
15           Defendants.            )

16   ---------------------------------------------------------

17                    VIDEOTAPED DEPOSITION OF

18                          RIKKI BOWEN

19                   Monday, October 29, 2018

20   ---------------------------------------------------------

21

22

23   ATKINSON-BAKER, INC.
     (800) 288-3376
24   www.depo.com

25   FILE NO.:    AC0B246
```

Atkinson-Baker, Inc.
www.depo.com

```
 1    APPEARANCES:
 2    For the Plaintiffs:   Mr. Martin Gould
                            Romanucci & Blandin, LLC
 3                          33 N. LaSalle Street
                            Chicago, IL 60602
 4                          312-458-1000
                            mgould@rblaw.net
 5
 6    For the Defendants:   Mr. Thomas E. Johnson
                            Johnson & Tabor
 7                          11932 Arbor Street
                            Suite 101
 8                          Omaha, NE 68144
                            402-506-4444
 9                          tjohnson@johnsontabor.com
10    For the Defendants:   Mr. George E. Martin, III
                            Baird Holm, LLP
11                          1700 Farnam Street
                            Suite 1500
12                          Omaha, NE 68102
                            402-344-0500
13                          gmartin@bairdholm.com
14
      Also Present:
15    Todd Davis          Videographer
```

Page 2

```
               EXHIBITS
NUMBER         DESCRIPTION                PAGE
  1     Plaintiffs' Fourth Supplemental    29
        Rule 26(a) Disclosures

  2     Affidavit of Rikki Bowen           60
```

Page 4

```
 1         The Videotaped deposition of Rikki Bowen was taken by
 2    counsel for the Defendants at the Hilton Garden Inn,
 3    290 Alfred Thun Road, Clarksville, Tennessee, on
 4    Mpnday, October 29, 2018, beginning at 10:16 a.m.,
 5    for all purposes under the Tennessee Rules of Civil
 6    Procedure.
 7         It is agreed that Gina R. Hunter,
 8    Licensed Court Reporter, may swear the witness, take
 9    the deposition, and afterwards reduce the same to
10    typewritten form, and that the reading and signing by
11    the witness is waived.
12         All formalities as to caption, certificate,
13    transmission, filing, et cetera, are waived.  All
14    objections, except as to the form of the questions
15    are reserved to on or before the hearing.
16    ----------------------------------------------------
17                    INDEX
18    RIKKI BOWEN:                              PAGE
19         Examination by Mr. Johnson ...............  5
20         Examination by Mr. Gould ................. 81
```

Page 3

```
 1         THE VIDEOGRAPHER:  This is the legal
 2    video deposition of Rikki Bowen on October the 29th,
 3    2018 at the time reflected on the screen which is 10:16
 4    AM.  The full introduction has been waived.  Court
 5    reporter, would you please we are in the witness.
 6              RIKKI BOWEN,
 7         having first been duly sworn or affirmed,
 8         testified as follows:
 9              EXAMINATION
10    BY MR. JOHNSON:
11    Q.   Good morning, Ms. Bowen.  How are you?
12    A.   I'm good.  How are you?
13    Q.   I'm good.  Thank you for coming in today.  Is
14    it -- is it okay with you if I call you Rikki?
15    A.   Yeah.
16    Q.   Thank you.  Appreciate it.  My name is Tom
17    Johnson, Rikki.  I represent the Nebraska State College
18    System which is the operating entity for Chadron State
19    College.  We've been named as defendants in the lawsuit
20    filed by the family of your friend, Fatima Larios.  Are
21    you generally aware of the existence of that lawsuit?
22    A.   Yes.
23    Q.   How did you first find out --
24    A.   I saw it -- well, I first saw it on -- like
25    online and then I had a bunch of her friends from
```

Page 5

2 (Pages 2 to 5)

Rikki Bowen
October 29, 2018

Atkinson-Baker, Inc.
www.depo.com

---

Page 74:

1  with us that they had to let Fatima go because she
2  wasn't going to play for us anymore. She didn't want
3  to.
4  Q.    And that happened before the season opened?
5  A.    The -- like, we have a preseason, so we still
6  played games, but the actual games that count don't
7  start until March. So played from like when we had our
8  fall season and then we started a few games in January
9  til February until actual season started.
10 Q.    All right. So there are games in January and
11 February, they're just not part of the official season?
12 A.    Right.
13 Q.    You call them the preseason?
14 A.    It's called preseason.
15 Q.    Right?
16 A.    Yeah.
17 Q.    Did that include any road trip anywhere?
18 A.    Yes, it did.
19 Q.    Preseason?
20 A.    Yeah.
21 Q.    Where did you go?
22 A.    I don't recall. I've played so many games. I
23 don't know that -- that particular freshman year.
24 Q.    Was it normal to take the preseason trip to
25 Florida?

Page 75:

1  A.    Oh, no. We've never been to Florida.
2  Q.    Okay. So did Fatima start in some of the
3  preseason games?
4  A.    She started in every game when she played.
5  Q.    Okay. That's what I'm trying to get at because
6  in paragraph 19 of the affidavit you say "Fatima and I
7  were the only freshmen to start on the varsity softball
8  team." But as I understand it, Fatima did not start on
9  any regular season games because she was off the team by
10 then, correct?
11 A.    Yeah. But what I mean is the games we did
12 play, she did start and no other freshmen did.
13 Q.    Okay. And those would all be preseason games?
14 A.    Yes.
15 Q.    And do you know approximately how many
16 preseason games there were?
17 A.    I don't know. Because there were tournaments
18 so we'd play maybe five games a weekend or four games.
19 Q.    So could there have been as many as 10 or 20
20 preseason games?
21 A.    Probably closer to 10, 15.
22 **Q.    You remember Fatima getting into a batting**
23 **slump during that period?**
24 **A.    Yeah, she wasn't that great of a hitter.**
25 **Q.    Well, it was a matter of fact, she was hitting**

Page 76:

1  **044, wasn't she?**
2  **A.    Yeah. But she didn't hit as much as other**
3  **people did if that makes sense. Like Coach P ended up**
4  **having a hitter for her and she only played defense like**
5  **on the field.**
6  Q.    And that happened during the preseason?
7  A.    Yeah.
8  Q.    And then at some point in time, Fatima advised
9  Coach Paris that she was seeking a transfer, correct?
10 A.    Correct.
11 Q.    And Coach Paris announced that she had told
12 Fatima if you're transferring, you're not going to play
13 and you probably shouldn't be on the team, correct?
14 A.    I don't know their conversation, but from how
15 she told us it was a mutual agreement, there was no
16 arguing. Fatima wanted to transfer and that's just --
17 she just didn't play anymore. But I can't recall -- I
18 don't know their actual conversation.
19 Q.    Did you continue to see Fatima on a daily basis
20 after that?
21 A.    Yeah. She still was on campus all the time.
22 She came to our games while she was still there. She
23 came to a bunch of practices.
24 Q.    What was Fatima's reaction to the departure
25 from the team?

Page 77:

1  A.    She wasn't mad or sad. She was just ready to
2  find another team that she could play for closer to
3  home.
4  Q.    When did Fatima tell you for the first time
5  that she was going to or wanted to transfer?
6  A.    Well, after that practice, we noticed that she
7  wasn't there. And we showed up at practice, we show up
8  early, coach told us right before practice. And I text
9  her after practice, like no, like I still want you on
10 the team. And she was like yeah, but I just need to
11 look for other colleges, go back home. And that ---
12 that was the conversation, it was that day.
13 Q.    So she didn't share with you her plans before
14 she actually did it?
15 A.    Well, I knew that she wanted to transfer, but I
16 think they made a mutual agreement in their meeting that
17 she just wasn't going to play anymore. I don't think
18 she actually knew that she wasn't going to play. I
19 don't know what the conversation was. She never told
20 she was going to stop playing, but she did tell me
21 before that she did want to go closer to home. So I
22 knew she didn't want to come back next year, the year
23 after.
24 Q.    Okay. Rikki, that's what I'm trying to get at.
25 When did Fatima first tell you that she was thinking

Rikki Bowen
October 29, 2018

Atkinson-Baker, Inc.
www.depo.com

```
 1            THE WITNESS:  Okay.  Thank you.
 2            THE VIDEOGRAPHER:  Okay.
 3            MR. JOHNSON:   Rikki --
 4            THE VIDEOGRAPHER:  Do you have more
 5   questions?
 6            MR. JOHNSON: -- before you go.  You
 7   have some rights as a witness that I need to tell you
 8   about.  Under federal rules, you have a right as a
 9   witness to read and review the transcript of your
10   deposition after the court reporter has typed it up into
11   English format and before it gets sealed for potential
12   use in a case.  It's a right that personally belongs to
13   you.  I don't represent as you to whether you should
14   exercise it or not.
15            If you do choose to exercise your right,
16   the court reporter will make arrangements to provide you
17   a transcript that you can then review.  You can make a
18   notation on a separate sheet of any errors that you
19   believe were made in recording and transcribing your
20   testimony.  You will then be asked to sign it before a
21   notary public and return it to the court reporter within
22   30 days.  If you waive the right to read and review, you
23   will have nothing further to do with the deposition.
24   The transcript will be sealed for further use in the
25   case without your further review, but you need to tell
```

Page 90

```
 1   the court reporter whether you wish to review it or not.
 2            THE WITNESS:  I'll tell you, I'll waive
 3   it.
 4            MR. JOHNSON:  Thank you very much.  We
 5   appreciate your time and patience.
 6            THE VIDEOGRAPHER:  Okay.  It's 12:07.
 7   This is the end of the deposition.  We're off the
 8   record.
 9            (Proceedings concluded at 12:07 p.m)
10
```

Page 91

```
 1            REPORTER'S CERTIFICATE
 2       I, Gina R. Hunter, Licensed Court Reporter,
 3   and Notary Public for the State of Tennessee, hereby
 4   certify that I reported the foregoing proceedings at
 5   the time and place set forth in the caption thereof;
 6   that the proceedings were stenographically reported
 7   by me; and that the foregoing proceedings constitute
 8   a true and correct transcript of said proceedings
 9   to the best of my ability.
10       I FURTHER CERTIFY that I am not related to
11   any of the parties named herein, nor their counsel,
12   and have no interest, financial or otherwise, in the
13   outcome or events of this action.
14       IN WITNESS WHEREOF, I have hereunto affixed
15   my official signature and seal of office this
16   12th day of November 2018.
17
18
19
20
21        ------------------------------
          GINA R. HUNTER, LCR
22        AND NOTARY PUBLIC FOR THE
          STATE OF TENNESSEE
23
          LCR No. 639 Expires 6/30/2020
24
25        Notary Commission Expires 8/20/2019
```

Page 92

24 (Pages 90 to 92)

Rikki Bowen - October 29, 2018

```
 1                REPORTER'S CERTIFICATE
 2           I, Gina R. Hunter, Licensed Court Reporter,
 3   and Notary Public for the State of Tennessee, hereby
 4   certify that I reported the foregoing proceedings at
 5   the time and place set forth in the caption thereof;
 6   that the proceedings were stenographically reported
 7   by me; and that the foregoing proceedings constitute
 8   a true and correct transcript of said proceedings
 9   to the best of my ability.
10           I FURTHER CERTIFY that I am not related to
11   any of the parties named herein, nor their counsel,
12   and have no interest, financial or otherwise, in the
13   outcome or events of this action.
14           IN WITNESS WHEREOF, I have hereunto affixed
15   my official signature and seal of office this
16   12th day of November 2018.
17
              (signature not requested)
18
19
20
21           ----------------------------------
             GINA R. HUNTER, LCR
22           AND NOTARY PUBLIC FOR THE
             STATE OF TENNESSEE
23
             LCR No. 639 Expires 6/30/2020
24
25           Notary Commission Expires 8/20/2019
```

Alpha Reporting Corporation