**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| LISSETTE LARIOS ROOHBAKHSH, as personal representative of the ESTATE OF FATIMA LISSETTE LARIOS and on behalf of next of kin,<br><br>and<br><br>NELSON LARIOS, as next of kin<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES<br><br>and<br><br>CHADRON STATE COLLEGE,<br><br>Defendants. | Case No. 8:17-cv-00031-JFB-CRZ |

**BRIEF IN SUPPORT OF PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF DEFENDANTS' EXPERT PETER LAKE**

**I.  INTRODUCTION**

Plaintiffs move to exclude the testimony and opinions of Peter Lake, a law professor who Defendants have designated as an expert to testify about their legal obligations under, and compliance with, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"). Ex. 1, Defendants' Expert Disclosures, at 1; Ex. 2, Expert Response of Professor Peter Lake ("Lake Report"), at 2-20. More specifically, Defendants asked Mr. Lake to opine on the legal standards that govern private damages actions under Title IX. Ex. 3, Deposition of Peter Lake ("Lake Dep."), at 205:22-206:6.

1

First, and foremost, Mr. Lake's opinions should be barred because they are almost completely devoid of any analysis of the factual record in this case. Indeed, throughout Mr. Lake's 20-page report and deposition testimony, he barely discussed the facts of this case and demonstrated a stark unfamiliarity with the factual record. As a result, Mr. Lake's testimony would be unfounded, unreliable, and misleading.

Second, the vast majority of Mr. Lake's opinions overstep the bounds of proper expert testimony because he opines on legal issues that are solely for the Court's determination. The first six of seven categories of opinions in Mr. Lake's report involve purely legal opinions about the governing legal standards under Title IX, based solely on analyzing Supreme Court precedent, regulations, federal agency guidance, and a legal treatise. Ex. 2, Lake Report, at 2-19.

Third, Mr. Lake only attempts to apply Title IX's legal standards to the facts of this case in two of his opinions—one claiming Defendants didn't violate Title IX because they didn't act with "deliberate indifference" to Fatima Larios, *id*. at 20 (Opinion 7b), and another claiming Defendants didn't violate Title IX because they didn't have "actual notice" that Fatima was experiencing dating violence. Ex. 3, Lake Dep., at 86:24-87:15. But Mr. Lake's methodology for reaching these opinions is plainly unreliable because he ignored a large swath of the relevant facts. Moreover, these opinions on the "ultimate issues" in the case improperly usurp the role of the jury.

Finally, this Court should also exclude Mr. Lake's Opinion 7 (Ex. 2, Lake Report, at 19-20), which interprets a letter from a federal agency closing its investigation of a Title IX complaint filed by Fatima's parents. Mr. Lake isn't qualified to opine on this issue and his opinion is not based on a reliable methodology. Mr. Lake never worked for the federal agency. Nor did he know what materials the agency reviewed during its investigation or whether it reviewed any materials

at all before closing its investigation. Pure speculation by someone who lacks relevant experience is not a reliable methodology.

Thus, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), this Court should exclude all of Mr. Lake's opinions and testimony.

## II.  BACKGROUND

This is a wrongful death and survival action arising from gender-based dating violence that Fatima Larios suffered while attending Chadron State College, and Defendants' failure to take any meaningful action to address numerous reports they received about the dating violence Fatima was suffering. Complaint (Dkt. # 1), ¶ 1-3. Plaintiffs allege that Defendants, Board of Trustees of the Nebraska State Colleges and Chadron State College (collectively, the "College"), knew for months that Fatima was being physically and emotionally abused by her football-player boyfriend, Brandon Finona-Gardner. *Id.* at ¶ 2. But instead of taking action to help Fatima, as required by Title IX and the College's own policies, the College responded to serious reports about the escalating dating violence with deliberate indifference. *Id.* at ¶¶ 2-3, 86. As result of the dating violence and Defendants' failure to take appropriate action to address it, Fatima committed suicide. *Id.* at ¶¶ 1, 5, 89. Plaintiffs filed suit under Title IX to recover damages for Fatima's injuries and death. *Id.* at ¶ 5.

Mr. Lake's expert report offers opinions in seven areas. Ex. 2, Lake Report, at 2-20. His opinions in the first six areas address his disagreements with the standards on which Plaintiffs' expert Saundra K. Schuster, J.D., bases her opinions. *Id.* at 2-19. Mr. Lake's opinions in the seventh area address his interpretation of a letter from the U.S. Department of Education's Office for Civil Rights ("OCR") informing the College that OCR had closed its investigation into a Title

IX complaint Plaintiffs had filed before filing this lawsuit (hereinafter the "Administrative Closure Letter"). *Id*. at 19-20.

In Opinions 1a and 1b, Mr. Lake provides his opinions on the applicable legal standards for "assessing civil remedies under Title IX" and whether an amendment to the Clery Act, 20 U.S.C. § 1092(f), is relevant to assessing a school's obligations under Title IX. Ex. 2, Lake Report, at 2-4. Mr. Lake doesn't discuss any facts specific to this case; rather, he discusses case law and OCR standards that be believes show "problems" with the legal standards on which Ms. Schuster relied in her report. *Id*.

In Opinion 2, Mr. Lake provides a series of opinions relating to whether a school's failure to adequately train its personnel on gender-based and sexual harassment can result in liability under Title IX. *Id*. at 4-11. In Opinions 2a and 2b, Mr. Lake disagrees with Ms. Schuster that there are "industry standards" for Title IX training and that the College's alleged failure to train appropriate personnel consistent with industry standards could result in liability under Title IX. *Id*. at 4-6. In Opinions 2c and 2d, Mr. Lake disagrees with Ms. Schuster's view of what constitutes "adequate training" under Title IX. *Id.* at 6-9. In Opinions 2e through 2h, Mr. Lake disagrees with Ms. Schuster's view of the legal standards applicable to assessing a school's liability for money damages under Title IX in cases involving allegations of student-on-student dating violence. *Id*. at 9-11. Mr. Lake's series of opinions under Opinion 2 do not include an analysis of the facts in this case, such as the Title IX training that the College actually provided. *Id*. at 4-11. Rather, Mr. Lake's opinions are based on his view of case law and OCR guidance. *Id*.

In Opinion 3, Mr. Lake provides a series of opinions relating to a school's Title IX obligations to investigate reports of possible student-on-student dating violence. *Id*. at 11-16. In Opinions 3a-3c, Mr. Lake disagrees with Ms. Schuster about the nature and scope of investigations

4

schools must conduct under Title IX when they learn of possible student-on-student dating violence. *Id*. at 11-12. In Opinions 3d and 3e, Mr. Lake disagrees with Ms. Schuster about the procedures schools must adopt and follow under Title IX to resolve sex discrimination complaints, including informal reports that student-on-student dating violence might have occurred. *Id*. at 12-14. In Opinions 3f and 3g, Mr. Lake opines on whether a school has obligations under Title IX to investigate potential student-on-student dating violence regardless of the victim's wishes. *Id*. at 14-16. Mr. Lake's series of opinions under Opinion 3 do not include an analysis of the facts in this case, such as what action the College actually took in response to reports that Fatima was a victim of dating violence. *Id*. at 11-16. Rather, Mr. Lake's opinions are based on his view of case law, Title IX regulations, and OCR guidance. *Id*.

In Opinion 4, Mr. Lake opines on whether Title IX required the College to inform law enforcement about what it had heard about Fatima being a possible victim of dating violence. *Id*. at 16-17. Mr. Lake's bases his opinion on OCR guidance, not on any facts in this case. *Id*.

In Opinions 5a and 5b, Mr. Lake opines on whether the College had a "special relationship" with Fatima and, if so, how it impacted the College's obligations to Fatima under Title IX. *Id*. at 17-18. Mr. Lake bases his opinion on case law and a treatise on tort law. *Id*. He does not analyze whether the College had a special relationship with Fatima based on the facts in this case. *Id*.

In Opinions 6a and 6b, Mr. Lake opines on whether Title IX requires colleges and universities to adopt policies and procedures to notify students' parents when students are in a volatile situation or their safety is at risk. *Id*. at 18-19. He bases his opinion solely on an analysis of federal law and does not apply his analysis to the facts of this case. *Id*.

In Opinion 7a, Mr. Lake offers his opinion on the meaning of a sentence in OCR's Administrative Closure Letter. *Id*. at 19-20. Then, based on his interpretation of that sentence, Mr.

Lake opines on whether he agrees with OCR's alleged "conclusion" and whether the College acted with "deliberate indifference" to Fatima, in violation of Title IX. *Id*. at 20 (Opinion 7b). Based on the materials he reviewed, Mr. Lake opines that the College did not violate Title IX. His analysis of the factual record is limited to the following statement: "[T]he records I have reviewed show that Chadron State College was actively engaged in efforts to assist Ms. Larios, who at times did not avail herself of opportunities offered by Chadron State College's Title IX response systems." *Id*. Mr. Lake also opined about what OCR "may have had to consider" when investigating Plaintiffs' Title IX complaint, *id*., but admitted in his deposition that he does not know what OCR actually reviewed as part of its investigation of Plaintiffs' Title IX complaint, he did not review OCR's investigation file in this matter, and "it's possible that the materials . . . sat on a file desk and never were looked at." Ex. 3, Lake Dep., at 242:23-243:11, 249:17-250:2.

Finally, Mr. Lake offers one opinion in his deposition that was not included in his report. He opines that, under Title IX standards, the College did not have "actual notice" that Fatima was experiencing dating violence. Ex. 3, Lake Dep., at 86:24-87:15. He bases his opinion on emails that he reviewed, *id*. at 87:11-16, but admits in his deposition that he did not know who was responsible for investigating reports of dating violence at the College, *id*. at 172:17-173:16; or who had Title IX responsibilities at the College, *id*. at 59:1-14; and had not reviewed any of the depositions taken in the case, including the depositions of the two people who had served as the College's Title IX coordinators while Fatima was a student, *id*. at 51:17-25.

### III.     LEGAL STANDARD

Trial courts are required to play a gatekeeping role to exclude unreliable expert testimony pursuant Rule 702's "exacting standards of reliability." *Weisgram v. Marley Co.*, 528 U.S. 440,

455 (2000) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).[1] Even where a party retains an apparently well-credentialed witness, "the trial court's gatekeeping function requires more than simply taking the expert's word for it." Fed. R. Evid. 702 Advisory Committee's Note (2000 amendment). Rather, the proponent of an expert's opinion has the burden of establishing its admissibility by a preponderance of evidence. *Daubert*, 509 U.S. at 593. According to Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Expert testimony is not admissible when it is a "statement of legal conclusion" rather than a "fact-based opinion." *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (reversing trial court's decision to admit expert testimony on ultimate questions of law, which should have been decided by court); *see also Police Ret. Sys. of St. Louis v. Midwest Inv. Advisory Servs., Inc.*, 940 F.2d 351, 357 (8th Cir. 1991) (extensive law-related expert testimony improperly usurps judge's role to explain the law); *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986) ("Experts interpret and analyze factual evidence. They do not testify about the law . . . ."); *Wonch v. Meyer*, 8:14CV166, 2016 WL 715750, at *2 (D. Neb. Feb. 22, 2016) (finding that expert's recitation of Nebraska law would invade province of the court) (Zwart, J.); *Buffalo Wild Wings, Inc. v. Buffalo Wings Rings*, Civil No. 09-1426 (JRT/SER), 2011 WL 4537970, at *6 (D. Minn. Sep. 29, 2011) ("It is well established that experts may not invade the court's province by

---

[1] Unless otherwise specified, all internal quotation marks, citations, and alterations omitted.

7

testifying on issues of law"); *Walsh v. Principal Life Insurance Company*, 266 F.R.D. 232, 238 (S.D. Iowa 2010) (expert testimony on legal matters is not admissible).

Expert testimony is also inadmissible when it fails to consider relevant facts, because this makes the testimony unreliable and unhelpful to the jury. *See Nebraska Plastics, Inc. v. Holland Colors Am. Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) (expert opinion that fails to consider relevant facts of case is "fundamentally unsupported," cannot offer assistance to jury, and must be excluded); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (same); *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988) (expert's opinion must be excluded if it "is so fundamentally unsupported that it can offer no assistance to the jury.").

Expert testimony is also inadmissible as unhelpful to the trier of fact, if the analysis doesn't "fit" the case. *Daubert*, 509 U.S. at 591-92. Expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Concord Boat Corp.*, 207 F.3d at 1055. A court must focus on the "reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant.*" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 536 U.S. 137, 154 (1999) (emphasis in original)). "If a party believes that an expert opinion has not considered all of the relevant facts, an objection to its admission is appropriate. Even a theory that might meet certain *Daubert* factors, such as peer review and publication . . . should not be admitted if it does not apply to the specific facts of the case." *Id.* at 1056. "The gatekeeping inquiry must be tied to the particular facts." *Kumho*, 536 U.S. at 150.

In addition, expert testimony can only be received from someone who has specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (expert's testimony outside of witness's area of expertise is unreliable and inadmissible); 4 Weinstein's Fed. Evid. § 702.06[1], at 702–52 (2000) (a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise"). Under Rule 702, an expert witness's "competence must match the subject matter of the witness's testimony." *See Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006). "The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas." *Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, PA*, 557 F. Supp. 2d 1040, 1048 (W.D. Mo. 2008).

### IV.  ARGUMENT

**A. Lake's Opinions 1-6 Should Be Excluded Because They Usurp the Court's Role by Offering Purely Legal Conclusions That Are Not Connected to the Facts of this Case.**

This Court should bar Mr. Lake's Opinions 1 through 6 in their entirety because those opinions improperly invade the province of this Court by explaining the governing legal standards under Title IX, instead of applying these standards to the facts of this case, as required by Rule 702. It is well-established in the Eighth Circuit that expert testimony is not admissible when it is a "statement of legal conclusion" rather than a "fact-based opinion." *Peterson*, 60 F.3d at 475 (reversing trial court's decision to admit expert testimony on ultimate questions of law, which should have been decided by court); *see also Southern Pine Helicopters v. Phoenix Aviation*, 320 F.3d 838, 841 (8th Cir. 2003) ("[E]xpert testimony on legal matters is not admissible. Matters of

law are for the trial judge, and it is the judge's job to instruct the jury on such issues.") (citing *United States v. Klaphake*, 64 F.3d 435, 438-39 (8th Cir. 1995) (upholding district court's decision to exclude testimony by legal expert on legality of a trust agreement); *Police Ret. Sys.*, 940 F.2d at 357 (extensive law-related expert testimony improperly usurps judge's role to explain the law); *cf. United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988) ("Experts interpret and analyze factual evidence. They do not testify about the law . . . .").

The reasoning behind this widely-accepted rule is that: "Each courtroom comes equipped with a 'legal expert' called a judge." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997). Mr. Lake claims he recognizes "it's not [his] job to tell a federal judge what the law is," Ex. 3, Lake Dep., at 210:10-12, but Opinions 1 through 6 do precisely that. In all of those opinions, Mr. Lake analyzes Supreme Court precedent, federal statutes and regulations, federal agency guidance, and/or a legal treatise to explain the legal standards that govern private damages actions—as distinguished from OCR administrative enforcement—under Title IX. Ex. 2, Lake Report, at 2-19. None of those opinions analyze the factual record in this case. A brief summary of Opinions 1 through 6 demonstrates this point:

- In Opinion 1, Mr. Lake provides his opinions on the applicable legal standards for "assessing civil remedies under Title IX" and whether an amendment to the Clery Act is relevant to assessing a school's obligations under Title IX. Ex. 2, Lake Report, at 2-4. Mr. Lake doesn't discuss any facts specific to this case; rather, he discusses case law and OCR standards that be believes show "problems" with the legal standards on which Plaintiffs' expert Schuster relied in her report. *Id.*

- In Opinion 2, Mr. Lake provides a series of opinions relating to whether a school's failure to adequately train its personnel on gender-based and sexual harassment can result in liability under Title IX. *Id.* at 4-11. These opinions do not include an analysis of the facts in this case, such as the Title IX training that the College actually provided. *Id.* at 4-11. Rather, Mr. Lake's opinions are based on his view of federal case law and OCR guidance. *Id.*

- In Opinion 3, Mr. Lake provides a series of opinions relating to a school's Title IX obligations to investigate reports of possible student-on-student dating violence. *Id.* at 11-16. These opinions do not include an analysis of the facts in this case, such as

10

what action the College actually took in response to reports that Fatima was a victim of dating violence. *Id*. at 11-16. Rather, Mr. Lake's opinions are based on his view of federal case law, Title IX regulations, and OCR guidance. *Id*.

- In Opinion 4, Mr. Lake opines on whether Title IX required the College to inform law enforcement about what it had heard about Fatima being a possible victim of dating violence. *Id*. at 16-17. Mr. Lake's bases his opinion on OCR guidance, not on any facts in this case. *Id*.

- In Opinion 5, Mr. Lake opines on whether the College had a "special relationship" with Fatima and, if so, how it impacted the College's obligations to Fatima under Title IX. *Id*. at 17-18. Mr. Lake bases his opinion on case law and a treatise on tort law. *Id*. He does not analyze whether the College had a special relationship with Fatima based on the facts in this case. *Id*.

- In Opinion 6, Mr. Lake opines on whether Title IX requires colleges and universities to adopt policies and procedures to notify students' parents when students are in a volatile situation or their safety is at risk. *Id*. at 18-19. He bases his opinion solely on an analysis of federal law and does not apply his analysis to the facts of this case. *Id*.

At his deposition, Mr. Lake admitted that many of his opinions were purely legal and had nothing to do with the facts of this case. Ex. 3, Lake Dep., at 203:23-204:12; 206:14-207:9; 209:6-210:4; 233:25-239:5. Indeed, Mr. Lake testified that he approached many of the questions posed to him as if he was responding to a trial brief or summary judgment motion. *Id*. at 255:15-256:6.

Because Opinions 1 through 6 do not involve any factual analysis whatsoever, they are inadmissible under Rule 702 and *Daubert*. Rule 702's requirement that expert testimony assist the trier of fact demands that the analysis "fit" the case. *Daubert*, 509 U.S. at 591-92. In short, expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Concord Boat Corp.*, 207 F.3d at 1055. "If a party believes that an expert opinion has not considered all of the relevant facts, an objection to its admission is appropriate. Even a theory that might meet certain *Daubert* factors, such as peer review and publication . . . should not be admitted if it does not apply to the specific facts of the case." *Id.* at 1056. Indeed, an expert

11

opinion that fails to consider the relevant facts of the case is "fundamentally unsupported," cannot assist the trier of fact, and must be excluded. *Nebraska Plastics*, 408 F.3d at 416.

Thus, Mr. Lake's Opinions 1 through 6 should be excluded in their entirety. If allowed to provide such opinions, Mr. Lake would be usurping the role of this Court, which is to determine the applicable law and instruct the jury accordingly. *See Southern Pipe Helicopters*, 320 F.3d at 841.

### B. Lake's Opinions on Whether Defendants Violated Title IX Should Be Excluded Because They Are Based on an Unreliable Methodology That Ignores the Relevant Facts and They Improperly Usurp the Role of the Factfinder.

Mr. Lake attempts to apply the law to the facts of this case in just two of his opinions—one claiming Defendants did not violate Title IX because they did not act with "deliberate indifference" to Fatima, Ex. 2, Lake Report, at 20 (Opinion 7b), and the other claiming Defendants did not violate Title IX because they did not have "actual notice" that Fatima was experiencing dating violence, Ex. 3, Lake Dep., at 86:24-87:15. Both opinions should be excluded for the same reasons. They ignore a large swath of the relevant facts, rendering his opinions unreliable and unhelpful to the trier of fact. And they improperly usurp the role of the trier of fact by opining on the "ultimate issues" in the case.

It is well-settled that expert testimony is inadmissible when it fails to consider relevant facts, because this makes the testimony unreliable and unhelpful to the jury. *See Nebraska Plastics*, 408 F.3d at 416 (expert opinion that fails to consider relevant facts of case is "fundamentally unsupported," cannot offer assistance to jury, and must be excluded); *Concord Boat Corp.*, 207 F.3d at 1056-57 (holding expert opinion should not have been admitted where expert failed to consider all relevant facts); *Loudermill*, 863 F.2d at 570 (expert's opinion must be excluded if it "is so fundamentally unsupported that it can offer no assistance to the jury.").

Mr. Lake's opinions that the College did not act with "deliberate indifference" or have "actual notice" under Title IX cannot satisfy Rule 702's "exacting standards of reliability." *Weisgram*, 528 U.S. at 455. Neither opinion is based on an analysis of all the relevant facts. Indeed, Mr. Lake's report and deposition testimony show a stunning lack of familiarity with the factual record in this case.

Regarding his opinion that the College didn't act with deliberate indifference to Fatima, his analysis of the factual record is limited to one sentence: "[T]he records I have reviewed show that Chadron State College was actively engaged in efforts to assist Ms. Larios, who at times did not avail herself of opportunities offered by Chadron State College's Title IX response systems." Ex. 2, Lake Report, at 20 (Opinion 7b). Mr. Lake's deposition testimony added little to this sparse factual analysis, focusing on his perceptions that the College "reached out to" Fatima and that she "ideated" in response. Ex. 3, Lake Dep., at 254:5-255:14. Mr. Lake's factual basis for concluding that the College didn't have "actual notice" under Title IX is more amorphous. He says his conclusion is based on the emails he reviewed. Ex. 3, Lake Dep., at 86:24-87:15.

A brief review of Mr. Lake's deposition testimony shows that he failed to consider relevant facts when reaching these conclusions. To begin, despite being retained to opine on whether the College complied with Title IX, Mr. Lake did not review the depositions of the College's Title IX coordinators, Shelly Dunbar and Sheri Simons. Ex. 3, Lake Dep., at 51:17-25. Mr. Lake admitted that he does not know how Dunbar performed her Title IX "investigation" in this matter. *Id*. at 173:8-16. In fact, when asked if he would have wanted to know Dunbar's responsibility to respond to reports involving Fatima and Brandon, Lake responded, "For the purposes of what I was asked to do, actually no. . ." *Id*. at 173:18-22. Mr. Lake admitted he did not even know who Simons was, and her name was not familiar to him, despite reviewing numerous documents with her name on

13

them. *Id.* at 96: 7-9; *see* Ex. 2, Lake Report, at 1-2 (index of documents reviewed). Mr. Lake also did not know which College employees were responsible for investigating reports of dating violence. Ex. 3, Lake Dep. at 172:17-173:16. And he didn't even know whether the College had a designated Title IX coordinator when Fatima was a student there. *Id.* at 59:1-14.

Mr. Lake's deposition testimony also shows he knew very little about the facts of the case, period. *See, e.g.*, *id.* at 64:25-66:17 (not aware of factual allegations regarding the physical and emotional abuse experienced by Fatima while at the College); *id.* at 72:7-23 (not aware of allegations about the nature of the arguments between Fatima and Brandon); *id.* at 74:7-76:17 (can't recall what information was given to College employees regarding suspected physical violence between Fatima and Brandon); *id.* at 89:12-22 (can't recall what information Fatima's coaches shared with the College about potential abuse of Fatima or what communications the coaches had with Fatima about this); *id.* at 98:6-11 (can't recall whether there were reports indicating Fatima was a potential victim of dating violence); *id.* at 212:7-213:7 (not aware whether the College's Title IX coordinator had any Title IX training).

Given how little Mr. Lake knows about the factual record in this case, it is not surprising that his report is almost completely devoid of references to the relevant facts and witnesses in the case. *See* Ex. 2, Lake Report, at 2-20. Indeed, his discussion of the factual record is limited to the one sentence quoted above in his Opinion 7b on whether the College acted with deliberate indifference to Fatima. *Id.* at 20. That is it. His opinions are "fundamentally unsupported" by relevant facts, rendering his methodology of applying the law to the facts of this case completely unreliable under Rule 702 (b)-(d). *See Nebraska Plastics*, 408 F.3d at 416; *Concord Boat Corp.*, 207 F.3d at 1056-57. As a result, these opinions cannot possibly help the trier of fact understand the evidence or determine facts, as required by Rule 702 (a).

Mr. Lake's opinions that the College complied with Title IX are also inadmissible because an expert may not testify about whether the applicable legal standard has been satisfied. *See, e.g., Peterson*, 60 F.3d at 475 (reversing trial court's decision to admit expert testimony on ultimate questions of law, which should have been decided by court); *Langenbau v. Med-Trans Corp.*, Case No. C13-3038-LTS, at *31 (N.D. Iowa Mar. 9, 2016) (holding that experts may not opine on whether a party violated a regulation).

Thus, this Court should exclude Mr. Lake's opinions that the College did not act with "deliberate indifference" or have "actual notice" under Title IX.

**C. Lake's Opinion 7 on the Meaning of OCR's Administrative Closure Letter Should Be Excluded Because Lake Isn't Qualified to Opine on this Issue and His Methodology is Unreliable.**

This Court should also bar the final opinions in Mr. Lake's report, Opinions 7a and 7b, which interpret a letter from OCR closing its investigation of a Title IX complaint filed by Fatima's parents. *See* Ex. 2, Lake Report, at 19-20. Not only are Mr. Lake's opinions about the meaning of OCR's Administrative Closure Letter outside the scope of Defendants' Rule 26(a) expert disclosures—which designated Mr. Lake as an expert to testify about the College's obligations under and compliance with Title IX, Ex. 1, Defendants' Expert Disclosures, at 1—but Mr. Lake isn't qualified to opine on this issue and improperly bases his opinions on pure speculation.

Defendants asked Mr. Lake to opine on the meaning of a sentence in the Administrative Closure Letter. Ex. 2, Lake Report, at 19 (Question 7a). Specifically, they asked if he placed any significance on OCR's statement that it had not obtained "sufficient evidence to support either an individual or systemic finding" against the College. *Id.* Mr. Lake opined that this sentence was significant, suggesting that the College was in compliance with the Title IX standards applicable to civil damages actions. *Id.* at 20 (Opinion 7a). Defendants also asked Mr. Lake whether he had

15

any reason to disagree with OCR's alleged "conclusion" in the quoted sentence. *Id*. (Question 7b). Mr. Lake opined that he did not, then speculated on factors "OCR may have had to consider," including "whether (1) Ms. Larios made decisions not to avail herself of opportunities offered by Chadron State College's Title IX systems, (2) Ms. Larios may have harassed another student and was not the "victim," and (3) Ms. Larios['] suicide may have been the result of causal factors unrelated to any Title IX issues and may have otherwise been unpreventable no matter what level of response Chadron State College may have executed on her behalf." *Id*. (Opinion 7b).

Setting aside issues regarding the admissibility of OCR's Administrative Closure Letter, and the accuracy of Mr. Lake's interpretation, Mr. Lake's opinions are purely speculative and should be barred.[2] "If an expert opinion is based on speculation or conjecture, it may be stricken." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3rd Cir. 1996); *see also Newkirk v. Conagra Foods, Inc.*, 727 F. Supp. 2d 1006, 1029 (E.D. Wash. 2010) (excluding expert's conclusions because they did not rise above "subjective belief or unsupported speculation.").

It is obvious from Mr. Lake's report and deposition testimony that his opinions about OCR's Administrative Closure Letter are based on unsupported speculation. First, his report discusses what "OCR *may* have had to consider." Ex. 2, Lake Report, at 20 (emphasis added). Second, in his deposition, Mr. Lake admits that, "[i]t is unknown exactly what [OCR] did and why they did it." Ex. 3, Lake Dep. at 242:11-12. Mr. Lake testified that he didn't know what OCR actually reviewed as part of its investigation, he didn't review OCR's investigation file in this matter, and "it's possible that the materials . . . sat on a file desk and never were looked at." *Id*. at 242:23-243:11; 249:21-250:10. Mr. Lake also admits he never saw the complaint the Larios family

---

[2] Plaintiffs will address the admissibility of OCR's Administrative Closure Letter and, if necessary, the inaccuracy of Mr. Lake's interpretation, at the proper time, through a motion in limine.

filed with OCR; didn't know how many OCR investigators handled the complaint; didn't know whether OCR investigators actually reviewed materials produced by the College; and didn't know the caseloads of the investigators. *Id*. at 243:7-11; 249:17-250:10. Mr. Lake also admits that that he was making "an educated guess" about what OCR was investigating "because we don't always know exactly what they're looking at." *Id*. at 241:13-17. Finally, when asked whether he knew the basis of OCR's statement in the Administrative Closure Letter regarding the sufficiency of evidence it had obtained, Lake admits, "other than what [OCR] said, that's all I know." *Id*. at 242:20-22. Such pure speculation is not a reliable methodology for an expert opinion and, therefore, Mr. Lake's opinion about the significance of OCR's Administrative Closure Letter must be barred.

Mr. Lake's opinions about OCR's Administrative Closure Letter should also be excluded because he isn't qualified to interpret OCR closure letters. Mr. Lake never worked for OCR or performed an investigation for OCR. Ex. 3, Lake Dep., at 239:7-11. The fact that he is a law professor with expertise on Title IX does not mean he is qualified to opine on the meaning of OCR's closure letters. Under Rule 702, an expert witness's "competence must match the subject matter of the witness's testimony." *See Robinson*, 447 F.3d at 1101. "The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas." *Travelers*, 557 F. at 1048 (striking expert testimony because "although [he] is almost certainly an expert in other areas of insurance, his experience has not established that he is an expert on the areas of insurance involved in this case"); *see also Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969-70 (10th Cir. 2001) (court properly excluded orthopedic surgeon's opinions about a specialized topic because the opinions were based only on general orthopedic and surgical principles and surgeon admitted having little or no knowledge about the

17

specialized subject . . . . "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue"). Mr. Lake has no specialized knowledge or training sufficient to qualify him to opine on the meaning of OCR's Administrative Closure Letter.

Because Mr. Lake's opinions about OCR's Administrative Closure Letter are speculative, unreliable, outside his expertise, and beyond the scope of Defendants' expert disclosures, they should be barred.

## V. CONCLUSION

Defendants cannot establish that Mr. Lake's opinions would be reliable, fact-based, or helpful to the trier of fact. The vast majority of Mr. Lake's opinions violate the bounds of permissible expert testimony because they are purely legal conclusions that invade the province of this Court. Indeed, Mr. Lake's opinions are so lacking in analysis of the factual record that they are "fundamentally unsupported" and cannot help the jury. Thus, Plaintiffs request that all of his opinions and testimony be excluded under Federal Rule of Evidence 702 and *Daubert*.

Dated: April 8, 2019

        Respectfully submitted,

        /s/ Martin D. Gould

        Christopher P. Welsh
        WELSH & WELSH, PC, LLO
        9290 West Dodge Road
        204 The Mark
        Omaha, Nebraska 68114
        (402) 384-8160
        (402) 384-8211 - Facsimile
        cwelsh@welsh-law.com

        Antonio M. Romanucci, Esq. (admitted *pro hac vice*)
        Martin Gould, Esq. (admitted *pro hac vice*)
        Bryce T. Hensley, Esq. (*pro hac vice* application pending)
        ROMANUCCI & BLANDIN, LLC
        321 N. Clark Street, Suite 900

>Chicago, IL 60654
>(312) 458-1000
>aromanucci@rblaw.net
>mgould@rblaw.net
>bhensley@rblaw.net
>
>Adele P. Kimmel, Esq. (admitted *pro hac vice*)
>PUBLIC JUSTICE, P.C.
>1620 L Street, NW, Suite 630
>Washington, DC 20036
>(202) 797-8600
>akimmel@publicjustice.net

## CERTIFICATE OF SERVICE

I certify that on April 8, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Thomas E. Johnson
Johnson Tabor & Johnson Law, LLC
11932 Arbor Street, Suite 101
Omaha, NE 68144
tjohnson@johnsontabor.com

George Martin, III
Leigh Campbell Joyce
Baird Holm LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
gmartin@bairdholm.com

>Respectfully Submitted,
>ROMANUCCI & BLANDIN, LLC
>
>\_\_\_/s Martin D. Gould\_\_\_
>Attorney for Plaintiff