

**EXHIBIT**

tabbies®

2

# EXPERT RESPONSE

# *Larios v. Chadron State College, and the Board of Trustees of the Nebraska State Colleges*

# November 29, 2018

## By: Professor Peter Lake

**CONFIDENTIAL**

## INDEX OF DOCUMENTS
## REVIEWED BY
## PROFESSOR PETER F. LAKE

|     | Bates No. | Document |
| --- | --- | --- |
| 1. | None | Questionnaire to Professor Peter Lake |
| 2. | None | Plaintiff's District Court January 30, 2017 Complaint Case No. 8:17-cv-00031 |
| 3. | None | Saundra Schuster Expert Report, dated August 27, 2018 |
| 4. | None | Nebraska State College System's June 27, 2016 OCR Response |
| 5. | None | OCR Request for Information, dated May 17, 2016 |
| 6. | CSC000151-000152 | 1/19/2015 Larios Housing Contract |
| 7. | CSC000153-000154 | 6/9/2014 Larios Housing Contract |
| 8. | CSC000155-000156 | 9/26/2014 Larios Housing Contract |
| 9. | CSC000157-000158 | Larios Transcript |
| 10. | CSC000160-000161 | 11/4/2014 Email from Smith to Dunbar re Title IX Issue |
| 11. | CSC000162 | 11/6/2014 Email from Dunbar to Larios |
| 12. | CSC000173 | 11/7/2014 Dunbar email to Hansen and Smith |
| 13. | CSC000175 | 11/6/2014 Dunbar email to Stack and Coach Aryn |
| 14. | CSC000176 | 11/5/2014 Dunbar email to Stack and Smith |
| 15. | CSC000178-000180 | Larios withdrawal documentation |
| 16. | CSC000181-000192 | Finona-Gardner withdrawal documentation |
| 17. | CSC000196-000197 | 1/15-16/2015 Incident Report |
| 18. | CSC000198-000199 | 1/20/2015 Incident Report |
| 19. | CSC000200 | 10/25/2014 Stack Notes re Meeting with Larios |
| 20. | CSC000201 | 12/8/2014 Stack Notes re Meeting with Larios |
| 21. | CSC000204 | 3/6/2014 Larios email to Coach Stack |
| 22. | CSC000205-000207 | 8/21/2014 Student Observation Report Larios |
| 23. | CSC000208-000209 | 8/28/2014 Student Observation Report Larios |
| 24. | CSC000210-000213 | 9/5/2014 Student Observation Report Larios |
| 25. | CSC000214-000216 | 9/12/2014 Student Observation Report Larios |
| 26. | CSC000217-000220 | 9/19/2014 Student Observation Report Larios |
| 27. | CSC000221-000222 | 8/22/2014 Student Observation Report Finona-Gardner |
| 28. | CSC000223-000224 | 8/29/2014 Student Observation Report Finona-Gardner |
| 29. | CSC000225-000226 | 9/5/2014 Student Observation Report Finona-Gardner |
| 30. | CSC000227-000229 | 9/8/2014 Mitchell Observation Reports to Simons re Finona-Gardner |
| 31. | CSC000230-000231 | 9/12/2014 Student Observation Report Finona-Gardner |
| 32. | CSC000232-000233 | 9/19/2014Student Observation Report Finona-Gardner |
| 33. | CSC000235-000237 | 1/16/2015 Student Observation Report Larios |
| 34. | CSC000238-000240 | 1/23/2015 Student Observation Report Larios |
| 35. | CSC000241-000243 | 1/30/2015 Student Observation Report Larios |
| 36. | CSC000244-000245 | 1/16/2015 Student Observation Report Finona |
| 37. | CSC000246-000247 | 1/19/2015 Email from Mitchell to Simons and Knifong re relationship issues |
| 38. | CSC000248-000249 | 1/23/2015 Student Observation Report Finona |

|     | Bates No. | Document |
| --- | --- | --- |
| 39. | CSC000250-000251 | 1/30/2015 Student Observation Report Finona |
| 40. | CSC000257-000261 | 11/27/2014; 12/25/2014; 1/9/2015 Larios/Stack Text Messages |
| 41. | CSC000262-000263 | 2/5/2015 Incident Report/Memo |
| 42. | CSC000264-000267 | 1/21/2015 Emails btw Simons and Mitchell |
| 43. | CSC000268-000269 | 1/31/2015 Incident Report/Memo re Larios Suicide |
| 44. | CSC000837-000843 | Andrews Hall First Floor Meeting Agenda, Sign in and Program |
| 45. | CSC002686 | Incident Narrative 15-0602_9, page 1 |
| 46. | CSC002731 | Joel Smith Notes |
| 47. | CSC002732-002739 | 11.5.2014 S. Dunbar Memo to F. Larios, with enclosures |
| 48. | CSC002740-002741 | 11.11.2014 Email exchange between S. Dunbar and F. Larios |
| 49. | CSC002747-002790 | 2014-2015 CSC Student Handbook |

In preparation of this Expert response, and in addition to the above documents, Professor Lake reviewed:

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)
*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 650 (1999)
*Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 281 (1998)
U.S. Dept. of Educ. Office for Civil Rights, *Questions and Answers on Title IX and Sexual Violence* (April 29, 2014)

---

1.  Title IX

On Page 11 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> In order to assess the actions of various Chadron State College officials who were charged with responding to reports of sexual violence and providing remedial support and intervention to stop the violence, I evaluated the school officials' response based on legal standards applicable to the set of facts presented. … In addition, "The Campus Sexual Assault Victim's Bill of Rights," a 1992 amendment to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (Clery Act), 20 USC § 1092(f), provided an important framework to determine a College or University's reasonable response to an individual who is a victim of gender based harassment and discrimination in the form of dating/intimate partner violence specifically prohibited under the Violence Against Women Act, §304 ("The SaVE Act")(March 15, 2013).

**Question 1a:** Do you agree with Ms. Schuster's apparent contention that under Title IX, "'The Campus Sexual Assault Victim's Bill of Rights,' a 1992 amendment to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (Clery Act), 20 USC § 1092(f), provide[s] an important framework to determine a College or University's reasonable response to an individual who is a victim of gender based harassment and discrimination in the form of dating/intimate partner violence?"

**PFL Response:** The regulations that Ms. Schuster refers to on Page 11 of her Report were promulgated under the Clery Act, which provides no private cause of action for alleged violations.

These regulations were not promulgated under Title IX. These regulations may be used by the Department of Education to assess institutional compliance under the Clery Act. As such, these regulations do not provide "an important framework" for entities other than the Department of Education and institutions of higher education themselves to address compliance under any other legal standard—including Title IX. The Department of Education might have chosen the path of promulgating these regulations under Title IX but did not do so. These regulations are not standards for assessing civil remedies in court under Title IX, and any implication to that effect is misleading and false.

---

On Page 18 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> To summarize, failure to take prompt and effective action to stop harassment, remedy its effects, and prevent its recurrence can constitute deliberate indifference under Title IX, particularly when coupled with foreseeability that a pattern of misconduct is occurring and may be likely to continue to cause a discriminatory effect for students if the funding recipient does not act reasonably to stop it. Failure to promptly, thoroughly, and impartially engage in a school-based investigation can contribute to a finding of deliberate indifference, as such an investigation is the primary route by which recipients identify and interdict discriminatory harassment. An investigation is a reasonable, and required response to notice of discrimination. Further, failure to fully and appropriately train administrators, employees, and students on sexual harassment can create liability when it amounts to deliberate indifference, according to the Supreme Court. *Ohio v. Harris*, 489 U.S. 378, 388 (1989).

**Question 1b:** Do you agree with Ms. Schuster's apparent contention that the foregoing paragraph is an accurate summary of Chadron State College's Title IX obligations to Ms. Larios? (Please note that Ms. Larios was a student at Chadron State College for the 2014 Fall semester and the beginning of 2015 Spring Semester, until her death on January 31, 2015. The term "relevant time period" used below refers to the period of time Ms. Larios was a student at Chadron State College.)

**PFL Response:** This above quoted material from Page 18 of Ms. Schuster's Report suffers from a number of problems. This quoted material is argumentative and misleading.

Foremost, the quoted material conflates what appear to be colloquialized (and misleading) references to OCR *guidance* (without citation or quotation) under Title IX and governing standards for potential liability under *Gebser* and *Davis*.[1] However, following *Gebser* and *Davis*, and during the relevant period, OCR's *administrative* enforcement and OCR's related guidance have proceeded under standards that deviate from the standards in *Gebser* and *Davis*.

Consider what the U.S. Department of Education's Office for Civil Rights (OCR) has *actually* said about an institution's responsibility under Title IX:

> When a school knows or reasonably should know of possible sexual violence, it must take immediate and appropriate steps to investigate or otherwise determine what occurred . . . . If an investigation reveals that sexual violence created a hostile

---

[1] *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 281 (1998); *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 650 (1999).

> environment, the school must then take prompt and effective steps reasonably calculated to end the sexual violence, eliminate the hostile environment, prevent its recurrence, and, as appropriate, remedy its effects.[2]

Note that this language is not identical to the assertion of Ms. Schuster. Critically, and notably absent in the analysis of Ms. Schuster, *Gebser* and *Davis* set an *actual notice* requirement; therefore, there is no requirement for an institution *to do anything* without actual notice. During the relevant period for administrative enforcement purposes, OCR has used, as shown in the block quote above, a more relaxed notice requirement. This OCR *guidance, designed for the purpose of administrative enforcement efforts only,* does not set standards for courts assessing civil remedies under Title IX.  (Indeed, administrative guidance is just that—*guidance*.)

The material on Page 18 of the Schuster Report is neither an accurate statement of OCR administrative guidance during the relevant period nor Supreme Court standards under *Gebser* and *Davis*. Consider the following assertion by Ms. Schuster on Page 18 of her Report: "An investigation is a reasonable and *required* response to *notice* of discrimination" (emphasis added). This is not consistent with OCR guidance.  Consider again the above-referenced block quote from actual OCR guidance: OCR has never *required* institutions of higher education to *investigate* every situation presented to Title IX systems. The guidance—and again it is *guidance and not a regulation or a command from a court of competent jurisdiction*—clearly guides an institution to "otherwise determine" in some circumstances. There is nothing in the *Gebser* and *Davis* ruling that supports Ms. Schuster's assertions—indeed there is no legal obligation to do *anything at all* unless there is *actual notice* under *Gebser* and *Davis*.

The final sentence in the referenced paragraph on Page 18 of the Schuster Report is also flawed. The *Ohio v. Harris* case[3] does not state or support the proposition asserted and is otherwise improperly cited. The case is not on point, lacks any sort of appropriate signifier and is readily distinguishable; the Supreme Court has set specific standards for institutional liability under Title IX in another line of authority—*Ohio v. Harris* is a Section 1983 matter assessing liability relating to officials operating under the color of state law and is not a Title IX case.

---

2.  Training

On Pages 19 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> The record in this case yields more than sufficient evidence for a court to uphold a number of claims, including the "deliberate indifference" standard under Title IX, as well as negligence claims under Title IX and state law. With respect to Title IX and deliberate indifference analysis in this case, I see at least six substantive bases for concluding that Chadron failed to uphold Title IX's mandates and acted with deliberate indifference toward the harm occurring to Fatima Larios. … 4.  The College completely failed to train appropriate personnel consistent with industry standards on topics such as Title IX, how to stop dating/intimate partner violence,

---

[2] U.S. Dept. of Educ. Office for Civil Rights, *Questions and Answers on Title IX and Sexual Violence*, at 2 – 3 (April 29, 2014), https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.
[3] *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

all forms of sexual harassment, and sexual discrimination including dating/intimate partner violence and the obligation to prevent its recurrence, and remedy its effects. This failure includes a lack of training on reporting obligations, the nature of dating/intimate partner violence, appropriate school-based investigations and resolution mechanisms, supporting victims, and working with law enforcement. In my expert opinion, a court could find that such a complete and abject failure to train is sufficient to establish deliberate indifference under Title IX.

**Question 2a:** Do you agree with Ms. Schuster's contention that there were "industry standards" for training under Title IX during the relevant time period?

**PFL Response:** The term "industry standards" is argumentative and manufactured. *There were no and are no* "industry standards" with respect to training under Title IX. The U.S. Department of Education has issued *guidance* (which I note has shifted significantly over time) regarding training under Title IX and has issued resolution letters relating to a variety of institutions that reflect agreements with those institutions regarding training (by their own terms these letters are not binding in any way other than with respect to the signatory). This is guidance—not industry standards nor a regulation—and again exists for purposes of OCR administrative enforcement. These are not standards in an action proceeding under Title IX.  Although The NCHERM Group offers "certification" of those "trained" by its agents and principals (of which Ms. Schuster is one), OCR does not recognize certification of training under Title IX and there is no existing federal regulatory metric to do so. There are no commonly established and accepted standards, customary or otherwise, for training materials, pedagogy and assessment in the field. In fact, there are any numbers of trainers, trainings and training programs and materials offered throughout the country. It is my impression that The NCHERM Group and its operatives collaborate to project the desirability of certification under so-called "industry standards" that *they* have manufactured pursuant to their business plan. Such "industry standards" only exist in the eyes of the purchasers and sellers of these so-called standards, and "certification" only has value to the extent that individuals believe it does.

---

**Question 2b:** Do you agree with Ms. Schuster's contention that Chadron State College's alleged failure to "train appropriate personnel consistent with industry standards" on the topics she identified means that it "failed to uphold Title IX's mandates and acted with deliberate indifference toward the harm occurring to Fatima Larios"?

**PFL Response:** These statements are not supportable. The very concept of failing to comply with "industry standards" is misleading because there are no such standards. Likewise, any conclusion that Chadron State College "failed to uphold Title IX mandates" because of failure to train to "industry standards" is heaping falsehood upon falsehood. The assertion that that Chadron State College "acted with deliberate indifference" is also based upon a false premise and suffers from an additional and obvious flaw that the Supreme Court has not now, nor has it ever, created or acknowledged "industry standards" for training under Title IX that would support a finding in a civil action of deliberate indifference. This latter assertion is deeply flawed conceptually as well. Consider the obvious. Title IX civil actions could theoretically succeed in court against an institution with well-trained individuals (under any standard of evaluation of training) because even well-trained individuals could fail to use their training and be deliberately indifferent: conversely, an institution with no training whatsoever might otherwise act in a way that is not deliberately indifferent in response to a hostile environment. I also note that the Department of Education itself has recently proposed new regulations under Title IX that would

potentially reverse nearly twenty years of guidance to the field and force significant redesign of training materials based on prior guidance.

It is also noteworthy that (as is my understanding) Chadron State College was "trained" by The NCHERM Group. It would seem that this situation might either raise concerns about a conflict of interest in providing expert services to an adverse party and/or raise concerns about the foundations of Ms. Schuster's opinions.

_____

On Page 37 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> In its 2001 Guidance on Title IX in schools, "Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties" the Department of Education's Office for Civil Rights wrote, "Schools need to ensure that employees are trained so that those with authority to address harassment know how to respond appropriately." To be adequately trained, all the college's employees responsible for investigation, adjudication, support, and appeals should have been subject to a professional trainer or expert on campus dating/intimate partner violence as well as sexual misconduct, as is done at hundreds of other colleges and universities each year, for at least two days of training, case studies and competency-building. This group of individuals needs exposure to deep understandings of consent, force, unwelcomeness, hostile environment theory, the neurobiology of trauma, assessing credibility, determining a preponderance of evidence, interviewing techniques, questioning techniques, sexual assault, dating and domestic violence and a dozen other topics essential to making an evidence-based determination.

**Question 2c:** Do you agree with Ms. Schuster's apparent contention that under Title IX during the relevant time period, to be "adequately trained" all of Chadron State College's employees responsible for investigating, adjudicating, supporting, and handling appeals of alleged instances of student-on-student gender discrimination/dating violence should have been subject to a professional trainer or expert on campus dating/intimate partner violence as well as sexual misconduct for at least two days of training, case studies, and competency-building?

**PFL Response:** The concern I have with this assertion is, again, the conflation of OCR guidance and regulatory mandates under the Clery Act with standards for assessing liability in a civil action under Title IX. Moreover, this is not even an entirely accurate assertion of OCR *guidance* related to training. OCR has never guided schools to be trained by "professional trainers", whatever that means, nor has OCR guided schools on a minimum number of training hours or days, or specific training methodologies. Moreover, OCR has not established standards for "experts" in Title IX except with respect to the Title IX Coordinator role. Only someone who is, or has been a Title IX Coordinator could validly assert the role of "expert" in Title IX consistent with guidance from OCR. In fact, OCR states the following:

> There is no minimum number of hours required for Title IX and sexual violence training at every school, but this training should be provided on a regular basis. Each school should determine based on its particular circumstances how such training should be conducted, who has the relevant expertise required to conduct the training, and who should receive the training to ensure that the

> training adequately prepares employees, particularly responsible employees, to fulfill their duties under Title IX. A school should also have methods for verifying that the training was effective.[4]

The assertions by Ms. Schuster appear to be more in the nature of self-serving *marketing* claims of a "need" for NCHERM services and builds upon additionally self-serving concepts such as "industry standards," "experts," "at least two days of training" and "professional trainers."

---

**Question 2d:** Do you agree with Ms. Schuster's apparent contention that under Title IX during the relevant time period, to be "adequately trained" all of Chadron State College's employees responsible for investigating, adjudicating, supporting, and handling appeals of alleged instances of student-on-student gender discrimination/dating violence needed exposure to deep understandings of consent, force, unwelcomeness, hostile environment theory, the neurobiology of trauma, assessing credibility, determining a preponderance of evidence, interviewing techniques, questioning techniques, sexual assault, dating and domestic violence and a dozen other topics essential to making an evidence-based determination?

**PFL Response:** *See 2c.* There is no such specific legal "mandate." At best the assertion is an inartful and misleading cobbling together of information from various sources from OCR. OCR clarified training topics for those campus operatives implementing the campus grievance procedures:

> All persons involved in implementing a school's grievance procedures (e.g., Title IX coordinators, others who receive complaints, investigators, and adjudicators) must have training or experience in handling sexual violence complaints, and in the operation of the school's grievance procedures. The training should include information on working with and interviewing persons subjected to sexual violence; information on particular types of conduct that would constitute sexual violence, including same-sex sexual violence; the proper standard of review for sexual violence complaints (preponderance of the evidence); information on consent and the role drugs or alcohol can play in the ability to consent; the importance of accountability for individuals found to have committed sexual violence; the need for remedial actions for the perpetrator, complainant, and school community; how to determine credibility; how to evaluate evidence and weigh it in an impartial manner; how to conduct investigations; confidentiality; the effects of trauma, including neurobiological change; and cultural awareness training regarding how sexual violence may impact students differently depending on their cultural backgrounds.

> In rare circumstances, employees involved in implementing a school's grievance procedures may be able to demonstrate that prior training and experience has provided them with competency in the areas covered in the school's training. For example, the

---

[4] OCR, *Questions and Answers*, *supra* note 2, at 39.

combination of effective prior training and experience investigating complaints of sexual violence, together with training on the school's current grievance procedures may be sufficient preparation for an employee to resolve Title IX complaints consistent with the school's grievance procedures. In-depth knowledge regarding Title IX and sexual violence is particularly helpful. Because laws and school policies and procedures may change, the only way to ensure that all employees involved in implementing the school's grievance procedures have the requisite training or experience is for the school to provide regular training to all individuals involved in implementing the school's Title IX grievance procedures even if such individuals also have prior relevant experience.[5]

I have never seen or heard OCR or its operatives use the phrases "deep understandings," "hostile environment *theory*" (this one is particularly curious because OCR has used the phrase "hostile environment" as a *rule* and subject to a *balancing test).*  The U.S. Departments of Education and Justice refer to a "hostile environment" as an occurrence where "a student is sexually harassed and the harassing conduct is sufficiently serious to deny or limit the student's ability to participate in or benefit from the program."[6]  The Departments of Education and Justice also state:

> In determining whether this denial or limitation has occurred, the United States examines all the relevant circumstances from an <u>objective and subjective</u> perspective, including:
> 1. the type of harassment (e.g., whether it was verbal or physical);
> 2. the frequency and severity of the conduct;
> 3. the age, sex, and relationship of the individuals involved (e.g., teacher-student or student-student);
> 4. the setting and context in which the harassment occurred;
> 5. whether other incidents have occurred at the college or university;
> 6. and other relevant factors.[7]

But I am unaware of any use of the term "hostile environment theory" by the Department of Education.

_____

On Pages 15 through 17 of her Report, under "D. Standard of Care for Colleges and Universities Related to Victims of Intimate Partner Violence," Ms. Schuster wrote, in relevant part, as follows:

> The standards of care applicable for colleges and universities related to victims of intimate partner violence and to defendant Chadron State College and its employees responsible for implementation of policies, procedures and response protocols, specifically related to Fatima Larios, and the multiple reports of sexual violence involving her and Brandon Finona-Gardner, include:

---

[5] *Id.* at 40.
[6] US Dept. of Ed. Office for Civil Rights and US Dept. of Justice, Civil Rights Division, *University of Montana Letter of Findings*, May 9, 2013, pgs. 4-5.
[7] *Id.* at 5 (numeration and emphasis added).

6. All individuals involved with notice, reporting, investigation, adjudication, resolution and remedies must undertake the minimum duty of knowledge about and familiarity with known risks and legal standards in responding to reports of intimate partner violence. The minimum standards of knowledge include:

a. An understanding of Title IX, its regulations and the significant guidance documents and other policies promulgated by OCR by those individuals within the College charged with receipt of reports, investigation of claims, adjudication of violations, remedial assistance and support;

b. Knowledge of and application of the Jeanne Clery Act Amendment "Campus Sexual Assault Victim's Bill of Rights" and the Violence Against Women Act Sec. 304.

c. Knowledge of the neurobiology of trauma related to dating/intimate partner violence, and the risks and harms specifically applicable to individuals who are victims of dating/intimate partner violence.

7. Adequate training of institutional personnel in implementing those policies, procedures and practices;

8. Awareness and implementation of the customs and practices standard in the field of student affairs and student conduct, particularly in regards to allegations of intimate partner violence.

**Question 2e:** Do you agree with Ms. Schuster's apparent contention that under Title IX during the relevant time period, the "standard of care" required that all of Chadron State College's employees involved with reporting, investigating, adjudicating, resolving, and remedying instances of alleged student-on-student gender discrimination/dating violence "undertake the minimum duty of knowledge about and familiarity with known risks and legal standards in responding to reports of intimate partner violence"?

**PFL Response:** The standards that a plaintiff must meet to establish a *prima facie* violation of Title IX for purposes of seeking monetary damages in civil court are set forth in *Gebser* and *Davis*. There are no Title IX 'standards of care' as such. I am familiar with state law standards of care under state Tort law, but these are separate and distinct concepts.

I have read the following sentence in the Schuster Report on page 16 several times:

> All individuals involved with notice, reporting, investigation, adjudication, resolution and remedies must undertake the minimum duty of knowledge about and familiarity with known risks and legal standards in responding to reports of intimate partner violence.

It is difficult to make sense of this incoherent and otherwise ungrammatical statement, but it appears to make several unsupportable assertions about requirements regarding training and knowledge levels of some employees on campus. I have never heard of concepts such as "minimum duty of knowledge" or a "minimum duty of familiarity" under Title IX, *inter alia.*

_____

**Question 2f:** Do you agree with Ms. Schuster's apparent contention that under Title IX during the relevant time period, the "standard of care" required that all of Chadron State College's employees involved with reporting, investigating, adjudicating, resolving, and remedying

instances of alleged student-on-student gender discrimination/dating violence have a "minimum level of knowledge" about the topics identified in paragraphs (a), (b), and (c) of the above-quoted passage?

**PFL Response:** *See 2d and 2e.* I do not agree. OCR has not articulated a "standard of care," and OCR guidance is not a standard of care in court for civil negligence standards. There are no so-called "minimum standards of knowledge"—and I am not even sure what that means—under Title IX.

_____

**Question 2g:** Do you agree with Ms. Schuster's apparent contention that under Title IX during the relevant time period, the "standard of care" required that all of Chadron State College's employees involved with reporting, investigating, adjudicating, resolving, and remedying instances alleged student-on-student gender discrimination/dating violence have an "awareness and implementation of the customs and practices standard in the field of student affairs and student conduct, particularly in regards to allegations of intimate partner violence"?

**PFL Response:** There are two problems here and I do not agree. First, there are no established "customs and practices standards" as such with respect to Title IX matters in civil court seeking monetary relief. Various entities have asserted best practices and the like but customary practices are not created by bootstrapping or the bald assertions of individuals or groups claiming expertise without foundation. OCR has no process to establish, recognize or validate "good and customary practices" even if they were to exist; OCR guidance and other administrative utterances are not iterations of good and customary practice. Second, the expert's assertion appears to conflate state negligence law principles and/or OCR guidance with causes of action for monetary relief in civil court under Title IX.

_____

On Page 4 of her Report, Ms. Schuster wrote, in relevant part, that she is "a founder and Board member of the Association of Title IX Administrators (ATIXA) and a founder and Board member of the National Behavioral Intervention Team Association (NaBITA)." On Page 4 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> The ATIXA Model Sexual Misconduct Policy, of which I am a co-author, is in use by hundreds of colleges, universities and schools, and has been approved by the US Department of Justice and has been accepted to resolve complaints by the US Department of Education's Office for Civil Rights (OCR). Additionally, ATIXA's model harassment and discrimination policies and procedures, "The ATIXA One Policy, One Process," are in use in hundreds of colleges and schools nationwide.

Finally, on Page 20 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> ATIXA, and its Advisory Board, has taken a leading role in training Title IX Coordinators across the country on their Title IX obligations, including how to conduct investigations. Title IX is subject to administrative enforcement by OCR, as well as enforcement by the courts as well as the certification training materials provided and other resources provided by ATIXA as a part of the certification training.

**Question 2h:**   Do you agree with Ms. Schuster's contention that "Title IX is subject to administrative enforcement by OCR, as well as enforcement by the courts as well as the certification training materials provided and other resources provided by ATIXA as a part of the certification training"?

**PFL Response:** It is true that OCR *and* the courts play a role in Title IX enforcement although Ms. Schuster does not appear to appreciate that the administrative and civil court enforcement models deviate and have distinctive features. The last phrase "certification training materials provided and other resources provided by ATIXA as a part of the certification training" is problematic.  Title IX is most certainly not "subject to" ATIXA certification or materials. This last phrase in particular appears to be a marketing statement for ATIXA products and services—and would be misleading if someone were to believe that ATIXA certification is essential to Title IX compliance. It is not.

---

3. <u>Investigations</u>

On Page 26 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> The College failed to conduct its own impartial, thorough, and prompt civil rights-based investigation into the multiple reports of dating/intimate violence involving Fatima Larios and Brandon Finona-Gardner.

> Failure to promptly, thoroughly, and impartially investigate can constitute evidence of a determination of deliberate indifference, as an investigation is the primary route by which colleges identify and interdict intimate partner violence. OCR requires that schools engage in a "reasonably diligent inquiry."

**Question 3a:**  During the relevant time period, did Title IX require that Chadron State College engage in a "reasonably diligent inquiry" each time it learned that student-on-student gender discrimination/dating violence could have occurred?

**PFL Response:** The simple answer is no. OCR has *guided* institutions to investigate or otherwise inquire in situations where an institution has actual or constructive notice of harassment that may rise to the level of hostile environment. The standard in civil court under *Gebser* and *Davis* turns on "actual notice" and "deliberate indifference." Simply "learning of a matter" is not necessarily actual notice. An institution might not be liable under the *Gebser* and *Davis* standards even without using "reasonably diligent inquiry."  The assertions by Ms. Schuster here are misleading because OCR standards for administrative enforcement deviate from the standards set by the Supreme Court of the United States, and OCR guidance is not intended to be nor is it controlling on how courts interpret Title IX enforcement through an implied cause of action for monetary relief.

---

**Question 3b:**  During the relevant time period, did Title IX require Chadron State College to undertake an impartial, thorough, and prompt civil-rights based investigation each time it learned that student-on-student gender discrimination/dating violence could have occurred?

**PFL Response:** Again, no. *See 3a.*

**Question 3c:**  During the relevant time period, did Title IX require Chadron State College to undertake an investigation of any particular depth, scope, or length each time it learned that student-on-student gender discrimination/dating violence could have occurred?

**PFL Response:** Again, no. *See 3a.* The Supreme Court of the United States has not prescribed any specific investigatory "standards" for purposes of a Title IX-implied cause of action. One has to wonder if the courts or even OCR for that matter have authority granted by Congress under Title IX to *mandate* institutional response requirements in such detail. It is one thing for OCR to *guide* institutions down a pathway that is likely to address a hostile environment issue; yet another to mandate that pathway specifically via regulation or court ruling.

---

On Pages 20 and 21 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> Schools are also "required by the Title IX regulations to adopt and publish procedures providing for prompt and equitable resolution of sex discrimination complaints, including complaints of sexual harassment."  Additionally, schools are also required to comply with the Title IX standards in all cases involving dating/intimate partner violence. OCR's regulations were duly promulgated subsequent to public notice and comment and negotiated rulemaking and thus have the force of law. OCR and the courts require those procedures to detail a prompt, effective, and equitable remedy to notice of sex discrimination, and have laid out five primary institutional requirements:
>
> 1. The institution must designate a Title IX Coordinator, whose role is to ensure the institution complies with Title IX and to ensure employees are trained sufficiently to achieve compliance.
>
> 2. The institution must promptly, thoroughly, and impartially investigate the discriminatory conduct.
>
> 3. The institution must bring an end to the discriminatory conduct;
>
> 4. The institution must take steps reasonably calculated to prevent the future reoccurrence of the discriminatory conduct.
>
> 5. The institution must restore the victim to her pre-deprivation status or wholeness.
>
> OCR adds that "These steps are the school's responsibility <u>whether or not the student who was harassed makes a complaint or otherwise asks the school to take action</u>."  Accordingly, indirect notice, such as through third parties or even rumor would trigger the need to employ these four steps to fulfill the compliance mandate.

**Question 3d:**  During the relevant time period, did Title IX require Chadron State College "to adopt and publish procedures providing for prompt and equitable resolution of sex discrimination complaints, including complaints of sexual harassment" that contain the "five primary institutional requirements" as Ms. Schuster contends?

**PFL Response:** Current regulations under Title IX (34 C.F.R. § 106.8 and § 106.9 specifically) require the following:

> Each school must:
>
> (1) disseminate a notice of nondiscrimination.
>
> (2) designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under Title IX.
>
> (3) adopt and publish grievance procedures providing for the prompt and equitable resolution of student and employee sex discrimination complaints.[8]

The regulations do not lay out "five primary institutional requirements" as such, and the list of five provided by Ms. Schuster are inaccurate, argumentative and misleading.

The Title IX regulations do not refer to a "Title IX Coordinator" *per se*, although many institutions choose to designate an employee as such, largely in response to OCR *guidance* that refers to the position as a "Title IX Coordinator." See, for example, the interim and substantial guidance issued in 2017.[9] (I suppose the most accurate description would be "Part 106 Coordinator" but that is not commonly in use.)

The Title IX regulations do not use the terms "thoroughly" or "impartially." It is widely known among Title IX experts that the regulatory mandate is "prompt" and "equitable." Furthermore, Title IX regulations speak in terms of "resolution" not investigation. Although an institution might resolve a matter through "investigation" the actual regulatory mandate is to reach "resolution," which might be arrived at through other potential avenues such as mediation.

There is no regulatory mandate to the effect that the institution "must bring an end to discriminatory conduct." (*Gebser* and *Davis* clearly reject this standard as well.) Moreover, even OCR *guidance* articulates an institutional *response* requirement and not an institutional outcome requirement. OCR has guided institutions to *seek* to end discrimination, for good reason. Again, OCR states:

> When a school knows or reasonably should know of possible sexual violence, it must take immediate and appropriate steps to investigate or otherwise determine what occurred . . . . If an investigation reveals that sexual violence created a hostile environment, the school must then take prompt and effective steps reasonably calculated to end the sexual violence, eliminate the hostile environment, prevent its recurrence, and, as appropriate, remedy its effects.[10]

---

[8] OCR, *Questions & Answers*, *supra* note 2 at 9 – 10 (internal citations omitted).

[9] U.S. Dept. of Educ. Office for Civil Rights, *Q & A on Campus Sexual Misconduct* (Sept. 2017).

[10] OCR, *Questions and Answers*, *supra* note 2.

In many instances it would be ludicrous to presume that anyone, let alone a college, could bring an end to discriminatory conduct or its impacts in every situation. The assertion in Statement 3 of Ms. Schuster's "primary" requirements is inaccurate and misleading.

There is no Title IX regulatory mandate such as articulated in so-called "primary institutional requirement" 4 or 5. Neither *Gebser* nor *Davis* support these assertions. These statements appear to be argumentative assertions based up OCR *guidance*. OCR has never required institutions of higher education to "restore a victim to *her* [note that OCR would use gender neutral pronouns here] pre-deprivation status or wholeness." In many instances such a mandate would be impossible to fulfill. Again, OCR guidance states a school should "take prompt and effective steps *reasonably calculated*" to remedy any effects of a hostile environment "*as appropriate*."[11]

_____

**Question 3e:**  Do you agree with Ms. Schuster's contention that under Title IX during the relevant time period, Chadron State College must have "employ[ed] these four steps" each time it heard "even a rumor" that student-on-student gender discrimination/dating violence may have occurred?

**PFL Response:** No, *see 3d*.

_____

On Page 26 of her Report, however, Ms. Schuster wrote, in relevant part, as follows:

> While victims/survivors have a voice in whether their institution proceeds with an investigation, OCR has clearly indicated that in cases where there is threat of further harm or violence or where there is imminent personal or community danger, the institution may have an obligation to proceed with the investigative and disciplinary process regardless of a victims' wishes.

**Question 3f:**  Under Title IX during the relevant time period, may Chadron State College have considered, when it learned that student-on-student gender discrimination/dating violence could have occurred, whether the alleged victim wanted Chadron State College to undertake an investigation?

**PFL Response:** The answer is yes. There is nothing in *Gebser* and *Davis* that prohibits an institution from considering an alleged victim's requests in fashioning a response that is not deliberately indifferent. Indeed, consulting or attempting to consult a victim might provide evidence of lack of deliberate indifference. Moreover, consider the following *guidance* from OCR that entrusts the Title IX Coordinator or designee with the responsibility to determine when to proceed with or without an alleged victim's desire to proceed:

> [T]he Title IX coordinator is generally in the best position to evaluate confidentiality requests. Because schools vary widely in size and administrative structure, OCR recognizes that a school may reasonably determine that an employee other than the Title IX coordinator, such as a sexual assault response coordinator,

_____

[11] *Id.(emphasis added)*

dean, or other school official, is better suited to evaluate such requests.[12]

Again, OCR guidance suggests the Title IX coordinator or designee should take confidentiality requests *into consideration*:

> For Title IX purposes, if a student requests that his or her name not be revealed to the alleged perpetrator or asks that the school not investigate or seek action against the alleged perpetrator, the school should inform the student that honoring the request may limit its ability to respond fully to the incident, including pursuing disciplinary action against the alleged perpetrator. . .

> If the student still requests that his or her name not be disclosed to the alleged perpetrator or that the school not investigate or seek action against the alleged perpetrator, the school will need to determine whether or not it can honor such a request while still providing a safe and nondiscriminatory environment for all students, including the student who reported the sexual violence.[13]

Also, consider the following guidance language as to when the Title IX coordinator or designee may have to move forward against the wishes of an alleged victim:

> When weighing a student's request for confidentiality that could preclude a meaningful investigation or potential discipline of the alleged perpetrator, a school should consider a range of factors.

> These factors include circumstances that suggest there is an increased risk of the alleged perpetrator committing additional acts of sexual violence or other violence (e.g., whether there have been other sexual violence complaints about the same alleged perpetrator, whether the alleged perpetrator has a history of arrests or records from a prior school indicating a history of violence, whether the alleged perpetrator threatened further sexual violence or other violence against the student or others, and whether the sexual violence was committed by multiple perpetrators). These factors also include circumstances that suggest there is an increased risk of future acts of sexual violence under similar circumstances (e.g., whether the student's report reveals a pattern of perpetration (e.g., via illicit use of drugs or alcohol) at a given location or by a particular group). Other factors that should be considered in assessing a student's request for confidentiality include whether the sexual violence was perpetrated with a weapon; the age of the student subjected to the sexual violence; and whether the school possesses other means to obtain relevant evidence (e.g., security cameras or personnel, physical evidence).[14]

---

[12] *Id. at 20.*
[13] *Id at 19 – 20.*
[14] *Id. at 21.*

Then, on Page 29 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> We make clear in all of our trainings that when measuring initial information regarding intimate partner violence or other forms of sexual misconduct that when the conduct involves threats or violence the investigation MUST proceed in spite of the wishes of the victim.

**Question 3g:**  During the relevant time period, were there circumstances under which Title IX required Chadron State College to undertake an investigation of potential student-on-student gender discrimination/dating violence when the alleged victim did not want Chadron State College to do so?

**PFL Response:** There is nothing in *Gebser* or *Davis* that *requires* an institution of higher education to proceed over the objection of an alleged victim. There is no Title IX regulation that states this position. The OCR guidance referred to immediately above is *permissive* not mandatory.  OCR guides college to defer to the *judgment* of the Title IX Coordinator.

4.  <u>Reporting to law enforcement</u>

On Page 35 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> In fact, none of the Responsible Employees in the Residence Life chain of command and even in the Student Affairs administration charged with reporting and addressing intimate partner violence took their legally mandated responsibilities of reporting and addressing seriously enough to intervene with Fatima by contacting the Chadron police or the Title IX Coordinator.

On Page 37 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> If any of the Chadron employees, who were trained to notice signs of dating/intimate partner violence and report it to the police, had fulfilled their obligations and reported to the police there may have been an opportunity to intervene and stop the violence before it reached the point of destroying Fatima emotionally and psychologically leading to her suicide.

**Question 4a:**  During the relevant time period, did Title IX require Chadron State College to report potential Title IX violations to law enforcement?

**PFL Response:** There is no *Title IX requirement* to report anything to law enforcement. OCR guidance *encourages* reporting in some circumstances:

> A school should notify complainants of the right to file a criminal complaint and should not dissuade a complainant from doing so either during or after the school's internal Title IX investigation. Title IX does not require a school to report alleged incidents of

sexual violence to law enforcement, but a school may have reporting obligations under state, local, or other federal laws.[15]

Moreover, OCR guidance provides that responsible employees report Title IX matters directly to "the Title Coordinator or other appropriate school designee"[16]; nothing *prohibits* a responsible employee from reporting a crime in progress to the police or calling 911.

---

5. Special Relationship

On Page 42 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> The College had a "special relationship" with Ms. Larios as established in part by Fatima's status as a student athlete and resident of the campus dorms. Fatima was recruited by the university and a member of the college's softball team. The family believed that the College would look out for her and respond appropriately if she was in danger of harm. The College failed to fulfill that obligation. "It is clear that a relationship does not have to be custodial to be legally special …[t]he danger to a student must be known or reasonably foreseeable by a university and then reasonable care must be able to prevent such a foreseeable attack."

Ms. Schuster cites an article you co-authored in 1999, entitled "The Rights and Responsibilities of the Modern University: Who Assumes the Risks of College Life?" to support the quoted, final sentence of this passage.
On Pages 19 and 20 of her Report, Ms. Schuster wrote, in relevant part, as follows:

> The record in this case yields more than sufficient evidence for a court to uphold a number of claims, including the "deliberate indifference" standard under Title IX, as well as negligence claims under Title IX and state law. With respect to Title IX and deliberate indifference analysis in this case, I see at least six substantive bases for concluding that Chadron failed to uphold Title IX's mandates and acted with deliberate indifference toward the harm occurring to Fatima Larios. … 6. The College had a Special Relationship with Finona Larios as a residential student athlete at the college, and failed to adequately respond to multiple good faith reports of violence and physical, verbal and/or emotional abuse.

**Question 5a:** In your opinion, did Chadron State College have a "special relationship" with Ms. Larios?

**PFL Response:** The college/student relationship historically was not special in itself, although two very recent cases from other jurisdictions, *Nguyen v Mass. Inst. of Tech.,* 2018 WL 2090610 (Mass. Sup. Jud. Ct. 2018) and *Regents of University of California v. Superior Court*, 4 Cal.5th 607 (California Supreme Court 2018), have reached this conclusion, in part based on reliance upon statements in the Restatement (Third) of Torts and reference to my work.

---

[15] *Id. at 27.*
[16] *Id. at 14.*

Some jurisdictions have moved away entirely from classic affirmative/negative duty analysis, reconceptualizing the role of duty analysis in light of that new Restatement. However, in jurisdictions that retain the traditional approach to duty analysis in certain circumstances, and in relation to those circumstances, a college student may be in special relationships with an institution. One such relationship may be landlord/tenant. Such a relationship is the foundation of a common law affirmative tort duty limited to the context of that relationship. As such a student would *not be* categorically in a special relationship with a college for *all* purposes. As an athlete a student could be owed a negative tort duty in the context of that athletic activity, and affirmative tort duty on the premises of facilities operated by an institution of higher education by virtue of being in a special relationship as a business invitee of the institution. As such the student/athlete relationship is not inherently special although there might be special relationships arising while pursuing that relationship (ex. playing tennis at the college's tennis facility). Again, these duties would be limited to their context, and otherwise subject to limitations.

For purposes of clarification the referenced source is a book.

_____

**Question 5b:** If Chadron State College had a special relationship with Ms. Larios, how if at all did that special relationship change or impact its Title IX obligations to Ms. Larios?

**PFL Response:** Special relationship analysis relates to questions of common law tort duty in states that retain traditional analysis of the law relating to duty, not Title IX analysis. The existence of a special relationship, *vel non,* is entirely irrelevant in calculating Title IX obligations.

_____

6.  Parental Notice

On Pages 15 and 16 of her Report, under "D. Standard of Care for Colleges and Universities Related to Victims of Intimate Partner Violence," Ms. Schuster wrote, in relevant part:

> The standards of care applicable for colleges and universities related to victims of intimate partner violence and to defendant Chadron State College and its employees responsible for implementation of policies, procedures and response protocols, specifically related to Fatima Larios, and the multiple reports of sexual violence involving her and Brandon Finona-Gardner, include: 5. The College must adopt policies and procedures related to parental notification in order to notify parents and family members in a timely way when their student is in a volatile situation or a student's health, safety or well-being are at issue."

On Page 42 of her Report, Ms. Schuster wrote that Chadron State College's "Athletic Department failed to involve [Ms. Fatima Larios's] parents in any discussions that may have enabled the parents to provide additional support, and work in partnership with the College to provide assistance to Fatima." Later, on Page 43 of her Report, Ms. Schuster faults Chadron State College because it "didn't contact her parents to express their concerns."

**Question 6a:** Do you agree with Ms. Schuster's apparent contention that during the relevant time period, Title IX required Chadron State College to "adopt policies and procedures related to

parental notification in order to notify parents and family members in a timely way when their student is in a volatile situation or a student's health, safety or well-being are at issue"?

**PFL Response:**   Ms. Shuster's assertions here are argumentative, misleading and at times false. There are no Title IX requirements to notify parents. The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99) controls parental notification and is *permissive* in light of the the so-called Virginia Tech amendments (34 CFR Part 99.36) in 2009 after the tragic incident on that campus.  These amendments, in part, allow for greater information sharing when health or safety emergencies exist, and could include parental notification.

Indeed, in many instances FERPA would *prohibit* parental notification. Moreover, there may be circumstances when notifying parents would (a) risk causing harm and/or (b) be unnecessary because parents already are aware of information sought to be shared.

_____

**Question 6b:**  Ms. Schuster contends that Chadron State College "failed" to involve Ms. Fatima Larios's parents in any discussions that may have enabled the parents to provide additional support, and work in partnership with the College to provide assistance to Fatima.  Under Title IX during the relevant time period, what factors or circumstances would Chadron State College need to consider, and what conclusions would it need to draw, before appropriately concluding that it should contact a student's parents about that student's dating relationship?

**PFL Response:** *See 6a.*  I would add that an institution might risk creating a hostile environment for purposes of OCR administrative enforcement under Title IX *by* notifying parents in some circumstances and would also be advised to assess potential risk under negligence and medical privacy law standards if relevant before sharing information.

_____

7.  OCR's September 26, 2017 letter

On or about September 26, 2017, Chadron State College received the enclosed letter from J. Earlene Gordon, Supervisory Attorney with the U.S. Department of Education's Office for Civil Rights.  Ms. Gordon's letter concerned OCR Complaint Number: 07162027, filed on November 24, 2017, in which, as she explained, "the complainants allege[d that Chadron State College] discriminated against their clients' daughter (the Student) [namely, Ms. Fatima Larios] on the basis of sex by failing to take immediate and appropriate steps to investigate or otherwise determine whether the Student was sexually harassed, thereby subjecting the Student to a hostile environment."  On the second page of her letter, Ms. Gordon wrote, in relevant part, that "OCR is closing the systemic allegation as to whether the College failed to promptly and equitably respond to other complaints, reports and/or incidents of sexual assault/violence of which it had notice; and as a result, other students were subjected to a sexually hostile environment.  OCR has not obtained sufficient evidence to support either an individual or systemic finding" against Chadron State College.

**Question 7a:**  Do you place any significance on the OCR's statement, some 20 months after it received Complaint Number 07162027, that it had not obtained "sufficient evidence to support either an individual or systemic finding" against Chadron State College?

**PFL Response:** I do. Although the determinations, if any, made by OCR pursuant to a voluntary resolution process may not be binding in a related Title IX civil action for monetary damages I find the conclusions of OCR to be influential. OCR investigates institutions of higher education using standards that are more stringent that those used to assess institutional liability under *Gebser* and *Davis*. If a nearly two-year investigation of an institution fails to uncover "sufficient evidence" to support findings of non-compliance that would at least suggest that an institution of higher education would be in compliance under *Gebser* and *Davis* standards in civil court.

---

**Question 7b:** I have enclosed with this letter a true and accurate excerpt of the position statement Chadron State College submitted to the Department of Education in response to Complaint Number 07162027 (specifically, Page 33, Part 1 through Page 42, Paragraph 46 of Part 1, with attachments).  Based on the information provided in this excerpt, do you have any reason to disagree with OCR's conclusion that it did not obtain sufficient evidence to support an individual finding against Chadron State College (or do you otherwise believe Chadron State College was "deliberately indifferent" under Title IX with regard to Ms. Larios)?

**PFL Response:** I have reviewed the materials provided to me under cover of letter dated November 15, 2018. Based upon my review I have no reason to disagree with OCR's conclusion that it did not obtain sufficient information to support a finding against Chadron State College. I have not reviewed any information that would lead me to believe that Chadron State College was "deliberately indifferent" under *Gebser* and *Davis* standards. To contrary, the records I have reviewed show that Chadron State College was actively engaged in efforts to assist Ms. Larios, who at times did not avail herself of opportunities offered by Chadron State College's Title IX response systems. With due respect to the family of Ms. Larios and for her tragic and untimely death, given the materials I have reviewed, OCR may have had to consider whether (1) Ms. Larios made decisions not to avail herself of opportunities to engage Chadron State College's Title IX systems, (2) Ms. Larios may have harassed another student and was not the "victim", and (3) Ms. Larios suicide may have been the result of causal factors unrelated to any Title IX issues and may have otherwise been unpreventable no matter what level of response Chadron State College executed on her behalf.  Based upon my review, this is a truly tragic situation, not an institutional Title IX violation under *Gebser* and *Davis*—and OCR's administrative determination speaks for itself for administrative enforcement purposes.

---

The opinions expressed in this expert response are based on my own professional experience, expertise and knowledge.  Should new information be produced at any time related to this matter after my report is submitted, I reserve the right to alter my opinions and/or amend this report.

Respectfully,

Professor Peter F. Lake

# CURRICULUM VITAE
# Professor Peter Francis Lake

1401 61st Street South
St. Petersburg, FL 33707
(727) 562-7793
(727) 490-0988 (fax)
E-mail address: lake@law.stetson.edu

## Address

**Law School Office**                                    **Home**

Stetson University College of Law                   8903 River Preserve Drive
1401 61st Street South                              Bradenton, FL 34212
St. Petersburg, FL 33707                            Telephone: (941) 544-3361
Telephone: (727) 562-7793

## Education

| | | |
|---|---|---|
| 1981 | A.B., Philosophy, Magna Cum Laude | Harvard College |
| 1984 | J.D., Cum Laude | Harvard Law School |

## Honors, Awards, Grants, Special Appointments

*National*
- Alpha Chi Omega Vision Award, (2003) by Alpha Chi Omega Women's Fraternity
- Roundtable for "Student Mental Health and the Law" (2007), a publication by the Jed Foundation
- Featured Author/Work, 2008 Pivotal Publications Colloquium, University of Connecticut
- Advisory Board for "Balancing Safety and Support on Campus: A Guide for Campus Teams" a publication by the Jed Foundation and the Higher Education Mental Health Alliance (2011)
- Chairman, Council of Experts for the 32 NCSI Project, VTV Family Outreach Foundation (2012 – present)
- Honorary Guest Lecturer, 18th Annual Jack Beyerl Student Affairs Lecture (2013), Ball State University

*Stetson Law School*
- Outstanding Teaching Award (May 1995) (awarded by Stetson College of Law for excellence in teaching)
- Named Professor of the Year (1996) by the Stetson Student Bar Association
- Homer and Dolly Hand Award (1996) (Stetson University Award for Excellence in Scholarship)
- Honored for "Academic Excellence" by the Stetson Student Bar Association (2000)
- Golden Apple Achievement Award, (2000) presented by the Stetson Business Law Society (favorite professor of the student body)
- Homer and Dolly Hand Award (2000) (Stetson University Award for Excellence in Scholarship)
- Best Professor for the First Year Class (2003-04) by the Student Bar Association
- Speaker at the December 2016 Graduation Celebration (chosen to speak by the student body)

*Harvard Law School*
- Laylin Prize for the best paper written by a student in the field of Public International Law or on an aspect of that field as determined by the Dean

*Harvard College*
- Phi Beta Kappa, Alpha Chapter, Rank Group 1 (four year cumulative)
- Detur Prize (1978)
- Harvard Scholarship (1979) (honorary)
- John Harvard Scholarship (1980) (honorary)
- Mark DeWolfe Howe Fund (1981) grant for study and research in civil rights/civil liberties and legal history

Peter Francis Lake              **CurriculumVitae**                    Page 2 of 42

## Current and Past Professional Memberships

Member, New York State Bar Association
Member, American Bar Association
Academic Master, Polk County American Inn of Court
Member, The American Society for Political and Legal Philosophy
Member, Student Education and Admission to Bar Subcommittee of Florida Bar
Member, National Academic Advisory Board, Alpha Delta Pi Sorority
Member, Review Board, Higher Education Center for Alcohol and Other Drug Prevention
Member, Editor of the Journal of College and University Law
Member, Board of the Center for Academic Integrity
Member, Council of Advisors to the Network

## Professional Experience

### Law School

1990-present – Professor of Law, Charles A. Dana Chair, and Director of the Center for Excellence in Higher Education Law and Policy, Stetson University College of Law
February 23 – July 1, 2015 – Interim Director of Title IX Compliance, Stetson University
October 1995 - Full Professor (effective August 1996)
October 1994 - Tenure Granted (effective August 1995)
August 1990 - Assistant Professor of Law

Teaching assignments: Torts I & II, Advanced Tort Law Seminar, Insurance, Jurisprudence, Agency, Law and Higher Education, Alternative Dispute Resolution, Survey of Florida Law, and Client Counseling.

**Selected Committee Work/Service to Stetson Law School:**

- Coordinator of the Honors Program
- Coach, Client Counseling Team (including coach of a Regional Team Winner)
- Committee to Develop Uniform Standards on Directed Study, Individual Research and Seminars
- Dean Search Committee
- Distinguished Lecturers and Speakers Committee
- Faculty Mentor
- Faculty Scholarship Committee
- Faculty Teaching Committee/Faculty Development Committee
- Faculty Recruitment Subcommittee
- Honor Code Investigator
- Honor Code Review Committee
- Judicial Clerkship Programs
- Judicial Intern Selection Committee
- Participant in Academic Orientation/Academic Success
- Strategic Planning Committee
- Chairman, Student Activities and Placement Committee
- Dean's Transition Committee
- Chairman, Honors and Awards Committee
- Chairman, Academic Support
- Faculty Representative, Board of Trustees
- Curriculum Development Committee
- Research and Writing Professors Conversion to Tenure Committee
- Chair, National Conference on Law and Higher Education

## Consulting and Other

2017-present – Co-developer, "Compliance U," a higher education training platform in partnership with ACPA, College Student Educators International
1998-present – President, Hierophant Enterprises, Inc.  (Consulting Corporation)

Peter Francis Lake                **CurriculumVitae**                **Page 3 of 42**

## Clerkships

| | |
|---|---|
| 1985-86 | Law Clerk to the Honorable Neil Lynch, Associate Justice, Massachusetts Supreme Judicial Court |
| 1984-85 | Law Clerk to the Honorable Bruce M. Selya, Judge, United States District Court for the District of Rhode Island (Now United States Court of Appeals, 1st Circuit) |

## Professional Practice

| | |
|---|---|
| 1986-1990 | Associate, Cahill Gordon & Reindel, New York Office, Member of Firm Hiring Committee (1989) |
| 1986 | Campaign Advisor, Director of Investigations, Committee to Elect James E. O'Neill, Rhode Island Attorney General Race |
| 1984 | Summer Law Clerk, Palmer & Dodge, Boston |
| 1983 | Summer Law Clerk, Cahill Gordon & Reindel, New York Office |
| 1981-83 | Part-time and Summer Law Clerk, LeBoeuf, Lamb, Leiby & MacRae, Boston Office |
| 1980-81 | Consumer Protection Unit Investigator, Part-time Paralegal, Office of the Attorney General of the State of Rhode Island |
| 1979-80 | Part-time Paralegal, Office of the Public Defender of the State of Rhode Island (volunteer) |

## Teaching Assistant/Research Assistant

| | |
|---|---|
| 1984 | Harvard College, Teaching Fellow for Professor Lloyd Weinreb |
| 1984 | Research Assistant for Professor Henry Steiner, Harvard Law School |
| 1983-84 | Research Assistant for Professor Wendy Mariner, Harvard University, School of Public Health |
| 1983 | Harvard College, Teaching Fellow for Professor Charles Fried |

## Law Journal

| | |
|---|---|
| 1983-84 | Board of Editors
*HARVARD INTERNATIONAL LAW JOURNAL* |

## Books, Videos and Other Publications

The Four Corners of Title IX Regulatory Compliance: A Primer for American Colleges and Universities, HIEROPHANT ENTERPRISES, INC. 2017.

Executive Editor, *Title IX: Training and Promising Practices* and *Title IX: Developing Policies and Exploring Priority Issues* [2-Part Binder Series] (2016 PaperClip Communications, Inc.).

Peter Francis Lake        **CurriculumVitae**        **Page 4 of 42**

## Books and Other Publications (Cont'd)

"Title IX Compliance Series," A Five-Part Video Series and Instructional Course (2014 Magna Publications, Inc.).

"Title IX for Faculty: Your Role in Helping Students," A Video and Instructional Course (2014 Magna Publications, Inc.).

"Title IX for Students: What You Need to Know," A Video and Instructional Course (2014 Magna Publications, Inc.).

Higher Education and the Law:  Cases and Materials, FOUNDATION PRESS 2014 [with J. Areen].

The Rights and Responsibilities of the Modern University:  The Rise of the Facilitator University, 2nd ed., CAROLINA ACADEMIC PRESS  2013.

The Foundations of Higher Education Law and Policy:  Basic Legal Rules, Concepts and Principles for Student Affairs, NASPA  2011.

Beyond Discipline – Managing the Modern Higher Education Environment, HIEROPHANT ENTERPRISES, INC. 2009.

The Rights and Responsibilities of the Modern University: Who Assumes the Risks of College Life?, CAROLINA ACADEMIC PRESS 1999 [with R. Bickel] [ Reviewed by Cranman & Ward, 26 J.C. & U.L. 389 (Fall 1999)].

"Secrets of Basic Tort Law," A 4 Hour Audio Tape Series on Basic Tort Law (1998 Hierophant Enterprises, Inc.).

## Significant Journal and Other Writings

"Overreacting to College Student Suicide?  How Promoting *Reasonable* Expectations for Suicide Prevention Will Help Everyone," [with Dr. Paul Polychronis] Inside Higher Ed (forthcoming May 2018).

"Next Up in Title IX Compliance," College Planning and Management (April 1, 2018).

"In Times of Scandal, Conflicts with College Lawyers Multiply," The Chronicle of Higher Education (Feb. 25, 2018).

"Mission Possible," College Planning and Management (Feb. 1, 2018).

"From Discipline Codes to Contractual Respect," The Chronicle of Higher Education (Nov. 26, 2017).

"Title IX… in Regulatory Limbo," College Planning and Management (Nov. 1, 2017).

"'Interim' Guidance on Title IX Creates Confusion, Not Clarity," The Chronicle of Higher Education (Sept. 24, 2017).

"A Blueprint for Title IX Compliance," College Planning and Management (July 1, 2017).

"Compliance U," College Planning and Management (April 1, 2017).

"First Amendment Survival Guide for Presidents," The Chronicle of Higher Education (March 26, 2017).

"The Hazards and Opportunities Presented by Title IX," The Chronicle of Higher Education (Feb. 19, 2017).

"Title IX in Transition Under Trump," College Planning and Management (Jan. 1, 2017).

**Peter Francis Lake**            **CurriculumVitae**            Page 5 of 42

## Significant Journal and Other Writings (Cont'd)

"Compliance Crusader," Inside Higher Ed (August 11, 2016).

"Talking Points – Caulking the Cracks in Campus Safety," Currents Magazine, a publication of CASE (Feb. 2014).

"Welcome to Compliance U: The Board's Role in the Regulatory Era," The Association of Governing Board's Trusteeship Magazine, No. 4 Vol. 21 (July/August 2013).

"What the New Campus Safety Center Can Accomplish" The Chronicle of Higher Education (July 15, 2013).

"The College 'Court' Phenomenon" Spring 2013 edition of NASPA's Leadership Exchange.

"Time for Tenure for SSAOs" Winter 2013 edition of NASPA's Leadership Exchange.

"Cardiac Evaluation of Collegiate Student-Athletes: A Medical and Legal Perspective," *Am J Med* 2012, [with Paterick TE, Jan MF, Paterick ZR, Umland MM, Kramer C, Seward JB, Tajik AJ, Maron BJ].

"Who's E-mail Is It, Anyway?" The Chronicle of Higher Education (April 3, 2011).

"What's Next for Private Universities? Accountability," The Chronicle of Higher Education (December 2010).

"Will Your College Be Sued for Educational Malpractice?," The Chronicle of Higher Education (August 11, 2009).

"Student Discipline: The Case Against Legalistic Approaches," The Chronicle of Higher Education (April 17, 2009).

"Student-Privacy Rules Show a Renewed Trust in Colleges," The Chronicle of Higher Education (February 6, 2009).

"Still Waiting:  The Slow Evolution of the Law in Light of the Ongoing Student Suicide Crisis," 34 J.C. & U.L. 253-284 (2008).

"Higher Education Called to Account," The Chronicle Review, Chron. of Higher Educ. (June 29, 2007).

"Alcohol and Campus Risk Management," Campus Activities Programming (October 2006) [with A. Dickerson].

"Hazing in the Internet Age," NASPA Leadership Exchange (September 2006) [with A. Dickerson].

"A Blueprint for Collaborative Risk Management Teams," Campus Activities Programming (April 2006) [with A. Dickerson].

"Private Law Continues to Come to Campus:  Rights and Responsibilities Revisited," 31 J.C. & U.L. 621-663 (2005).

"Deflating the Risks of Inflatables," NASPA Leadership Exchange 22 (December 2005) [with A. Dickerson].

"The Emerging Crisis of College Students Suicide:  Law and Policy Responses to Serious Forms of Self-Inflicted Injury," 33 STETSON L. REV. 125-127 (2002) [with N. Tribbensee].

"The Special Relationships Between a College and a Student:  Law and Policy Ramifications for the Post *In Loco Parentis* College," 37 IDAHO L. REV. 531-555 (2001).

Peter Francis Lake                CurriculumVitae                Page 6 of 42

**Significant Journal and Other Writings (Cont'd)**

"Modern Liability Rules and Policies Regarding College Student Alcohol Injuries: Reducing High Risk Alcohol Use Through Norms of Shared Responsibility and Environmental Management," 53 OKLA. L. REV 611-630 (2000).

"Tort Litigation in Higher Education," 27 J.C. & U.L. 255-311 (2000).

"When Fear Knocks: The Myth and Realities of Law School," 29 STETSON L. REV. 1015-1056 (2000).

"Common Law 'Duty' Analysis: The Conceptual Expansion of 'Duty' in a Period of Doctrinal Consolidation/Retrenchment," 10 Kan. J.L. & Pub. Pol'y 153 (2000).

"Bad Boys, Bad Men, and Bad Caselaw: Re-examining the Historical Foundations of No-Duty-To-Rescue Rules," 43 NEW YORK LAW SCHOOL L. REV. 385-450 (1999).

"The Rise of Duty and the Fall of In Loco Parentis and Other Protective Doctrines in Higher Education Law," 64 MISSOURI L. REV. 1 (1999).

"The Emergence of New Paradigms in Student University Relations: From In Loco Parentis to Bystander to Facilitator," 23 JOURNAL OF COLLEGE AND UNIVERSITY LAW 755-795 (1997) [with R. Bickel].

"Common Law Duty in Negligence Law: The Recent Consolidation of a Consensus on the Expansion of Analysis of Duty and the New Conservative Liability Limiting Use of Policy Considerations,"34 SAN DIEGO L. REV. 1503-1570 (1997).

"Recognizing the Importance of Remoteness to the Duty to Rescue," 46 DEPAUL L. REV. 315-365 (Winter 1997).

"The Expanding Duty of the University to Reduce the Risk of Student Assault: The Case Against a Bystander University Which Has No Affirmative Duty to Rescue Its Students," Vol.7, No.3 Synthesis 534 (Winter 1996) [with R. Bickel].

"Virginia is Not Safe For Lovers: The Virginia Supreme Court Rejects Tarasoff in Nasser v. Parker," 61 BROOKLYN LAW REVIEW 1285-1298 (1995).

"Waite and See: The Confusing State of Interspousal Immunity," Noble Pursuits (THE JOURNAL OF THE LAKELAND FLORIDA BAR ASSOCIATION) (1994) [with A. Fanzlaw].

"Liberalism Within the Limits of the Reasonable Alone: Developments of John Rawls' Political Philosophy, Its Political Positivism, and the Limits on Its Applicability,"19 VERMONT L. REV. 603-642 (1995).

"Reconceptualizing the College's Duty to Provide a Safe Learning Environment: A Criticism of the Doctrine of In Loco Parentis and the Restatement (Second) of Torts," 20 JOURNAL OF COLLEGE AND UNIVERSITY LAW 261-293 (Winter 1994) [with R. Bickel].

"Revisiting Tarasoff," 58 ALBANY L. REV. 97-173 (1994).

"Posner's Pragmatist Jurisprudence," 73 NEBRASKA L. REV. 545-645 (1994).

"Paying for the Pollution Cleanup with Insurance?," A Review of Kenneth S. Abraham's Environmental Liability Insurance Law (1990), 4 MARYLAND JOURNAL OF CONTEMPORARY LEGAL ISSUES 153-162 (Fall/Winter 1992-1993).

*Book Review*: T. Pogge, Realizing Rawls (1989), 30 COLUMBIA TRANSNATIONAL LAW JOURNAL 471 (1992).

"Make Lawyers Not Lethal Sheep," JOURNAL OF LEGAL EDUCATION, Vol.42, No.2 (June 1992).

Peter Francis Lake          **CurriculumVitae**          Page 7 of 42

**Significant Journal and Other Writings (Cont'd)**

"Paradigms Lost: Changes in the Legal Talent Market," A.B.A. JOURNAL (March 1992).

"Constitutional Camlan: Can the Bankruptcy Act Survive?" NEW YORK LAW JOURNAL (August 29, 1990) [with Floyd Abrams].

*Book Review:* Janis, An Introduction to International Law, 12 FORDHAM INTERNATIONAL LAW JOURNAL 882.

"The Historical and Philosophical Bases for a Universal Conception of Human Rights," Laylin Prize (1984) (unpublished).

**Court Citations to Significant Legal Writings**

*Nguyen v Mass. Inst. of Tech.,* 2018 WL 2090610 (Mass. Sup. Jud. Ct. 2018).

*Regents of University of California v. Superior Court,* 4 Cal.5th 607 (California Supreme Court 2018).

*Santana v. Rainbow Cleaners, Inc*., 969 A.2d 653 (Rd. Isl. S.Ct April 30, 2009).

*Bash v. Clark*, 22 Mass. L. Rptr. 84 (Mass. 2006).

*McCammon v. Gifford*, 2002 WL 732272 (Tenn. Ct. App).

*Sain v. Cedar Rapids County Sch. Dist.*, 626 N.W.2d 115 (Iowa 2001).

*Wicker v. Harmony Corp.*, 784 So. 2d 660 (La. Ct. App. 2001).

*Gross v. Nova Southeastern University, 2000 Fla Lexis 696* (Fla. S.Ct. March 30, 2000).

*Adams v. City of Fremont*, 68 Cal. App. 4th 243 (Ca. Ct. App., December 3, 1999).

*Estates of Morgan v. Fairfield Family Counseling Ctr*., 77 Ohio St. 3d 284, 673 N.E.2d 1311 (Ohio, Jan. 22, 1997).

*Little v. All Phoenix South Community Mental Health Center, Inc*., 186 Ariz. 97, 919 P.2d 1368 (Ariz. App. Div. 2, Dec. 26, 1995).

*Bradley v. Ray*, 904 S.W.2d 302 (Mo. App. W.D., June 6, 1995).

*Nasser v. Parker*, 249 Va. 172, 455 S.E.2d 502 (Va., Mar. 3, 1995).

**Significant Presentations or Speeches/Continuing Legal Education**

- Moderator, The Career Marathon. A panel discussion sponsored by Student Education and Admission to the Bar Committee, Florida Bar Convention, Summer 1992

- Luncheon Address, Elder Law Seminar, Stetson Law School, September 2, 1992

- Breakfast address, Conference on Law and Higher Education, sponsored by Stetson Law School, Clearwater, FL, February 1993

- Speaker, Breakfast Lecture Series, Tampa, FL, Spring 1993

- Academic Conclave, Florida Bar Meeting, June, 1995, entitled The Law School of The Future.  As Chair of Subcommittee of Florida Bar, planned and prepared Conclave and arranged panel of speakers

Peter Francis Lake                    **CurriculumVitae**                    Page 8 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

- National American Inns of Court National Conference Annual Program (Tampa, FL, May 16-19, 1996). As member of program committee, planned masters program and plenary session

- Presenter, 35th Annual NACUA Conference (Toronto, June 21-24, 1995) [with R. Bickel]. Session related to The Emergence of an Expanded Duty of the University Regarding its Students and college and university liability issues

- Presenter, Risky Business conference at University of Montana Law School (May 30-June 1, 1996) multi-day CLE conference on college and university law issues

- Speaker, On The Doctrine of In Loco Parentis. Notre Dame Law School (April 4, 1997) Sponsored by and at the invitation of The Journal of College and University Law, and in connection with forthcoming article

- Principal Presenter, Risky Business II at University of Montana Law School (June 12-14, 1997) [with R. Bickel, J. Chasen, L. Taylor, D. Aronosky], see above

- Address, at "Higher Education and the Law: Critical Issues in 1997" Conference University of Georgia, Institute of Higher Education (July 21-22, 1997)

- Presenter, NACUA regional conference Privacy on the Cusp of a New Millennium, (Providence, RI, Sept 27-28, 1997); Panel entitled Key Legal Issues: Media Rights v. Privacy Rights [with S. Barker, J.D. Smeallie]

-Workshop Faculty, 19th Annual National Conference on Law and Higher Education, post conference workshop entitled The Expanded Role of the Campus Security and University Liability (Clearwater, Florida, February 15, 1998)

-Principal Presenter, Florida Association of Campus Security Administrators, 1998 Fall Meeting, workshop on Legal Issues (Cypress Gardens, FL, September, 1998)

- General Session Presenter and Workshop Leader [with R. Bickel], 40th Annual IACLEA Conference and Exposition (Toronto, Canada, June 27-30, 1998)

- Speaker, "A Symposium for College Presidents and Chancellors on Alcohol Issues" Sponsored by the Louisiana Office of Alcohol and Drug Abuse (Baton Rouge, LA, July 9, 1998)

-Presenter, "Fair and Orderly Ways to Ensure a Safe Learning Environment: A Legal Perspective" at the Presidential Dialogue on Alcohol and Other Drugs, Sponsored by the New Hampshire College and University Council and New Futures (Concord, NH, October 29-30, 1998

-Dinner Address and Presenter, at the Robert Wood Johnson Foundation Fraternities/Sororities Meeting (Princeton, NJ, May 20-21 1999)

-Presenter, Fundamentals of How to Build a Facilitator College: Facilitating a Safer College Environment at The Campus Stakeholders Meeting-AOD, Sponsored by the New Hampshire College and University Council (June 16, 1999)

- Presenter, Workshops on Legal Issues, 41st Annual IACLEA Conference (San Diego, CA June 24-26, 1999)

- Principal Presenter [with R. Bickel], Drive-Up Workshop, Southeastern Louisiana University, (Hammond, LA, Sept. 10-11, 1999)

-Presenter, "Law and University Student Alcohol Issues" at the Penn State --- PLCB Partnership for Prevention Conference (State College, PA, September 27-28, 1999)

- Keynote Speaker, Rules, Regulations, Policies and Enforcement: A Workshop on University Law, at Partnership for Success: Your Campus Blueprint, the 1999 College Conference presented by the Virginia Department of Alcoholic Beverage Control (Hampton, VA, October 7-9, 1999)

Peter Francis Lake             **CurriculumVitae**                    Page 9 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Presenter, Building On Success: Prevention for the 21st Century on the topic of The Campus Security Act and Other Legal Issues in Prevention: Setting the Right Tone in Your Campus Policy sponsored by the U.S. Department of Education's 13th Annual Meeting on Alcohol , Other Drug and Violence Prevention in Higher Education (Albany, NY, November 6-9, 1999)

- Presenter, National Intrafraternity Council National Meeting (Denver, CO, December 1999)

- Presenter, "The Legal Relationship of a College to Its Students and the Duty to Provide a Safe Learning Environment" [with R. Bickel], Attorney General of Ohio, Betty D. Montgomery's 2000 Annual Conference of Public College and University Attorneys (Columbus, OH, April 26, 2000)

- Presenter, "An Overview of Recent Judicial Decisions and Future Trends in Higher Education Law" at the Western Association of Campus Law Enforcement Administrators, 15th Annual Conference, March 22-24, 2000 (Portland, OR)

- Invited Presenter, Duty and General Principles of Tort Law, at A The Restatement (third) of Torts and the Future of Tort Law, a  symposium/conference including the ALI reporters and distinguished practicing attorneys, professors and judges, sponsored by The Law and Organizational Economics Center at the University of Kansas (Lawrence, KS, June 1-3, 2000)

- Presenter in Panel Discussion, Re-visiting In Loco Parentis:  The Return of a Crazy Notion?, at the NACUA 40th Annual Conference, Washington, D.C. (June, 2000)

- Appearance on CNN's Crosstalk Live (Host: Daryn Kagan), "Should Texas A&M University End Its Annual Bonfire?" (June 16, 2000)

- Presenter, The Rights and Responsibilities of The Modern University, [with R. Bickel] at the University of Vermont Annual Legal Issues in Higher Education Conference, Burlington, VT (October 1-3, 2000)

- Featured Presenter and Book Author, Campus & Community Collaboration:  A Confluence of Commitment The U.S. Department of Education's 14th Annual Meeting on Alcohol, Other Drug, and Violence Prevention in Higher Education, Pittsburgh, PA (October 14-17, 2000)

- Keynote Speaker, Recent Developments in Higher Education Health Care Law at the Mid-America College Health Association 35th Annual Meeting, Eagle Creek Resort, Findlay, IL (November 2, 2000)

- Featured Presenter, "Who Pays, The New Era of Liability and Responsibility on College Campuses" NABCA Second Annual National Alcohol Education Symposium, Washington, D.C. (March 30, 2001)

- Presenter, Stetson's Annual Law & Higher Education Conference, Clearwater, FL (February, 2001)

-Luncheon Keynote, "Higher Education Law and Reducing High Risk Alcohol Use on College Campuses" North Carolina College Leadership Convocation, Chapel Hill, NC (April 4, 2001)

-Keynote Speaker, "Campus Safety Issues in the New Millennium" [with R. Bickel] sponsored by the  South Carolina Commission on Higher Education, Clemson University (March 28, 2001)

-Pre-Conference Chair, "Law and Policy Response to High Risk Student Behavior on Campus" Stetson National Conference on Law and Higher Education, Clearwater, FL, February 16, 2002

- Speaker, AII Meeting, Indianapolis, Indiana, on suicide issues, Summer, 2002

- Keynote Speaker, "Communities and Colleges Together" Green Mountain College, Vermont. June 21, 2002

- Television Round Table, "First Amendment Issues" [with Syl Farrell, Donna Reed, Mark Ober and Greg Thomas] for Community Access Television, June 11, 2002

Peter Francis Lake              CurriculumVitae                    Page 10 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Participant, Academic Advisory Board Meeting of Alpha Delta Chi Sorority, Memphis, Tennessee, June 21-22, 2002

-Presenter, Board of Trustees Meeting at Wake Forest University, Sea Island, Georgia. July 11-14, 2002

-Keynote Speaker, The American Campus and Alcohol Regional Conference, Orlando, Florida at the University of Central Florida, September 8, 2002

-Speaker and Trainer, "Campus Safety Issues and Responses" Eckerd College, September 13, 2002

- Keynote Speaker, "What Your Campus Attorney Should Know About the NIAAA Report," and "Presidential Panel: A Call to Action" [with W. DeJong] College Summit Conference, Harrisburg, Pennsylvania, September 26-27, 2002

-Keynote Address, "Legal Issues Update" LACUSPA Conference, New Orleans, Louisiana, October 1, 2002

-Keynote Speaker, MMOGSISP 2002 Conference, Eastern Illinois University, October 16-18, 2002

-Presenter, On the Rights and Responsibilities of the Modern University, at the Greek Summit, Salt Lake City, Utah, October 20, 2002

-Speaker and Trainer, "Developing a Unified Approach: Addressing Alcohol Violations Effectively On and Off Campus" Workshop for Judicial Affairs and Other Administrators, Augusta, Maine, at the invitation of the Office of Substance Abuse of the State of Maine, October 25 and 26, 2002

-Speaker and Trainer, Conference for Campus Police, sponsored by WACLA, an association of campus police in the Western states, Spokane, Washington, November 6-8, 2002

-Keynote Speaker, "Risk Explore, Transform – An Extreme Expedition- Student High-Risk Behavior" NASPA Regional Meeting, Portland, Oregon, November 6-9, 2002

-Opening Speaker, Keynote Speaker, and Forum Presenter, U.S. Department of Education Annual National Meeting on Alcohol, Other Drug and Violence Prevention, Seattle, Washington, November 21-24, 2002

-Commencement Address, Texas Wesleyan Law School Ceremony, Texas Wesleyan University School of Law, December, 2002

-Keynote Speaker, Association of Fraternity Advisors Conference, Columbus, Ohio, December 6, 2002

-Speaker, Panel involving part-time studies, AALS Conference, Washington, D.C. January, 2003

-Keynote Presenter, and Workshop Presenter, [with R. Bickel] at ASJA Conference, Clearwater, FL, February 10, 2003

-Presenter, Partners in Prevention Conference, Missouri Partners in Prevention, Kansas City, Missouri, April 15-17, 2003

-Luncheon Speaker, NASPA Inter-fraternity Luncheon, St. Louis, Missouri, March, 2003

-Keynote Speaker, "The Rights and Responsibilities of Modern Colleges and Universities: Who Assumes the Risk?" The American Campus and Alcohol Regional Conference, Syracuse University, March 9-11, 2003

-Keynote Presenter, NABCA Symposium on Alcohol Beverage Law, Washington, D.C. March 12 and 13, 2003

Peter Francis Lake          **CurriculumVitae**          Page 11 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Keynote Speaker, "College Prevention Conference Addressing Underage Drinking/Campus and Community: Partners and Prevention" New York State College Conference, sponsored by the New York State Office on Alcoholism and Substance Abuse Services, April 1-3, 2003

-Keynote Speaker, Pre-Conference Presenter, Workshop Presenter, "Meeting of the Minds: Partnering for Success and Prevention," sponsored by Missouri Partners in Prevention, Lake of the Ozarks, Missouri, April 10-12, 2003

-Workshop Presenter, at the invitation of the Alcohol and Drug Prevention Coordinator, Central Maine Technical College, Augusta, Maine, April 28, 2003

-Speaker and Workshop Presenter, "Rights and Responsibilities of the Modern University: Effective Alcohol Preventive Efforts" sponsored by the Network, an organization sponsored by the U.S. Department of Education and the New Jersey Beverage Commission, Rutgers University, New Brunswick, New Jersey, May 9, 2003

-Keynote Speaker, "The Law As a Tool for Prevention"  Statewide Initiatives Leadership Institute, Higher Education Center, Minneapolis, Minnesota, June 26-29, 2003

-Speaker and Workshop Presenter, Texas A&M University, College Station, Texas, July 2003

-Presenter, Violence Meeting sponsored by the U.S. Department of Education's Higher Education Center, Newton, Massachusetts, July 15-16, 2003

-Conference Planner and Presenter, AII Second Annual Conference, Baltimore, Maryland, September 2003

-Keynote Speaker, North Carolina College Leadership Summit, September 24, 2003

-Speaker, Indiana Prevention Conference, Bloomington, Indiana, September 30, 2003

-Presenter, National Forum, National Meeting of the U.S. Department of Education and Alcohol Prevention, Austin, Texas, October 2003

- Presenter, 2003 Legal Issues in Higher Education Conference, University of Vermont, Burlington, Vermont, October 5-7, 2003

- Presenter, "Integrity in Our Institutions:  Leadership, Courage, and Commitment" Conference, Center for Academic Integrity, San Diego, California, October 17-19, 2003

-Keynote Speaker, "Power of the Press:  Focus on Advertising," Ohio State University, Columbus, Ohio, October 24, 2003

-Presenter, "Law as a Tool for Prevention," University of Florida, Gainesville, Florida, November 14, 2003

-Keynote Speaker, Florida Prevention Partnership Conference, Orlando, Florida, November 18-20, 2003

-Keynote Speaker, Oregon Campus and Community Coalition Conference, February 8-9, 2004

-Keynote Speaker, BACCHUS and GAMMA Conference, Tampa, Florida, February 27, 2004

-Presenter, Presentation to the Board of the National Center on Addiction and Substance Abuse, Columbia University, New York City, New York, April 1, 2004

-Participant, Council of Advisors and Executive Committee Meeting, The Network, New Orleans, Louisiana, April 1-2, 2004

-Pre-Conference Speaker, "Making a Difference" Meeting of the Minds Conference, Kansas City, Missouri, April 14-17, 2004

Peter Francis Lake          **CurriculumVitae**          Page 12 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Keynote Speaker, Summit-By-The-Lake, South Carolina State-wide Initiative on College Drinking, Clemson, South Carolina, April 21-22, 2004

-Panelist, Network Regional Conference, East Windsor, New Jersey, April 30, 2004

-Participant, US/UK Roundtable, Oxford, United Kingdom, June 27, 2004

-Speaker, President's Retreat, Minnesota State University, Moorhead, June 28-29, 2004

-Speaker, "Liability in the Classroom" Faculty In-service, Florida Southern Conference, Lakeland, Florida, August 26, 2004

-Consultant, Depauw University, Greencastle, Indiana, September 9-10, 2004

-Speaker, National Forum for Senior Administrators, Washington D.C., October 16-19, 2004

-Panelist, "On the Horizon in College Alcohol and Violence Prevention:  Five Experts Talk About Civic Engagement and Service Learning as Prevention Strategies" Higher Education Center Annual Meeting, Washington, D.C., October 16-19, 2004

-Keynote Speaker, "Rights and Responsibilities of Modern Colleges and Universities: Who Assumes the Risk?" American Campus and Alcohol Regional Conference, October 24-26, 2004

-Keynote Speaker, Virginia's 19th Annual College Conference, Virginia Beach, Virginia, November 5-6, 2004

-Keynote Speaker, Kentucky NETWORK Conference, Louisville, Kentucky, November 9-12, 2004

-Speaker, "Effective Interventions for Student Mental Health on Campus:  Collaboration and Communication," NASPA Regional, Newport, Rhode Island, January 7, 2005

-Speaker, National Association for Campus Activities National Convention, Minneapolis, Minnesota, February 12-16, 2005

-Speaker, Georgia College Counselors Association Conference, St. Simon, Georgia, February 22-25, 2005

-Speaker, South Carolina Campus Safety Conference, February 25, 2005

-Speaker, IL Conference, Chicago, Illinois, March 5-8, 2005

-Speaker, "Legal Relationships Between Colleges and Students"  NASPA National Conference, Tampa, Florida, March 22, 2005

-Consultant, Campus Community Symposium, Eastern Illinois University, March 30, 2005

-Speaker, Meeting of the Minds, Kansas City, Missouri, April 7-9, 2005

-Consultant, University of Kentucky, April 28-29, 2005

-Presenter, Law Student Discipline Conference, Stetson University College of Law, Tampa, Florida, June 10, 2005

-Speaker, "Shin v. MIT", IACLEA National Conference, Kansas City, Missouri, June 28, 2005

-Speaker, "Promoting Academic Integrity in a High Tech World" NACUA Conference, June 29, 2005

-ALWD Conference, Chicago, IL, July 21-24, 2005

Peter Francis Lake                **CurriculumVitae**                Page 13 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Presenter, [with R. Bickel], Lynn University, August 31, 2005

-U.S. Department of Education National Meeting, October 1-6, 2005

-Keynote Presenter, "Understanding the Environment: AOD and Riskscapes" AOD Symposium, October 10-13, 2005

-Presenter, MARSH meeting, St. Pete Beach, Florida, November 2, 2005

-Presenter, Florida Prevention Conference, Orlando, Florida, November 15-16, 2005

-Workshop Presenter, "Student Wellness and Conduct" Stetson University College of Law, Tampa, Florida, December 12, 2005

-Presenter, James Madison University, Virginia, December 13-15, 2005

-Presenter, University of Nebraska-Lincoln, February 8-11, 2006

-Presenter, National Association of Student Personnel Administrators, March 14-15, 2006

-Presenter, Illinois Higher Education Conference, April 3, 2006

-Presenter, Meeting of the Minds, Kansas City, Missouri, April 6-8, 2006

-Presenter, West Virginia Governor's Conference, May 17, 2006

-Plenary Presenter and Special Guest, "Student Wellness and Discipline" and "College Student Suicide" ABA Associate Deans Conference, June 9-10, 2006

-Presenter, "Alcohol and Its Impact on Campus Risk Management", Stetson University College of Law (webinar), Gulfport, Florida, June 20, 2006

-Presenter, Florida Alcohol Coalition Meeting, Tampa, Florida, July 25, 2006

-Presenter, "Rights and Responsibilities" Student Affairs Personnel at University of Tennessee-Knoxville, September 7, 2006

-Keynote Presenter, "Hot Legal Topics in Higher Education" URMIA Conference, San Antonio, Texas, September 11, 2006

-Presenter, Charleston School of Law Conference, Charleston, South Carolina, September 16, 2006

-Speaker and Participant, MUSIC Conference, Michigan, September 19-22, 2006

-Panelist, "National Forum for Senior Administrators" U.S. Department of Higher Education 20th Annual Meeting on Alcohol and Other Drugs, October 19-22, 2006

-Presenter, Stetson/NASPA Student Affairs Law and Policy Conference, Las Vegas, Nevada, December 1-6, 2006

-Panelist, "Right Balance of Regulation in Alcohol" National Alcohol Beverage Control Association, January 5, 2007

-Presenter, Associate Deans, Directors of Student Services, Faculty and Students, Medical University of South Carolina, Charleston, South Carolina, February 9-10, 2007

**Peter Francis Lake**  **CurriculumVitae**  **Page 14 of 42**

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Presenter, "Legal Issues in Campus Activities" National Association of Campus Activities Conference, February 16-18, 2007

-Attendee, Stetson 28th Annual National Conference on Law and Higher Education, Clearwater, Florida, February 19-21, 2007

-Presenter, New York Alcohol and Other Drug Conference, March 12-13, 2007

-Presenter and Consultant, University of Massachusetts-Amherst, March 12, 2007

-Keynote Presenter, Tennessee College Presidents Summit, April 3, 2007

-Presenter, "Legal and Liability Issues for College Campuses" Campus Suicide Prevention/Mental Health Issues Awareness Conference, Daytona Beach, Florida, April 17, 2007

-Participant, Jed Foundation Round Table, May 1, 2007

-Presenter, URMIA Conference, Tampa, Florida, May 8-9, 2007

-Keynote Presenter, ACHA Annual Meeting in San Antonio, Texas, June 1, 2007

-Presenter, "Managing Law Schools in a Complex Legal Environment" Associate Law School Deans Conference, Tampa, Florida, June 15-16, 2007

-Presenter, "Legal Implications of FERPA, HIPAA, and Other Privacy/Compliance Issues" Florida Community College Campus Security Summit, June 25, 2007

-Keynote Presenter, IACLEA National Meeting, Las Vegas, Nevada, June 27, 2007

-Presenter, "Features of the Law of Residential Safety" NACUA 2007 Conference, June 30, 2007

-Presenter, "Reasonable Steps to Prevent Litigation" [with Mary and Bill Hill], OJJDP National Leadership Conference, Orlando, Florida, August 2-4, 2007

-Presenter, "Implications of FERPA and Other Privacy Laws" New Mexico Junior College, August 14, 2007

-Presenter, "Legal Issues in Higher Education" In-service for Faculty and Staff at the Medical University of South Carolina, Charleston, South Carolina, September 29, 2007

-Keynote Presenter, "Impact of the Virginia Tech Shootings on College Assessments of Mental Health Issues and Health/Counseling Centers" New York State College Health Association Annual Meeting, October 10, 2007

-Presenter, "Rights and Responsibilities of the Modern University" In-service for Student Affairs Professionals at University of Central Florida, Orlando, Florida, November 9, 2007

-Presenter, "The Facilitator Model" In-Service for Student Affairs Staff and the Risk Management Coordinators Committee at Texas A&M, College Station, Texas, January 17, 2008

-Presenter, "The Facilitator Model" In-service for Texas Christian University, Meeting with the Chancellor's Administrative Departmental Unit Heads, and Staff Development Literature Review Group, Fort Worth, Texas, January 22-23, 2008

-Moderator, "Understanding Our Students by Understanding the Emo Culture" 29th Annual National Conference on Law and Higher Education, Clearwater, Florida, February 19, 2008

Peter Francis Lake                **Curriculum Vitae**                Page 15 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Presenter, Commission on Higher Education and the Higher Education Foundation, South Carolina Campus Safety Conference, University of South Carolina, Beaufort, South Carolina, February 22, 2008

-Featured Speaker, "Higher Education Law Update" ACPA National Conference, Atlanta, Georgia, March 31, 2008

-Presenter, IACLEA Regional Conference, Sarasota, Florida, April 7, 2008

-Presenter, In-Service for Prevention Staff, Indiana University, Bloomington, Indiana, April 21, 2008

-Presenter, Roundtable on High-Risk Drinking, Purdue University, West Lafayette, Indiana, April 22, 2008

-Speaker, Luncheon for the Indiana Coalition to Reduce Under Age Drinking, April 23, 2008

-Featured Author, "2008 Pivotal Publications Colloquium," University of Connecticut, Storrs, Connecticut, September 19, 2008

-Presenter, "Legal Issues in Higher Education" In-service for Faculty and Staff at the Medical University of South Carolina, Charleston, South Carolina, September 27, 2008

-Presenter, "Update:  Recent Developments in the Law of Student Affairs/Activities" NACA Mid Atlantic Regional Conference, Lancaster, Pennsylvania, October 25,,2008

-Presenter, "Legal Update on Topics in Higher Education" for Lehigh Valley Association of Independent Colleges, Bethlehem, Pennsylvania, November 7, 2008

Presenter, NASPA-Stetson Student Affairs Law and Policy Conference, Las Vegas, Nevada, December 6-9, 2008

-Presenter/Trainer, Series of Trainings for Virginia Department of Criminal Justice, Division of School and Campus Safety, State of Virginia, February 9, 11, and 13, 2009

-Co-chair /Presenter, "Beyond Discipline – Managing the Modern Higher Education Environment," 30th Annual National Conference on Law and Higher Education, Orlando, Florida, February 21-24, 2009

-Speaker, Address to Staff and Administration at Daytona State College, Daytona Beach, Florida, March 3, 2009

-Featured Speaker, CHASCO Partners in Prevention Conference, Nashville, Tennessee, April 3, 2009

-Co-Presenter, CHEMA Spring Meeting, "Overview of Legal Issues in Higher Education," [with A. Dickerson] Tampa, Florida, May 22, 2009

-Lead Instructor, Live Component, NASPA-Stetson Student Affairs Law and Policy Certificate Program, Tampa, Florida, May 31-June 6, 2009

-Co-Presenter, NACA 2009 Risk Management Institute [with A. Dickerson], New Orleans, Louisiana, July 20-22, 2009

-Presenter, "Preventing Tragedy – Higher Education in an Era of Increased Violence" Virginia Department of Criminal Justice, Division of School and Campus Safety Conference, Hampton, Virginia, July 27, 2009

-Speaker, "Building Strong Foundations to Combat High Risk Alcohol Use," University of Tennessee – Chattanooga, September 18, 2009

-Speaker, MARSH Annual Consortia Summit, St. Pete Beach, Florida, November 7, 2009

**Peter Francis Lake**            **CurriculumVitae**            **Page 16 of 42**

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Speaker, "Are Our Campuses Too Legalistic?" Tennessee Independent College and University Association's Chief Enrollment Officer Retreat, Nashville, Tennessee, November 12, 2009

-Speaker, Address to Staff at Wake Forest University, North Carolina, December 4, 2009

-Speaker, Tampa Alcohol Coalition End of Year Luncheon, Tampa, Florida, December 15, 2009

-Speaker, "A Day with Professor Peter F. Lake," Stetson University, DeLand, Florida, December 17, 2009

-Panelist, The Network's National Forum for Senior Administrators, New Orleans, Louisiana, January 14, 2010

-Presenter/Panelist, "What Prevention and Counseling Staff Should Know about CARE /Threat Assessment Teams," NASPA Substance Abuse Conference, New Orleans, Louisiana, January 15-16, 2010

-Featured Speaker and Presenter, "Beyond Discipline – Reducing Legalisms to Improve Our Educational Environments," ASCA Annual Conference, St. Pete Beach, Florida, February 3-4, 2010

-Speaker, "Moving Beyond Discipline," TICUA Presidential Retreat, Nashville, Tennessee, February 16, 2010

-Co-Chair and Post-Conference Speaker, "Beyond Discipline – Managing the Modern Higher Education Environment," 31st Annual National Conference on Law and Higher Education, Orlando, Florida, February 20-23, 2010

-Presenter, "Are Our Campuses Too Legalistic?" 10th Annual Meeting of the Minds Conference, Kansas City, Missouri, April 8-9, 2010

-Speaker, addressed staff and administrators at Indiana University, Bloomington, IN, June17, 2010

-Speaker, the Interfraternity Institute, Bloomington, IN, June 18, 2010

-Speaker, presented three sessions ("Legal Updates and New Areas of Legal Accountability," "Student Mental Health and Substance Abuse," and "How to Work Effectively with Threat Assessment Teams") at the 2010 Virginia School and Campus Safety Training Forum, Norfolk, VA, July 13, 2010

-Speaker, presented a session titled "Beyond Discipline" at the ASCA/Circuit 11 Drive-in Conference, July 23, 2010

-Speaker at the Florida Association of Campus Safety & Security Administrators Meeting, Clearwater, FL, July 30, 2010

-Speaker, "The U.S. Supreme Court Decision in Christian Legal Society v. Hastings: Implications for Student Organizations & Activities" (webinar) for the National Association for Campus Activities, August 6, 2010

-Speaker, presented a session titled "Student Mental Health and Campus Safety" to the Wake Forest University Board of Visitors and addressed WFU staff and administrators, Winston-Salem, NC, September 9 & 10, 2010

-Speaker, "Mental Health Issues on Campus: Past, Present, Future" (webinar) for Partners in Prevention, September 15, 2010

-Speaker, "Creating a Mentally Healthy Campus" (webinar) for Partners in Prevention, September 22, 2010

-Consultant, the University of Nebraska – Lincoln, September 23 & 24, 2010

Peter Francis Lake                **CurriculumVitae**                  Page 17 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Speaker, "Campus Sexual Assault:  Approaches, Policies, and the Law" (webinar) for NASPA, September
28, 2010

-Speaker, presented a session titled "Implications of Information Sharing in the Education Setting" at the
Tampa Bay Regional Domestic Security Task Force's Planning Session for K-12 and Higher Education, Tampa,
FL, October 13, 2010

-Keynote Speaker, presented "Beyond Discipline" at the 20th annual Legal Issues in Higher Education
Conference, Burlington, VT, October 17, 2010

Speaker, senior leadership forum at the U.S. Department of Education's National Meeting on Alcohol, Drug
Abuse, and Violence Prevention in Higher Education, National Harbor, MD, October 18, 2010

-Consultant, Rutgers University, New Brunswick, NJ, October 20, 2010

-Speaker, addressed staff and administrators at The College of New Jersey, Ewing, NJ, October 21, 2010

-Speaker, presented two sessions ("Building Strong Foundations to Combat High Risk AOD Use and Underage
Drinking While Keeping Students and Campuses Safe," and "Student Issues Relating to Mental Health:  How a
High Risk Culture of Underage Drinking and Binge Drinking Is Working Against Us") at the New Jersey
Higher Education Consortium Meeting, East Brunswick, NJ, October 22, 2010

-Speaker, presented a session titled "Legal Updates" at the MARSH Annual Consortia Summit, St.
Petersburg, FL, November 4, 2010

-Speaker & Panelist, Symposium on Campus Threat Assessment: Advancing the Field, Blacksburg, VA,
November 12, 2010

-Invited participant, Interdisciplinary Summit on Transdisciplinary Approaches to Violence Prevention,
Blacksburg, VA, November 13, 2010

-Speaker, addressed students, staff and administrators at Baylor University, Waco, TX, December 6, 2010

-Speaker, addressed staff and administrators at Texas A & M University, College Station, TX, December 7 &
8, 2010

-Planning Committee Member, Panelist and Speaker, NASPA Student Affairs Law & Policy Conference,
Austin, TX, December 9 – 11, 2010

-Consultant, Rutgers University, New Brunswick, NJ, January 6 & 7, 2011

-Keynote Speaker and Workshop Speaker, Transitions 2011: High School to Higher Education Conference,
Boca Raton, FL, January 28, 2011

-Conference Chair and Speaker, 32nd Annual National Conference on Law and Higher Education, Orlando,  FL,
February 5-8, 2011

-Plenary Speaker, presented "The Clery Act and FERPA: Past, Present and Future" at the 12th annual Linda
B. Floyd Campus Safety Conference, Charleston, SC, February 11, 2011

-Plenary Speaker and Panelist, presented "Legal and Liability Issues Surrounding Campus Sexual Assault" at
the National Forum on Campus Sexual Assault: A Multi-Disciplinary Approach for Responding to
Sexual Assault and Intimate Partner Violence on Campus, Hampton, VA, April 1, 2011

-Speaker/panelist, presented "Parent-Connect: More than the Birds and Bees: Foundations for Healthy
Relationships" and "Peer-Connect: More than the Birds and Bees: Foundations for Healthy
Relationships" (webinars) for Campus Outreach Services, April 4, 2011

Peter Francis Lake                    **CurriculumVitae**                    Page 18 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Speaker and Workshop Presenter, University of Nebraska – Lincoln (various topics including school discipline, alcohol and drug law and policy and sexual assault), April 26 & 27, 2011

-Speaker, NASPA's Steven's Institute, Lake Tahoe, NV, July 10 – 12, 2011

-Speaker, Oregon State, Corvallis, OR, July 15, 2011

-Speaker, Evergreen College, Olympia, WA, July 20, 2011

-Speaker, Gonzaga University, Spokane, WA,  July 21, 2011

-Speaker, Security on Campus Summit, Bethlehem, PA, September 29, 2011

-Speaker, Lehigh Valley Assoc. of Independent Colleges, Bethlehem, PA, September 30, 2011

-Speaker, Michigan Univ. Self-Insurance Corporation, Lansing, MI, October 20, 2011

-Speaker, Ohio State University, Columbus, OH, October 21, 2011

-Speaker, Georgia Independent College Association, Atlanta, GA, November 4, 2011

-Speaker & Planning Committee, NASPA Law & Policy Conference, Arlington, VA, Dec. 8 – 10, 2011

-Speaker, University of Nebraska Lincoln, Lincoln, NE, January 4, 2012

-Speaker, Edgewater Conference, Tampa, FL, January 13, 2012

-Speaker, Lynn University Transitions Conference, Boca Raton, FL, January 27, 2012

-Speaker, ASCA Conference, St. Petersburg, FL, February 2, 2012

-Speaker & Conference Chair, 2012 National Conference on Law & Higher Education, Orlando, FL, February 18-21, 2012

-Speaker, NACA Conference, Charlotte, NC, February 26, 2012

-Speaker, Georgia College Suicide Prevention Conference, Athens, GA, March 1, 2012

-Speaker, Virginia Campus Safety Forum, Hampton, VA, March 19, 2012

-Speaker, Stetson University, DeLand, FL, April 12, 2012

-Speaker, Flagler College, St. Augustine, FL, April 13, 2012

-Speaker, ASCA Event at University of Connecticut, Storrs, CT, April 24, 2012

-Speaker, Union College, Schenectady, NY, April 26, 2012

-Speaker, PA College & University Attorneys Meeting, Bethlehem, PA, April 27, 2012

-Featured Speaker, Illinois Higher Education Center Workshop, Bloomington, IL, May 2, 2012

-Featured Speaker/Consultant, University of Central Missouri, Warrensburg, MO, May 7 – 10, 2012

-Featured Speaker, Meeting of Idaho Colleges, Boise, ID, May 16, 2012

Peter Francis Lake                    **Curriculum Vitae**                    Page 19 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Featured Speaker, Association of Student Conduct Administrators Meeting hosted at Pacific Lutheran University, Tacoma, WA, May 18, 2012

-Featured Speaker, Tampa Alcohol Coalition, Tampa, FL, June 4, 2012

-Featured Speaker, ICAN Administrative Leadership Meetings, Indianapolis, IN, Merrillville, IN, and Columbus, IN, August 6 – 8, 2012

-Featured Speaker, Piedmont College Staff/Faculty Retreat , Athens/Demorest, GA, August 9 & 10, 2012

-Featured Speaker, Massachusetts Institute of Technology, Cambridge, MA, November 8 & 9, 2012

-Featured Speaker, NASPA Region 1 SSAO Institute, Mystic, CT, November 11 & 12, 2012

-Featured Speaker, University of Connecticut, Storrs, CT, November 12, 2012

Featured Speaker, Wake Forest University, Winston-Salem, NC, December 5, 2012

- Planning Committee and Speaker/Panelist, NASPA Law & Policy Conference, Charlotte, NC, December 6 – 8, 2012

-Featured Speaker, University of Central Missouri, Warrensburg, MO, December 10 & 11, 2012

-Featured Speaker, Westmoreland County Community College, Pittsburg, PA, January 11, 2013

-Distinguished Lecturer, 18th Annual Jack Beyerl Student Affairs Lecture Series, Muncie, IN, January 28, 2013

-Conference Chair and Speaker/Panelist, Annual National Conference on Law & Higher Education Policy, February 14 – 20, 2013

-Pre-Conference Presenter, NASPA Annual Convention, Orlando, FL, March 17, 2013

-Speaker, Annual Meeting of Executive Directors for Private Education Insurance and Risk Management, Clearwater, FL, March 21, 2013

-Speaker, Meeting of the Minds Conference, Kansas City, MO, April 4 & 5, 2013

-Speaker, addressed staff and administrators at the University of Kentucky, Lexington, KY, May 15 – 17, 2013

-Speaker, addressed staff and administrators at the College of the Holy Cross, Worcester, MA, May 20, 2013

-Speaker, addressed staff and administrators at Worcester State University, Worcester, MA, May 21-22, 2013

-Lead Instructor, NASPA Certificate Program in Student Affairs Law and Policy, St. Pete Beach, Florida, June 5 – 9, 2013

-Speaker, Meeting of the Florida Independent Colleges and Universities Risk Management Association (FICURMA), Orlando, FL, June 24, 2013

-Speaker, University Risk Management and Insurance Association (URMIA) Regional Meeting, Lakewood Ranch, FL, June 28, 2013

- Lead Instructor, NASPA Certificate Program in Student Affairs Law and Policy, St. Pete Beach, Florida, July 8 - 12, 2013

-Speaker, addressed staff and administrators at Texas A&M University, College Station, TX, July 18, 2013

Peter Francis Lake                 **CurriculumVitae**                 Page 20 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Speaker, addressed staff and administrators at Northwestern University, Evanston, IL, July 24, 2013

-Featured Speaker, Partners in Prevention State-wide Meeting, "Federal Regulatory Efforts to Protect Student Safety," Columbia, MO, July 26, 2013

-Speaker, addressed staff and administrators at the University of North Dakota, Grand Forks, ND, July 29 – 30, 2013

-Speaker, addressed staff and administrators at Montana State University, Bozeman, MT, August 1 – 2, 2013

-Speaker and Retreat Facilitator, Division of Academic and Student Affairs, Eastern Michigan University, Ypsilanti, MI, August 6, 2013

-Featured Speaker, "Regulatory Overload in Higher Ed: Beware of 'Compliance U,'" (webinar) for Magna Publications, September 11, 2013

-Speaker, addressed staff and administrators at Flagler College, St. Augustine, FL, September 23, 2013

-Speaker, Meeting of Independent Colleges and Universities of Florida (ICUF), Orlando, FL, October 8, 2013

-Keynote Presenter and Workshop Speaker, 2013 Legal Issues in Higher Education Conference, University of Vermont, Burlington, VT, October 14, 2013

-Speaker, Marsh Consortia Summit, Charleston, SC, November 7, 2013

-Featured Speaker, "Legal Issues in Higher Education Today" (webinar) for Paperclip Communications, November 13, 2013

-Speaker, Meeting of the Florida Association of Campus Safety and Security Administrators (FACSSA), Largo, FL, November 15, 2013

-Speaker, discussed legal issues in higher education with administrators at New College of Florida, Sarasota, FL, February 4, 2014

-Keynote Speaker, Annual Conference of ASCA (Association of Student Conduct Administrators), St. Pete Beach, FL, February 6, 2014

-Conference Chair and Speaker/Panelist, Stetson's Annual National Conference on Law and Higher Education, Orlando, FL,  February 13-19, 2014

-Speaker, addressed the Board of Trustees at Clearwater Christian College, Clearwater, FL,  February 28, 2014

-Speaker, discussed legal issues in higher education with administrators at Rollins College, Winter Park, FL, March 6, 2014

-Keynote address, Virginia Department of Criminal Justice Conference on Campus Safety, Portsmouth, VA, March 17, 2014

- Featured Speaker, "Academic Freedom and Autonomy at a Crossroads: Contours and Controversies," (webinar), Paperclip Communications, March 26, 2014

-Speaker, Meeting of the Minds Conference, Kansas City, MO, April 4, 2014

-Speaker, discussed legal issues in higher education with administrators at Rollins College, Winter Park, FL, April 10, 2014

Peter Francis Lake                **CurriculumVitae**                    Page 21 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Speaker, discussed legal issues in higher education with administrators at New College of Florida, Sarasota, FL, April 23, 2014

-Featured Speaker, "The White House and OCR's New Guidance on Title IX," (webinar), Stetson University College of Law's Center for Excellence in Higher Education Law and Policy, May 14, 2014

-Lead Instructor, NASPA Certificate Program in Student Affairs Law and Policy, Clearwater, Florida, June 2 – 6, 2014

-Speaker, addressed staff and administrators at Texas A&M University, College Station, TX, June 12, 2014

-Featured Speaker, 6th Annual Higher Education Case Managers Association (HECMA) Roundtable, Tucson, AZ, June 19, 2014

-Featured Speaker, Meeting of the Kansas Board of Regents Institutions, Wichita, KS, June 24, 2014

-Featured Speaker, National Association of Campus Activities (NACA) 2014 Student Organizations Institute, St. Louis, MO, June 26 – 27, 2014

-Speaker, addressed staff and administrators at the University of Central Missouri, Warrensburg, MO, June 30 – July 2, 2014

-Program Developer and Speaker, The Title IX Compliance Institute, a Magna Publications, Inc. Program, Orlando, FL, June 24 – 27, 2014; Washington, D.C., August 5 – 8, 2014

-Keynote Presenter and Workshop Speaker, University Risk Management and Insurance Association (URMIA) 2015 Annual Conference, Louisville, KY, September 21 – 22, 2014

-Speaker, addressed staff and administrators at Western Kentucky University, Bowling Green, KY, September 23, 2014.

-Speaker, VTV Family Outreach Foundation Annual Meeting, Reston, VA, October 11, 2014

-Program Developer and Speaker, The Title IX Compliance Institute, a Magna Publications, Inc. Program, Orlando, FL, November 6 – 9, 2014

-Program Developer and Trainer, *The Four Corners of Title IX Regulatory Compliance Training*, Roanoke, VA, November 13 – 14, 2014

-Speaker, addressed staff and administrators at Vassar College, Poughkeepsie, NY, December 17 – 18, 2014

-Panelist, Council of Independent Colleges (CIC) Presidents Institute, San Diego, CA, January 5, 2015

-Speaker, Edgewater Conference, Boca Raton, FL, January 16, 2015

-Conference Chair and Speaker/Panelist, Stetson's Annual National Conference on Law and Higher Education, Orlando, FL, February 12 – 16, 2015

-Luncheon Speaker, URMIA Regional Conference, Orlando, FL, February 12, 2015

-Speaker, addressed staff and administrators at the University of Miami, Miami, FL, February 26, 2015

-Pre-Conference Session Speaker, ACPA Convention, Tampa, FL, March 7, 2015.

-Speaker, addressed staff and administrators at Virginia Commonwealth University, Richmond, VA, March 16 – 17, 2015

**Peter Francis Lake**                  **CurriculumVitae**                  **Page 22 of 42**

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Featured Speaker, Virginia Department of Criminal Justice Services, Campus Safety Conference, Portsmouth, VA, March 18, 2015

-Program Developer and Trainer**,** *The Four Corners of Title IX Regulatory Compliance Training*, Roanoke, VA, March 19 – 20, 2015

-Featured Speaker, Atlanta Regional Council for Higher Education, Decatur, GA, March 27, 2015

-Featured Speaker, National Inter-fraternity Council Meeting of the House of Delegates, Kansas City, MO, April 19, 2015

-Speaker, addressed staff and administrators at Fort Hays State University, Hays, KS, April 22 – 23, 2015

-Speaker, addressed staff and administrators at the University of Illinois, Champaign, IL, April 27, 2015

-Featured Speaker, Mississippi State University Legal Issues Conference, Starkville, MS, April 30 – May 1, 2015

-Speaker, addressed staff and administrators at the State College of Florida, Bradenton, FL, May 15, 2015

-Speaker, addressed staff and administrators at Lynn University, Boca Raton, FL, May 26 - 27, 2015

-Featured Speaker, American College Health Association Annual Meeting, Orlando, FL, May 28, 2015

-Lead Instructor, NASPA Certificate Program in Student Affairs Law and Policy, Tampa, FL, June 1 - 5, 2015

-Program Developer and Speaker, The Title IX Compliance Institute, a Magna Publications, Inc. Program, Orlando, FL, June 9 – 12, 2015

-Speaker, addressed staff and administrators at the Univ. of Maryland Baltimore County, Baltimore, MD, June 24 - 25, 2015

-Featured Speaker, Association of College and University Housing Officers-International Annual Conference and Exposition, Orlando, FL, June 27, 2015

-Program Developer and Speaker, The Title IX Compliance Institute, a Magna Publications, Inc. Program, Las Vegas, NV, July 9 – 12, 2015

-Featured Speaker, Title IX Workshop for Idaho Colleges and Universities, Boise, ID, July 16 - 17, 2015

-Speaker, addressed staff and administrators at the Univ. of North Dakota, Grand Forks, ND, July 30 – 31, 2015
-Program Developer and Speaker, Wisconsin Association of Independent Colleges and Universities Compliance Summit, Milwaukee, WI, August 3 – 4, 2015

-Keynote Speaker, 2015 National Meeting of the Higher Education Center for Alcohol and Drug Misuse Prevention and Recovery, Columbus, OH, August 6, 2015

-Speaker, addressed staff and administrators at Lipscomb Univ., Nashville, TN, August 10 – 11, 2015

-Featured Speaker, "Academic Freedom & Title IX: Balancing Competing Interests," (webinar), PaperClip Communications, Inc., September 16, 2015

Peter Francis Lake          **CurriculumVitae**          Page 23 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Speaker, addressed staff and administrators at the Univ. of Miami Medical School, Miami, FL, September 21, 2015

-Keynote and Breakout Session Speaker, 2015 Legal Issues Conference, Burlington, VT, October 19, 2015

-Speaker, addressed staff and administrators at the Berklee College of Music, Boston, MA, October 19, 2015

-Speaker, addressed staff, graduate students and administrators at the Univ. of Connecticut, Storrs, CT, October 20 – 21, 2015

-Speaker, addressed staff and administrators at Virginia Commonwealth Univ., Richmond, VA, October 23, 2015

-Featured Speaker and Panelist, Marsh Annual Consortia Summit, St. Pete Beach, FL, November 4 – 5, 2015

-Program Developer and Speaker, The Title IX Compliance Institute: Essentials 4-Day Intensive, a Magna Publications, Inc. Program, Orlando, FL, December 4 – 7, 2015

-Program Developer and Speaker, Title IX Compliance Institute: Advanced Workshop, a Magna Publications, Inc. Program, Orlando, FL, December 5 – 6, 2015

-Speaker, Council of Independent Colleges (CIC) Presidents Institute, Miami, FL, January 5, 2016

-Pre-Conference Session Speaker, Association of Student Conduct Administrators 2016 Conference, St. Pete Beach, FL, February 3, 2016

-Conference Chair and Speaker/Panelist, Stetson's Annual National Conference on Law and Higher Education, Orlando, FL, February 11 – 16, 2016

-Pre-Conference Session Speaker and Featured Speaker, ACPA- College Student Educators International 2016 Convention. Montreal, QC, Canada, March 5 – 7, 2016

-Speaker, addressed staff and administrators at the Univ. of New Hampshire, Durham, NH, March 9, 2016

-Keynote Speaker and Breakout Session Speaker, Meeting of the Minds, Kansas City, MO, April 7 – 8, 2016

-Program Developer and Speaker, The Title IX Compliance Institute: Essentials 4-Day Intensive, a Magna Publications, Inc. Program, Orlando, FL, April 22 – 25, 2016

-Keynote Speaker, Annual Conference for the Association for the Coordination of Counseling Center Clinical Services (ACCCCS), Orlando, FL, May 18, 2016

-Speaker, addressed staff and administrators at Thomas More College, Crestview Hills, KY, June 2, 2016.

-Lead Instructor, NASPA Certificate Program in Student Affairs Law and Policy, Clearwater Beach, FL, June 6 – 10, 2016

-Featured Speaker, "Complying with Title IX and Promoting Academic Freedom, Is This Possible?" (webinar), Stetson University College of Law's Center for Excellence in Higher Education Law and Policy, June 13, 2016

-Speaker, Education Law Committee Meeting at the Florida Bar Annual Summer Convention, Orlando, FL, June 17, 2016.

-Speaker, Board of Governors for the State of Florida Summit, Orlando, FL, June 20, 2016.

-Keynote Speaker, National Legal Aid and Defender Association Student Legal Services Section Annual Conference, Palm Harbor, FL, July 18, 2016

Peter Francis Lake          **CurriculumVitae**          Page 24 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Program Developer and Speaker, The Title IX Compliance Institute: Essentials 4-Day Intensive, a Magna Publications, Inc. Program, Madison, WI, July 22 – 25, 2016

-Program Developer and Speaker, Wisconsin Association of Independent Colleges and Universities Compliance Summit, Mequon, WI, July 27 – 28, 2016

-Speaker, addressed staff and administrators at Montana State University, Bozeman, MT, August 1 – 2, 2016

-Program Developer and Speaker, The Title IX Compliance Institute: Essentials 4-Day Intensive, a Magna Publications, Inc. Program, Las Vegas, NV, August 4 – 7, 2016

-Program Developer and Speaker, Title IX Compliance Institute: Advanced Workshop, a Magna Publications, Inc. Program, Las Vegas, NV, August 5 – 6, 2016

-Speaker, addressed staff and administrators at the University of Texas, Austin, TX, August 11, 2016

-Speaker, addressed staff and administrators at Tulane University, New Orleans, LA, August 15 – 16, 2016

-Keynote Speaker, Second Annual Title IX Conference, University of South Florida, Tampa, FL, September 8, 2016

-Speaker, "'Do we need outside help on this?' When, Who, and Whether to Outsource Title IX Investigations," (webinar) [with J. Williams], PaperClip Communications, Inc., September 15, 2016

-Speaker, addressed staff and administrators at the University of South Carolina, Columbia, SC, September 22 and 26, 2016.

-Keynote Speaker, Title IX Symposium, Francis Marion University, Florence, SC, September 23, 2016.

-Speaker, addressed staff and administrators at the Flagler College, St. Augustine, FL, September 30, 2016.

-Speaker, University of Kentucky Board of Trustees Meeting (via Skype), October 21, 2016

-Keynote Speaker, Association for University and College Counseling Center Directors (AUCCCD) Conference, Tampa, FL, October 23, 2016

- Program Developer and Speaker, The Title IX Compliance Institute: Essentials 4-Day Intensive, a Magna Publications, Inc. Program, Clearwater Beach, FL, December 2 – 5, 2016

-Featured Speaker, Meeting of the Independent Colleges and Universities of Texas, Austin, TX, December 8, 2016

-Speaker, addressed staff and administrators at Tulane University, New Orleans, LA, December 12 – 13, 2016

-Speaker, Council of Independent Colleges (CIC) Presidents Institute, Orlando, FL, January 6, 2017

-Conference Chair and Speaker/Panelist, Stetson's Annual National Conference on Law and Higher Education, Orlando, FL, February 9 – 13, 2017

-Featured Speaker, presented on Title IX to staff and faculty at Florida International University, Miami, FL, February 23 – 24, 2017

-Featured Speaker, "The Weaponization of Alcohol," [webinar], Illinois Higher Education Center, February 27, 2017

-Keynote and Breakout Session Speaker, Virginia Department of Criminal Justice Services, Campus Safety Summit, Portsmouth, VA, March 7 – 8, 2017

**Peter Francis Lake**          **CurriculumVitae**                    **Page 25 of 42**

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Featured Pre-Conference Speaker, ACPA National Convention, Columbus, OH, March 25 – 26, 2017

-Featured Speaker, *The Four Corners of Title IX Compliance* Basic and Advanced Workshops for the Virginia Department of Criminal Justice Services, Fredericksburg, VA, April 5 – 7, 2017

-Featured Speaker, Southern University Conference of Presidents, Sarasota, FL, April 9, 2017

-Keynote and Breakout Session Speaker, Mississippi State Legal Issues Conference, Starkville, MS, April 27 – 28, 2017

-Speaker, addressed staff and administrators at Tulane University, New Orleans, LA, May 1, 2017

-Keynote and Breakout Session Speaker, AODV Prevention Summit, University of Georgia, Athens, GA, May 17, 2017

-Speaker, addressed staff and administrators at Rollins College, Winter Park, FL, May 23 – 24, 2017

-Featured Speaker, Florida Association of Colleges & Universities (FACU) Meeting, St. Augustine, FL, May 31, 2017

-Keynote and Breakout Session Speaker, Association of Student Conduct Administrators (ASCA) Summer Drive-In Conference, Florida Gulf Coast University, Ft. Myers, FL, June 1 – 2, 2017

-Lead Instructor, NASPA Certificate Program in Student Affairs Law and Policy, Clearwater Beach, FL, June 5 – 9, 2017

-Keynote and Breakout Session Speaker, EverFi Annual Summit, Boston, MA, June 13, 2017

-Keynote Speaker, Association of Independent Colleges and Universities of Pennsylvania (AICUP) Meeting, Hershey, PA, June 16, 2017

-Speaker, addressed staff and administrators at The College of New Jersey, Ewing, NJ, June 20, 2017

-Featured Speaker, Harvard Risk Management Summit, Cambridge, MA, June 22, 2017

-Panelist, Council of Independent Colleges Media Conference, Washington, D.C., June 26, 2017

-Lead Instructor, NASPA Certificate Program in Student Affairs Law and Policy, Clearwater Beach, FL, July 17 – 21, 2017

-Speaker, addressed staff and administrators at McLennan Community College, Waco, TX, July 25 – 27, 2017

-Speaker, addressed staff and administrators at The University of North Dakota, Grand Forks, ND, July 31 – August 1, 2017

-Featured Speaker, Wisconsin Association of Independent Colleges and Universities (WAICU) Compliance Summit, Madison, WI, August 3 – 4, 2017

-Featured Speaker, Title IX Conference, James Madison University, Harrisonburg, VA, August 9, 2017

-Keynote Speaker, Engage! Conference, University of Georgia, Athens, GA, September 8, 2017

-Featured Speaker, University Risk Management and Insurance Association (URMIA) Board Meeting, Orlando, FL, September 23, 2017

-Keynote Speaker, ATIXA/SCOPE Conference, Philadelphia, PA, October 6, 2017

Peter Francis Lake               **CurriculumVitae**               Page 26 of 42

**Significant Presentations or Speeches/Continuing Legal Education (Cont'd)**

-Speaker, addressed staff, students and administrators at the University of South Florida St. Pete Campus, St. Petersburg, FL, October 18, 2017

-Lead Instructor, Title IX Intermediate Course, ACPA Compliance U, Orlando, FL, October 20 – 22, 2017

-Speaker, addressed staff and administrators at The University of South Carolina Bluffton, Bluffton, SC, October 30, 2017

-Featured Speaker [via Skype], Marsh, Inc. Inaugural Education Forum, November 8, 2017

-Featured Speaker, Associated Colleges of the South Title IX Meeting, Rollins College, Winter Park, FL, November 13, 2017

-Speaker, "Title IX Essentials: The Future of Title IX" (webinar), Magna Publications, Inc., November 15, 2017

-Breakout Session Speaker, Council of Independent Colleges President's Institute, Hollywood, FL, January 6, 2018

-Speaker, addressed staff and administrators at New College of Florida, Sarasota, FL, January 23, 2018

-Keynote and Breakout Session Speaker, Title IX Conference, University of South Florida, Tampa, FL, January 25, 2018

-Guest Lecturer, Higher Education Law and Policy Class, University of Georgia, Griffin, GA, January 26, 2018

-Conference Chair and Speaker/Panelist, Stetson's Annual National Conference on Law and Higher Education, Orlando, FL, February 1 – 5, 2018

-Panelist [via Skype], NASPA Virtual Panel, February 7, 2018

-Featured Speaker, *The Four Corners of Title IX Compliance* Basic and Advanced Workshops for the Virginia Department of Criminal Justice Services, Fairfax, VA, March 14 – 16, 2018

-Speaker, addressed staff and administrators at Mercer University, Atlanta, GA, April 4, 2018

-Keynote and Breakout Session Speaker, Meeting of the Minds Conference, Kansas City, MO, April 6, 2018

-Speaker, "Promoting Reasonable Expectations for Suicide Prevention Helps Everyone: What Universities and Colleges Can Do" (webinar with Dr. Paul Polychronis), Stetson University's Center for Excellence in Higher Education Law and Policy, April 10, 2018

-Speaker, "Student Mental Health, Direct Threat and Voluntary/Involuntary Medical Withdrawals" (webinar), Illinois Higher Education Center, April 17, 2018

-Featured Speaker, Title IX Training, Wisconsin Association of Independent Colleges and Universities (WAICU) Mequon, WI, April 26 – 27, 2018

**Selected Media**

-April 2018 – quoted in "Mount Ida Students' Records Shared Without Their Permission," The Boston Globe.

-April 2018 – quoted in "Class of 2017 earns higher salaries than previous years, survey finds," GW Hatchet.

-March 2018 – quoted in "Duty to Protect: California Supreme Court has determined public colleges in the state must warn and shield their students from potential violent acts. Experts say the ruling could have nationwide implications." Inside Higher Ed.

-March 2018 – quoted in "YouTube Channel Costs Athlete His Scholarship," Inside Higher Ed.

**Peter Francis Lake**          **CurriculumVitae**          **Page 27 of 42**

## Selected Media (Cont'd)

-March 2018 – quoted in "Representative Warns Campus Free Speech Bill Would Be 'Litigation Nightmare,'" WFSU.

-March 2018 – quoted in "Title IX probes pose conflicts of interest, but coaches and athletic department officials must stand aside," The Athletic.

-March 2018 – quoted in "Franklin professor edits hazing book," Daily Journal.

-March 2018 – quoted in "Can Colleges Act More Quickly to Punish Professors Who Harass?" Chron. of Higher Educ.

-February 2018 – quoted in "Republicans' 'free speech' isn't so free for colleges," Vice News.

-February 2018 – quoted in "Greek Life confronts questions about diversity, inclusion after racist Snapchat." GW Hatchet.

-February 2018 – quoted in "Lawsuit battle over campus free speech security costs." University World News.

-February 2018 – quoted in "Security Costs Loom Larger in Campus Free-Speech Fights. A Lawsuit Shows Why." Chron. of Higher Educ.

-February 2018 – quoted in "Florida Hazing Law Challenge," News13.

-January 2018 – Quoted in "Michigan State Faces Title IX Legal Woes After Nassar," Law360.

-January 2018 – Quoted in "Experts Disagree on Motivation for DOJ Harvard Probe," Harvard Crimson.

-January 2018 – Quoted in "Penn State fraternity faces uncertain future," Pennsylvania Tribune.

-December 2017 – quoted in "Inside a Training Course for Campus Sexual-Assault Officers," New York Magazine.

-December 2017 – quoted in "How Sexual-Harassment Charges at U. of Rochester Spiraled Out of Control," Chron. of Higher Educ.

-December 2017 – quoted in "Why do universities handle sexual assault cases anyway?" Tampa Bay Times.

-December 2017 – quoted in "Campus sex assault investigations have become polarized and political," ABA Journal.

-December 2017 – quoted in "The birth of the Title IX epidemic: Why colleges are now on the hook for sexual assault," Signs of the Times.

-November 2017 – quoted in "The Instinct to Protect Each Other: An Interview with Vanessa Grigoriadis," L.A. Review of Books.

-November 2017 – quoted in "College life is tense right now, but why?" Portland Tribune.

-November 2017 – quoted in Slovakia via the Agence France Presse.

-October 2017 – quoted in "Le bizutage, rituel parfois mortel des campus americains," Liberation. The article ran around the world, also appearing in Luxembourg in L'Essentiel.

-October 2017 – quoted in "Columbia faces five federal sexual assault investigations, new records show," Columbia Daily Spectator.

-October 2017 – quoted in "When Colleges Use Their Own Students to Catch Drug Dealers," Chron. of Higher Educ.

**Peter Francis Lake**　　　　**CurriculumVitae**　　　　**Page 28 of 42**

## Selected Media (Cont'd)

-October 2017 – quoted in "Colleges can't be bystanders on opioids," Commonwealth.

-October 2017 – quoted in "Forum seeks to clarify role of First Amendment at university," University of South Florida Crow's Nest.

-October 2017 – quoted in "Hazing nightmares: Abuse pervasive at US colleges," Filipino Express and Kuwait Times.

-September 2017 – quoted in "GW faces limited options in defending Obama-era sexual assault protections, experts say," GW Hatchet.

-September 2017 – quoted in "Just Like Obama Did?" Inside Higher Ed.

-September 2017 – quoted in "What Does the End of Obama's Title IX Guidance Mean for Colleges?" Chron. of Higher Educ.

-September 2017 – quoted in "Rochester launches new inquiry into professor's harassment charges," The Daily Gazette.

-September 2017 – quoted in "Rochester Launches New Inquiry into Harassment Accusations," New York Times.

-September 2017 – quoted in "DeVos sets the stage for debate over campus sexual assault guidelines," Christian Science Monitor.

-September 2017 – quoted in "What Lies Ahead in the Campus-Speech Wars?" Chron. of Higher Educ.

-September 2017 – quoted in "A Total Prohibition," Inside Higher Ed.

-September 2017 – quoted in "Following Harvard, More Law Schools Accept GRE," Harvard Crimson.

-September 2017 – quoted in "In the Conversation Around Campus Rape, Who Is Held Accountable—and Who Does the Accounting?" Jezebel.

-September 2017 – quoted in "DeVos Title IX Review Sparks Concern from Activists," Harvard Crimson.

-September 2017 – quoted in "Close the Frats," Chron. of Higher Educ.

-September 2017 – quoted in "Majority of on-campus sexual assaults do not trigger Public Safety alerts," Columbia Spectator.

-September 2017 – quoted in "DeVos to Use 'Both Sides' Approach to Campus Rape," Rewire.

-September 2017 – quoted in "As UF maneuvers, white nationalists say they're coming to campus," Tampa Bay Times.

-August 2017 – quoted in "Campus rape policies get hard look by DeVos, says improvements needed," Crow's Nest.

-August 2017 – quoted in "Cotterell: UF means well, but the First Amendment is clear," Tallahassee Democrat.

-August 2017 – quoted in "Want to Fire a Professor for Sexual Harassment? It's Going to Take a While." BuzzFeed.

-August 2017 – quoted in "Free speech fights take center stage," Politico.

-August 2017 – quoted in "UF's move to deny white nationalist Richard Spencer a venue sets up a First Amendment court fight," Tampa Bay Times.

**Peter Francis Lake**        **CurriculumVitae**        **Page 29 of 42**

## Selected Media (Cont'd)

-August 2017 – quoted in "Q&A: Compliance expert Peter Lake talks Title IX on campuses and the era of regulation," Waco Tribune-Herald.

-August 2017 – quoted in "Why Florida schools might steer clear of trouble if Trump shakes up affirmative action," Tampa Bay Times.

-August 2017 – quoted in "Baylor ordered to produce long-secretive Pepper Hamilton information in Title IX suit," Waco Tribune-Herald.

-July 2017 – quoted in "A tangled quest for fairness as students accused of campus sexual assault push back," Tampa Bay Times.

-July 2017 – quoted in "Beyond the headlines: How all sides are working together on campus assault rules," Christian Science Monitor.

-July 2017 – quoted in "David Armstrong: Thomas More College to host compliance conference amid changing landscape," Northern Kentucky Tribune.

-July 2017 – quoted in "The Costs of the Campus Speech Wars Are Piling Up for the Police," Chron. of Higher Educ.

-June 2017 – quoted in "What Colleges Can Do When the Internet Outrage Machine Comes to Campus," Chron. of Higher Educ.

-June 2017 – quoted in "In the Time of Trump, Colleges Start to 'Make Title IX Our Own'," Chron. of Higher Educ.

-June 2017 – quoted in "Law professor fact-checks bogus claims that Department of Ed 'rolls back' civil rights," College Fix.

-June 2017 – quoted in "Bystanders at South Florida crime scenes sometimes shoot video instead of rendering aid," Sun-Sentinel

-June 2017 – quoted in "Colorado Case Puts Focus on Colleges' Handling of Alleged Domestic Violence," Chron. of Higher Educ.

-May 2017 – quoted in "What's required of a professor who learned of student's rape? One university seeks a nuanced answer," Chron. of Higher Educ.

-May 2017 – quoted in "College hazing becoming easier to punish," Inside Higher Ed.

-May 2017 – quoted in "Can campuses handle sexual assault cases?" Daily Tar Heel.

-April 2017 – quoted in "As grand jury probes PSU pledge death, history shows hazing prosecutions hard to prove," Philly.com.

-April 2017 – quoted in "Between Harvard and Office for Civil Rights, A Symbiotic Relationship," Harvard Crimson.

-March 2017 – quoted in "Lawsuit alleging Columbia failed to provide accommodations could set new legal precedent," Columbia Spectator.

-March 2017 – quoted in "Law Professor: Campus Shooting Claims Hard to Prove in Court," WFSU.

-March 2017 – quoted in "A University Says It Shouldn't Have To Pay Money To Campus Rape Victims," BuzzFeed News.

**Peter Francis Lake**     **CurriculumVitae**     **Page 30 of 42**

**Selected Media (Cont'd)**

-March 2017 – quoted in "In Spanier Case, College Leadership Goes on Trial," Chron. of Higher Educ.

-February 2017 – quoted in "Title IX Due Process," Chron. of Higher Educ.

-February 2017 – quoted in "Betsy DeVos Survived a Historic Confirmation Fight. What's Next for Higher Ed?" Education News.

-February 2017 – quoted in "How a 20-Page Letter Changed the Way Higher Education Handles Sexual Assault," Chron. of Higher Educ.

-February 2017 – quoted in "Betsy DeVos Survived a Historic Confirmation Fight. What's Next for Higher Ed?" Chron. of Higher Educ.

-January 2017 – quoted in "An Uncertain Future for Title IX-Compliance Consultants," Chron. of Higher Educ.

-January 2017 – quoted in "More Than Two-Thirds of Undergrads Complete Sexual Assault Training Module," Harvard Crimson.

-January 2017 – quoted in "After a Tumultuous 7 Years, Teresa Sullivan Will Leave UVa," Chron. of Higher Educ.

-January 2017 – quoted in "BSU raises issues with regulations," Indianapolis Star.

-January 2017 – quoted in "Harvard to Launch Search for New Title IX Officer," Harvard Crimson.

-January 2017 – quoted in "When Students' Prejudices Taint Reviews of Instructors," Chron. of Higher Educ.

-January 2017 – quoted in "Higher ed leaders muted in response to Texas bathroom bill," Inside Higher Ed.

-November 2016 – quoted in "Fight Over the Recording of Title IX Proceedings Exposes Gaps in Law and Trust," Chron. of Higher Educ.

-November 2016 – quoted in "The Harvard Admissions Lawsuit, Explained," Harvard Crimson.

-November 2016 – quoted in "The Past and Future of Higher Education," Chron. of Higher Educ.

-November 2016 – quoted in "'Woman of the Year': Glamour honors Stanford sexual assault survivor," Yahoo! News. (The story also ran in the Christian Science Monitor.)

-October 2016 – quoted in "Title IX Officers Pay a Price for Navigating a Volatile Issue," Chron. of Higher Educ.

-October 2016 – quoted in "What a Landmark Finding in a Title IX Case Means for Colleges Wrestling With Sex Assault," Chron. of Higher Educ.

-October 2016 – quoted in "Administrators defend policy prohibiting students from recording gender-based misconduct proceedings," Columbia Spectator.

-September 2016 – quoted in "Harvard Files Motion to Dismiss Admissions Lawsuit." Harvard Crimson.

-September 2016 – quoted in "Harvard Releases Six Years of Admission Data for Lawsuit," Harvard Crimson.

-September 2016 – quoted in "Brock Turner released: California considers mandatory sentence for rape," Christian Science Monitor.

-August 2016 – quoted in "Asking for an Apology," Inside Higher Ed.

**Peter Francis Lake**               **CurriculumVitae**               **Page 31 of 42**

## Selected Media (Cont'd)

-August 2016 – quoted in "Attorney cites bias in Antonio Callaway's sexual assault hearing," Tampa Bay Times.

-July 2016 – quoted in "What the Future Holds for the Federal Crackdown on Campus Sexual Assault," Chron. of Higher Educ.

-June 2016 – quoted in "2 High-Profile Cases Offer Glimpse of Future Trends in Campus Sex Assaults," Chron. of Higher Educ.

-June 2016 – quoted in "Outcry over Stanford case reveals evolving US culture on rape," Christian Science Monitor. (The story also ran in Yahoo! News.)

-June 2016 – quoted in "Outrage Over a Stanford Rape Case Might Change How Some Colleges Respond to Sexual Violence," Chron. of Higher Educ.

-May 2016 – quoted in "'Fundamental Failure' on Sexual Assaults Brings Sweeping Change at Baylor," Chron. of Higher Educ.

-May 2016 – quoted in "States ratchet up transgender battle with lawsuit against U.S," Reuters. (The story was picked up by news outlets throughout the country.)

-May 2016 – quoted in "Senators seek law to boost college sexual assault reporting," Aminewswire.

-May 2016 – quoted in "Clubs weigh legal options," Harvard Crimson.

-May 2016 – quoted in "Feds sue North Carolina over transgender law," Politico.

-April 2016 – quoted in "A Sex-Assault Case at Brigham Young Puts Honor Codes in the Spotlight," Chron. of Higher Ed.

-April 2016 – quoted in "Tenure Rights and the Rise of Title IX: a Looming Culture Clash," Chron. of Higher Ed.

-April 2016 – quoted in "Title IX Interpretations Could Threaten Academic Freedom, Report Says," Harvard Crimson

-March 2016 – quoted in "Coaches Must Now 'Step the Heck Out' of Sex-Assault Investigations of Players," Chron. of Higher Ed.

-March 2016 – quoted in "News Analysis: With New Position, Harvard Continues to Centralize Sexual Assault Resources," Harvard Crimson

-February 2016 – quoted in "Culture of Consent," Chron. of Higher Ed.

-February 2016 – quoted in "Admissions Lawsuit Continues in 'Slow Motion'," Harvard Crimson

-February 2016 – quoted in "Geoff Marcy's Downfall: How the astronomer's case signals a new era of activism against sexual harassment," Chron. of Higher Ed.

-February 2016 – quoted in "New Suit Further Scrutinizes Harvard's Title IX Compliance," Harvard Crimson

-February 2016 – quoted in "Education Dept. Defends Its Approach to Title IX in Face of Senate Pressure," Chron. of Higher Ed.

-February 2016 – quoted in "Florida State wrestled with Title IX interpretation in Jameis Winston case," Tampa Bay Times

-February 2016 – quoted in "Scalia's Death Could Affect Affirmative Action Lawsuits," Harvard Crimson

Peter Francis Lake            **CurriculumVitae**            Page 32 of 42

**Selected Media (Cont'd)**

-February 2016 – quoted in "MIT Administrators Propose Change to House Master Title," Harvard Crimson

-February 2016 – quoted in "A Closer Look at 7 Common Requirements in Resolved Federal Sex-Assault Inquiries," Chron. of Higher Ed.

-January 2016 – quoted in "FSU, Jameis Winston accuser reach $950 k settlement," Tampa Bay Times

-January 2016 – quoted in "Sexual assault, Title IX, and college campuses," WTSP 10 News

-January 2016 – quoted in "Debate brews over role of anonymous Title IX-related complaints in course evaluations," Columbia Spectator

-January 2016 – quoted in "Lawmaker Call Out a Professor," Chron. of Higher Ed.

-December 2015 – quoted in "The Inside Story of the Controversial Fraternity Lobbying Effort on Campus Rape," Huffington Post

-December 2015 – quoted in "How a Prominent Legal Group Could Change the Way Colleges Handle Rape," Chron. of Higher Ed.

-November 2015 – quoted in "How Much Can Campus-Crime Reports Tell Us About Sexual Assault?" Chron. of Higher Ed.

-November 2015 – quoted in "Lawyers for Jameis Winston Threaten to Sue CNN," WFSU

-November 2015 – quoted in "College general counsel need to advise administration appropriately before student protests occur," Inside Counsel

-November 2015 – quoted in "A.D. Club 'Strongly' Opposes Membership Changes," Harvard Crimson

-November 2015 – quoted in "Here's How Geoff Marcy's Sexual Harassment Went on for Decades," BuzzFeed

-November 2015 – quoted in "Harvard Lands Fourth in Economist's First College Rankings," Harvard Crimson

-November 2015 – quoted in "In Fisher Amicus Brief, Harvard Defends Affirmative Action," Harvard Crimson

-October 2015 – quoted in "Honor Code Could Prompt Talk of Students' Roles in Discipline," Harvard Crimson

-October 2015 – quoted in "Professor Accused Of Harassment Is Gone, But Debate Isn't Over," Huffington Post

-October 2015 – quoted in "Petition Calls For Administrators to Control Final Clubs," Harvard Crimson

-October 2015 – quoted in "As Federal Investigations of Sexual Assault Get Tougher, Some Ask if That's Progress," Chron. of Higher Ed.

-September 2015 – quoted in "Admissions Officers Prepare for Questions on Sexual Assault," Harvard Crimson

-September 2015 – quoted in "Survey points to high rates of sexual assault in Ivy League," Yale Daily News

-September 2015 – quoted in "One Hazing Death, Dozens of Charges, and Questions About Making a Frat Come Clean," Chron. of Higher Ed.

-September 2015 – quoted in "Columbia looks to DOMA attorney in Nungesser case for victory in court of public opinion," Columbia Spectator

-September 2015 – quoted in "As Khurana Meets With Final Clubs, He Has Many Options," Harvard Crimson

**Peter Francis Lake**              **CurriculumVitae**              **Page 33 of 42**

**Selected Media (Cont'd)**

-September 2015 – quoted in "When It Rescinds Admission, Harvard Weighs Several Factors," Harvard Crimson

-September 2015 – quoted in "Sig Ep suit shows dearth of regulations," Yale Daily News

-August 2015 – quoted in "2015's Most and Least Educated Cities," WalletHub

-August 2015 – quoted in "Campus safety assessment tools for higher ed," CR80 News

-August 2015 – quoted in "New Campus-Safety Assessment Tool Aims to Help Colleges Help Themselves," Chron. of Higher Ed.

-August 2015 – quoted in "University Of Kansas Under More Scrutiny On Sexual Assault Cases," Huffington Post

-August 2015, Professor Lake was interviewed by IT News regarding a new integrated framework for improving campus safety called the 32 National Campus Safety Initiative, IT News

-August 2015 – quoted in "Do Fraternities Have a Place on the Modern Campus?" Chron. of Higher Ed.

-July 2015 – quoted in "Ahead of Fisher, Harvard asks to delay admissions lawsuit," Harvard Crimson

-July 2015 – quoted in "Education Department Backs Away from College Rating System," Harvard Crimson

-June 2015, Inside Higher Education quoted director of the Center for Excellence in Higher Education and Professor of Law Peter Lake on June 30 in an article addressing the increased use of external adjudicators in Title IX claims of sexual assault. The story also ran in MyInforms.

-June 2015 – quoted in "Kipnis Case Highlights Perilous Clash of Title IX and Academic Freedom," Chron. of Higher Ed.

-May 2015 – Professor Peter Lake spoke with the Harvard Crimson newspaper for an article about Harvard's internal Office of the General Counsel and the increasing workload for in house counsel.

-May 2015 – quoted in "Fraternities' Ranks Swell at a Time of Intense Public Scrutiny," Chron. of Higher Ed.

-May 2015 – interviewed by the Kansas City Star regarding Title IX questions concerning Missouri Southern State University responsibilities involving a scandal surrounding a Missouri legislator and a Missouri Southern State University student who served as a capitol intern.

-April 2015 – quoted in "Government Releases Guidance on Title IX Coordinator Position", Harvard Crimson

-April 2015 – quoted in "Should Colleges Be Judging Rape?" Chronicle of Higher Education

-April 2015 – quoted in the Huffington Post Blackvoices article "30 Frats Shut Down In The Past Month As Colleges Respond To Misconduct More Aggressively"

- April 2015 – quoted in "EdX Settles With Department of Justice", Harvard Crimson

-March 2015 – quoted in the Harvard Crimson article "Department of Education Considers Two College Rating Systems"

-March, 2015 – quoted in "Advice for Colleges When Students Clash with Off-Campus Police" Chronicle of Higher Education

-March 2015 – quoted in "College students with mental illness must prepare to succeed", Watertown Daily News

**Peter Francis Lake**              **CurriculumVitae**              **Page 34 of 42**

**Selected Media (Cont'd)**

-March 2015 – quoted in "Bipartisan Bill to Regulate How Colleges, Universities Handle Sexual Assault Cases", iSchoolGuide

-March 2015 – quoted in "Federal law shapes withdrawal policies, causes confusion", Yale Daily News

-March 2015 – quoted in the USA Today article "Armour: Decoding Mike Krzyzewski's silence not so simple"

-March 2015 – quoted in "Federal Bill Would Regulate Colleges' Handling of Sexual Assault", Harvard Crimson

-February 2015 – quoted in the Harvard Crimson article "Allegations Against Smithsonian Researcher Bring Attention to Harvard"

-February 2015 – quoted in the Chicago Tribune article "Off to College with Mental Illness: How      to Prepare"

-February 2015 – quoted in the Chronicle of Higher Education article, "Should Colleges Report Suicidal Students to Their Parents? A Bill in Virginia Would Require It"

-January 2015 – quoted in the Big News Network article, "Dartmouth College considering campus ban on serving hard liquor"

-January 2015 –quoted in the Corporate Counsel article, "Tough Times for Lawyers on Campus"

-January 2015 – spoke with the Crimson for the article, "Analysis: Law School Probe's End May Mean Closer Scrutiny for College"

-January 2015 – quoted in "Oregon Basketball Coach Sued By Alleged Rape Victim For Ignoring  Player's Sexual Assault Record", Social Dashboard

-January 2015 – quoted in "Seeking to Strengthen Sex-Assault Policies, Colleges Draw Fire From All Sides",   Chronicle of Higher Ed.

-January 2015 – quoted in the article "Jameis Winston's Accuser Sues Florida State University", Tampa Bay Times

-December 2014 – was interviewed for the piece "Legal expert recognizes value of student affairs professionals", Student Affairs Today

-December 2014 – quoted in the article "Draft College Rating System Emphasizes Accessibility, Post-College Success", Harvard Crimson

-December 2014 – quoted in "News Analysis: Could Eldo Kim Return to Harvard?", Harvard Crimson

-December 2014 – quoted in "Justice Department: Majority of Campus Sexual Assault Goes Unreported to Police", PBS Newshour

-December 2014 – quoted on air in the NPR All Things Considered story "U. Va. Looks At Ways To Curb Drinking At Its Frat Houses"

-December 2014 – quoted in "Doubts About UVA Rape Account Leave Concerns About Consequences", Chronicle of Higher Ed.

-December 2014 – quoted in "Jameis Winston rape case spotlights calls for reform", USA Today

-November 2014 – quoted in "Fraternities back in spotlight as UVA rape report spurs outrage", Providence Journal

**Peter Francis Lake**       **CurriculumVitae**       **Page 35 of 42**

**Selected Media (Cont'd)**

-November 2014 – quoted in "Frats Back in Spotlight as UVA Rape Report Spurs Outrage", Bloomberg

-November 2014 – quoted in "Jameis Winston and sexual violence in college football, one year later"

-October 2014 – quoted in "How Colleges Let Sexual Predators Slip Away To Other Schools", Huffington Post

-October 2014 – quoted in "Fraternity Culture Linked To College Sexual Assault Problem", KPBS

-October 2014 – quoted in the article "Jameis Winston case a 'game changer' for all schools", USA Today

-October 2014 – quoted in "UCF students protest higher tuition for 'excess' classes", Orlando Sentinel

-October 2014 – quoted in "Fisher, FSU Respond to Winston 2012 Sexual Assault Allegations", WFSU

-October 2014 – quoted in the Politico article "The Supreme Court's new term - Harvard students clash with TFA - New recommendations for higher education"

-September 2014 – spoke with the Chronicle of Higher Education for the article, "In Context: Campus Sexual Assault."

-September 2014 – quoted in the Harvard Crimson article, "Weeks In, Sexual Harassment Investigation Office Remains Understaffed."

-September 2014 – quoted in Rep-AM.com regarding the impact of high-risk alcohol use on higher education issues

-September 2014 – quoted in the Education News story, "Federal Policies 'Censor' Colleges from Talking About Alcohol Role in Rape"

-September 2014 – spoke with the Chronicle of Higher Education about "Why Campuses Can't Talk About Alcohol"

-August 2014 – spoke to the Dartmouth regarding Clery Act investigations

-July 2014 – quoted in the Politico story "On NCAA, Congress getting in the game"

-June 2014 – quoted in the story "Why Colleges Are on the Hook for Sexual Assault", Chron. of Higher Ed.

- May 2014 – quoted in the Marketplace Education story, "How campus safety could affect college choices"

- May 2014 – quoted in the Vox article "Why colleges are so bad at handling sexual assault"

- May 2014 – quoted in "Virginia Military Institute Agrees to Step Up Protections under Title IX", Chron. of Higher Ed.

- May 2014 – quoted in "Honor Code would Face Tough Challenges in Inculcating Culture Shift", The Harvard Crimson

- May 2014 – quoted in "Government Releases Names of Schools under Sex-Assault Investigations", Wall Street Journal

- May 2014 – quoted in "Promise Unfulfilled", Chron. of Higher Ed.

-April 2014 – quoted in the story "Federal Recommendations May be in Tension with Harvard's Handling of Sexual Assault", The Harvard Crimson

-April 2014 – quoted in the story "Honor Proposal Would Catch Harvard Up, Incrementally, With the Times", The Harvard Crimson

**Peter Francis Lake**             **CurriculumVitae**             **Page 36 of 42**

## Selected Media (Cont'd)

-April 2014 – quoted in the story "Everything You Need to Know about the New White House Campus Sexual Assault Report", BuzzFeed

-April 2014 – quoted in the story "Rape Victims Don't Trust the Fixers Colleges Hire to Help Them", BuzzFeed

-April 2014 – quoted in the story "Feds Investigate FSU For Title IX Violations But Law is More Than Sports", Florida Public Radio

-April 2014 – quoted in the article "FSU Title IX Investigation goes beyond sports" Tampa Bay Times

-April 2014 – quoted in the article "U.S. Investigation FSU's Handling of Jameis Winston case", Tampa Bay Times

-April 2014 – quoted in the story "Analyst on hazing-path needed to healing", High Point Enterprise

-March 2014 – quoted in the article "Slap on the Wrist?" Inside Higher Ed

-February 2014 – quoted in "Judge's Ruling Tilts Curricular Control Toward CUNY Administrators", Chron. of Higher Ed.

-February 2014 – Spoke with University Business for the article "What about prevention?"

-February 2014 – spoke with The Atlantic for the feature story "The Dark Power of Fraternities"

-February 2014 – quoted in the story "How Colleges Flunk Mental Health", Newsweek

-January 2014, quoted in the press release "Expect Ramped-Up Student Safety Enforcement in 2014", Magna Publications

-November 2013 – quoted in the story "Feds tighten rules on campus sexual violence cases", USA Today

-October 2013 – quoted in the article "College women: stop getting drunk", Slate

-September 2013 –  quoted in "Kennedy '77 discusses benefits of 'positive discrimination in new book on affirmative action'", Daily Princetonian

-September 2013 –  quoted in the story "3 Accused of Sexual Misconduct Say Colleges Acted Hastily and Assumed Guilt", Chron. of Higher Ed

-September 2013 –  quoted in "Shaping a Drinking Culture on Yale's Campus", Yale Daily News

-September 2013 –  quoted in the article "Campus Safety Clearinghouse", Inside Higher Ed

-June 2013 –  quoted in the article "Faust, Experts Weigh In on Supreme Court's Affirmative Action Ruling", Harvard Crimson

-June 2013 –  quoted in the article "Breaking with Norms, New Chief Lawyer at Rutgers U. Enters Fray", Chron. of Higher Ed.

-May 2013 –  spoke with U Wire for the story "Going Home"

-May 2013 –  quoted in "Yale U. Is Fined $165,000 K Under Crime Reporting Law", Chron. of Higher Ed.

-May 2013 –  quoted in the Richmond Times-Dispatch article, "Steger stepping down after 14 years as Tech's president."

- April 2013 - quoted in the Chronicle of Higher Education article, "Federal Warning Against Retaliation Raises Questions for Colleges."

**Peter Francis Lake**      **CurriculumVitae**      **Page 37 of 42**

**Selected Media (Cont'd)**

-April 2013 - spoke with the Harvard Crimson for the article, "Experts Address University Emergency Response."

- April 2013 - quoted in the Chronicle of Higher Education story, "Students' Prior Criminal Histories Don't Predict Future Misconduct, Research Finds."

- March 2013 - quoted in the Bloomberg article, "Frats Worse than Animal House Fail to Pay for Casualties."

- March 2013 - quoted in the Chronicle of Higher Education story, "Efficiency and Academic Freedom Clash in a Fight at CUNY."

- March 2013 - talked with the Associated Press for the story, "Past investigations can offer clues in UNC-CH case."

- February 2013 - quoted in the Yale Daily News story, "Darnell, Title IX links probed."

- February 2013 - spoke with the Chronicle of Higher Education for the story, "As Campuses Build Ties With Law Enforcement, Experts Say Privacy Issues Will Arise."

- February 2013 - quoted in the Chronicle of Higher Education article, "Group Seeks to Develop a More Useful Gauge of Campus Safety."

- February 2013 - quoted in the Times Union Jacksonville article, "FSCJ collecting VA money from students despite confusion over source of GI bill debt."

- February 2013 - featured in the Star Press article, "BSU or Compliance U?"

- January 2013 - spoke with Westmoreland County Community College Media about mental health in the workplace.

- January 2013 - spoke with the Orlando Sentinel for the story, "FAMU attorney: state hazing investigation incompetent."

- November 2012 - spoke with the Harvard Crimson about Yale discouraging take-home exams in the wake of the Harvard cheating scandal.

- November 2012 - spoke with the Chronicle of Higher Education for the story, "Change in Illinois Alcohol Law May Leave Colleges Liable for Students' Underage Drinking."

- November 2012 - quoted in the Associated Press article, "Michigan Schools Weigh Affirmative Action Ruling."

- November 2012 - spoke with the Orlando Sentinel for the story, "Robert Champion's family rejects FAMU's $300,000 offer in hazing suit."

- October 2012 - spoke with the Harvard Crimson on for the story, "For Ad Board, Burdened Proof?"

- October 2012 - spoke with the Harvard Crimson for the article, "Ad Board's Advising System Faces Criticism."

- October 2012 - spoke with the Yale Daily News for the story, "Title IX Complicates Employee Dispute Case."

- October 2012 - quoted in the Yale Daily News story, "Former employee files Title IX retaliation suit against Yale."

- October 2012 - spoke with Inside Higher Ed for the story, "Spotlighting hate."

- September 2012 - quoted in the Harvard Crimson discussing the Harvard administration's reaction to the cheating scandal.

- September 2012 - quoted in the Harvard Crimson article, "Harvard Could Face Student Lawsuits in Fallout of Cheating Scandal."

**Peter Francis Lake**          **CurriculumVitae**          **Page 38 of 42**

**Selected Media (Cont'd)**

- September 2012 - quoted in the Harvard Crimson article, "Ad Board Reform of 2012 Led to More Options, More Dishonesty Cases."

- August 2012 - quoted in the Associated Press article, "Another legal headache at Penn State: Title IX."

-August 2012 - quoted in the Chronicle of Higher Education article, "Fired for a joke? Professor's quip is no laughing matter at the Merchant Marine Academy."

- August 2012 - spoke with the Tampa Tribune for the story, "Finding troubled students."

- May 2012 - quoted in the Harvard Crimson article, "Seeing through the haze: In secret, hazing happens at Harvard."

- May 2012 - quoted in the Orlando Sentinel and eCollege Times regarding the pending civil case against Florida A & M University.

- April 2012 - quoted in an article run by the *Stafford County Sun* and *Richmond Times Dispatch*, WSLS TV, News & Advance Online, InsideNoVa.com, and GoDanRiver.com, "For Tech families, little clarity five years later."

- April 2012 - spoke with the *Chronicle of Higher Education* for the story, "Education Department's Report on Alcohol and Drugs May Prompt Crackdown."

-March 2012 - *Science Magazine* quotes comments in the *Chronicle of Higher Education*.

- March 2012 - spoke with the *Chronicle of Higher Education* for the story, "Jury Holds Virginia Tech Accountable for Students' Deaths, Raising Expectations of Colleges" on 3/14/12.

- February 2012 - talked with the *Chronicle of Higher Education* about the impact of the Clery Act for the story, "Longtime Watchdog for Campus-Security Group Looks for a New Role."

- February 2012 - spoke with the *Chronicle of Higher Education* about "The Case of the 'Stupid Drunk'" raising awareness about alcohol abuse on college campuses.

- February-April 2012 – spoke with *Yale Daily News* (2/6/12, 2/7/12, 2/13/12, 3/1/12, 3/22/12, 4/9/12) regarding sexual complaint processes.

- January 2012 - *The Foundations of Higher Education Law & Policy* (NASPA 2011) was listed in the *Chronicle of Higher Education's* selection of books.

- January 2012 - discussed hazing with *FSU News*.

- December 2011 - discussed fraternity regulations with the *Yale Daily News*.

- December 2011 – quoted in *Associated Press*, "Virginia Tech seeks to block fine in shooting case." This story was spun by media outlets across the country including *USA Today*, *MSNBC*, and the *Huffington Post*.

- November 2011 - spoke with the *Chronicle of Higher Education* for the article "The 'Fearmonger.'"

- November 2011 - quoted on *MSN Fox Sports* regarding the Penn State tragedy.

- November 2011 -talked about Penn State, sexual assault cases on college campuses with the *Richmond Times-Dispatch*.

- November 2011 - spoke with *Bloomberg* for the story, "Penn State Abuse Crisis Shakes Schools Where Football Rules."

**Peter Francis Lake**           **CurriculumVitae**           **Page 39 of 42**

## Selected Media (Cont'd)

- October 2011 - quoted in the *Yale Daily News* regarding Title IX and guidelines for sexual misconduct on college and university campuses.

- October 2011 - spoke with the *Harvard Crimson* for the article, "Harvard Reviews Policies on Sexual Assault."

- October 2011 - spoke with the *Chronicle of Higher Education* about Brown University being asked to hand over donor records in a discipline case.

- October 2011- quoted regarding the impact of the Sewanee case on higher education in the *Chronicle of Higher Education*.

- September 2011- talked with the *Chronicle of Higher Education* about universities' responses to Title IX for the article, "Justice in the academy."

- September 2011 - spoke with the *Chronicle of Higher Education* about the case of a Sewanee student who sued his former college for accusing him of rape.

- September 2011- spoke with *Philadelphia Magazine* for the story, "New Rules of College Sex."

- August 2011- discussed the University of South Carolina's decision to suspend fraternity rush with the *Chronicle of Higher Education*.

- August 2011 - quoted in *Cosmopolitan* in an article informing women on how to guard against rape.

- May 2011 - quoted in the *Harvard Crimson* regarding campus safety issues and college drinking

- April 2011 – featured in a lead evening news story on April 28 by an ABC affiliate in Lincoln, Nebraska, regarding binge drinking on college campuses

- April 2011 – quoted in the AP article "Va. Tech mulls appeal as it marks grim anniversary" *This quote was picked up by over 300 news outlets (identified via a Google search) throughout the country.*

- April 2011 – quoted in the Battleboro Reformer's article "Safe or Sad?"

- April 2011 – interviewed by NPR for their story "Feds Launch Inquiry Into Sexual Harassment at Yale"

- April 2011 – quoted in Campus Progress article regarding sexual assaults on campus

- April 2011 - quoted in the Chronicle of Higher Education regarding campus sexual violence was picked up by Newsy

- April 2011 – quoted in the Chronicle of Higher Education article "Education Dept. Issues New Guidance for Sexual-Assault Investigations"

- March 2011 – quoted in The Chronicle of Higher Education article "Colleges Face Conflicting Pressures in Dealing With Cases of Sexual Assault"

- February 2011 – spoke with La Opinion about the issues and stressors facing today's college students

- January 2011 – quoted in the USA Today article "Colleges' watch for killers debated"

- January 2011 – quoted in the Wall Street Journal article "Experts Back School's Handling of Loughner"

- November 2010 – quoted in the USA Today article "Mud in your eye? An ineffective attempt to imbibe"

**Peter Francis Lake**          **CurriculumVitae**          **Page 40 of 42**

## Selected Media (Cont'd)

- November 2010 – spoke with Inside Higher Ed for their piece "The Virtues of Contrition" about showing compassion to parents and doing right by students

- September 2010 – interviewed for a video documentary produced by the University of Nebraska – Lincoln, titled "Binge"

- September 2010 – quoted in the Chronicle of Higher Education article "Federal Judge Finds Former College President Personally Liable in Student-Conduct Case"

- June 2010 – quoted in the St. Petersburg Times article "Now, the lawyers take the field in the fight over the Rays"

- May 2010 – quoted in the Washington Examiner article "Dating Violence on the Rise at Area Colleges"

- May 2010 – quoted in the Washington Examiner article "U.Va. President Attributes Ignorance of Huguely's Past to State Law"

- March 2010 – discussed college campus rape, his book Beyond Discipline, with NPR Morning Edition in their segment "Myths That Make It Hard to Stop Campus Rape"

- December 2009 – quoted in the ABA Journal article, "Mandatory Gym Class for Obese College Students on Shaky Legal Ground?"

- November 2009 – quoted in The Chronicle of Higher Education article, "Lincoln U. Requires Its Students to Step on the Scale"

- August 2009 – wrote the article, "Will Your College Be Sued for Educational Malpractice?" for The Chronicle of Higher Education

- May 2009 – quoted in the USA Today article, "Legal Rulings May Hold Some Lessons"

- May 2009 - joined a panel of experts live in the Fox 13 Tampa television studios to discuss how social networking sites are impacting peoples' lives, safety and careers for the Kathy Fountain program.

- April 2009 – wrote the article, "Student Discipline, the Case Against Legalistic Approaches," for The Chronicle of Higher Education

- February 2009 – wrote the article, "Student-Privacy Rules Show a Renewed Trust in Colleges," for The Chronicle of Higher Education

- December 2008 – quoted in The Chronicle of Higher Education article, "Education Dept. Releases New Rules on Student-Privacy Law, Giving Colleges More Room for Judgment"

- October 2008 – quoted in the Yale Daily News Article, "Up Close: Two Years Later, Drinking Still a 'Ticking Bomb'"

**Peter Francis Lake**              **CurriculumVitae**              **Page 41 of 42**

## Selected Media (Cont'd)

- September 2008 – quoted in The Chronicle of Higher Education article, "'Animal House' at 30: O Bluto, Where Art Thou?"

- June 2008 – quoted in The Chronicle of Higher Education article, "Colleges Weigh Threats of Shootings Against More-Common Concerns"

- April 2008 – interviewed on CNN, "Protection v. Privacy"

- Nov 2007 – quoted in The Chronicle of Higher Education article, "As the Professoriate Ages, Will Colleges Face More Legal Landmines?"

- Oct 2007 – quoted in The Chronicle of Higher Education article, "Department of Education Offers Guidance on Balancing Campus Safety and Student Privacy Rights"

- Sept 2007 – quoted in The Wall Street Journal article, "A Mother Takes on MIT"

- June 2007 – quoted in The Chronicle of Higher Education article, "Florida Panel Says Privacy Laws Do Not Protect Dangerous Students"

- June 2007 – quoted in The Chronicle of Higher Education article, "The Importance of Enforcing Alcohol Rules"

- April 2007 – quoted in Crain Communications article, "Campuses on Guard: College Tragedy Highlights Need to Spot Threats; Official Urged to Act on Warning Signs"

- April 2007 – interviewed on Good Morning America, "Were Warning Signs Missed on Campus?"

- April 2007 – quoted in USA Today, "Protecting Student Rights and Students a Balancing Act – Troubled College Kids Aren't Always Threat to Others"

- April 2007 – quoted in Orlando Sentinel article, "Spotting the Warning Signs: Jump in Troubled Students Alarms Mental Counselors"

- April 2007 – quoted in The Christian Science Monitor article, "Colleges Walk Fine Line With Troubled Students: The Tragedy at Virginia Tech Has Prompted Calls for More Security and Less Privacy"

- April 2007 – quoted in the Associated Press article, "Mental Illness Strains School Counselors"

- April 2007 – quoted in the Associated Press article, "U.S. Colleges Grapple with Increased Numbers of Mentally Ill Students"

**Peter Francis Lake**             **CurriculumVitae**             **Page 42 of 42**

**Selected Media (Cont'd)**

-  April 2007 – quoted in the Tampa Tribune article," Corporate U:  Big Companies are Shaping Young Minds by Funding Programs at Public Colleges"

-February 2007 – quoted in the Associated Press article, "Mental Illness Blamed for Rising College Drop Outs"

-February 2007 - quote in the Tampa Tribune, *"University Counseling Centers Feel Strain"*

-September 2006 - quoted in Chronicle of Higher Education article, *"Increase in Litigation May Compel Colleges to Disclose More Information, Conference Speaker Says"*

-May 2006 - quoted in Time Magazine article, *"When Colleges Go On Suicide Watch"*

-April 2006 - quoted in Chronicle of Higher Education article, *"In a Surprise Move, MIT Settles Closely Watched Student-Suicide Case"*

-  November 2005 - quoted in USA Today, *"Parents Tune in to Realities"*

-  August 2005 - quoted in Chronicle of Higher Education article, *"Judge Rules Suicide Suit Against MIT Can Proceed"*

# Description of Services and Schedule of Fees

**Professor Peter F. Lake (d.b.a. Hierophant Enterprises, Inc.)**

**Consulting Expert**

*RE:  Estate of Fatima Lissette Larios v. Board of Trustees of the Nebraska State Colleges and Chadron State College*
(Title IX complaint and wrongful death complaint)

August 23, 2018

_____

**Description of Services:** Professor Lake will serve as a consulting expert on behalf of the Defendant, the Nebraska State College System, represented by the law firm of Baird Holm LLP.  As an expert consultant, Professor Lake may be required to review documents, participate in calls with attorneys, and submit an expert report.  Professor Lake may be deposed or called upon to testify at trial.

The substance of the expert consultation, report(s) produced, and any testimony at deposition or trial will generally relate to common industry practices at institutions of higher education regarding Title IX policies and procedures and institutions' duty of care to protect students with regards to Title IX and self-harming behavior/suicide.

**Timeline:**  Timeline for consultations, document review and/or expert report(s) is TBD. Dates for deposition/trial are TBD, but all efforts will be made not to interfere with Professor Lake's teaching obligations or other previously-scheduled consulting work.

**Engagement Fee:** At the time a formal agreement is issued, the client-attorney shall tender to Professor Lake an initial, **non-refundable** engagement/case-opening fee in the amount of Twenty Thousand dollars ($20,000.00). This serves as the minimum amount of payment to Professor Lake for his services, and billings for services performed or expenses incurred shall be charged against the engagement fee until such time as it is exhausted. Professor Lake will not undertake any significant work or provide any analysis, advice, opinions, etc., until the engagement fee is paid.  In addition, the client-attorney shall not identify Professor Lake as either a testifying or non-testifying expert until such time as the engagement fee has been paid. Should any portion of the initial engagement remain after all necessary services are rendered, that portion will be retained by Professor Lake.

**Fees:** The fees for services provided by Professor Lake are as follows:

Consultant Fees**:** Except as outlined herein, the client-attorney shall compensate Professor Lake at the rate of $400.00 per hour for most tasks performed under this agreement, including but not limited to document review, analysis,

calculations, conclusions, preparation of reports, consultations with lawyers and/or clients, etc.  Necessary travel time will be billed at $250.00 per hour.  Fees will be billed by the tenth of an hour, with a minimum charge for any discrete task of two tenths of an hour. For testimony at deposition, the client-attorney shall compensate Professor Lake at the rate of $600.00 per hour.  For testimony at trial, the client-attorney shall compensate Professor Lake at the rate of $750.00 per hour.  The hourly rates for testimony at deposition or trial does not include travel time or travel expenses.

<u>Graphic Design and Exhibit Preparation:</u> The client-attorney shall compensate Professor Lake for his time spent, if any, preparing graphics, PowerPoint presentations, or exhibits at the rate of $250.00 per hour.  In the event that Professor Lake outsources the preparation of graphics or exhibits, the client-attorney shall reimburse Professor Lake for the actual cost of the services, plus a five percent (5%) handling fee; however, the fee for outsourced services shall not exceed the rate of $100.00 per hour without the approval of the client-attorney. The fees outlined in this paragraph do not include the cost of materials.

**Expenses:** Expenses incurred by Professor Lake shall be reimbursed by the client-attorney as follows:

- Travel by Car (personal vehicle): $0.55 cents per mile.
- Travel by Air or Train: The actual cost of the round-trip ticket, plus a ten percent (10%) handling fee.
- Expenses associated with photography, reproduction of documents and photographs, preparation of exhibits, storage of materials or evidence, and other reasonable expenditures shall be reimbursed at market rates.
- Lodging: For any travel of more than eighty (80) miles from Professor Lake's home, Professor Lake shall be reimbursed for the cost of meals and lodging, plus a ten percent (10%) handling fee.  Professor Lake usually prefers *Marriott Courtyard*, or equivalent hotels.
- Car Rental: In the event of travel beyond the local area, Professor Lake shall be reimbursed for the cost of a rental car and any associated expenses, plus a ten percent (10%) handling fee.
- Unless otherwise instructed by the client-attorney, or unless refundable tickets are not available, Professor Lake will purchase refundable tickets for any necessary travel. Should the client-attorney request that Professor Lake purchase non-refundable tickets in order to travel at a lower cost, or if refundable tickets are not available, the client-attorney shall reimburse Professor Lake for the cost of any non-refundable ticket at the rate outlined herein whether or not the ticket is used.

**Terms of Engagement:** The client-attorney is responsible for payments to Professor Lake as outlined in this schedule of fees, regardless of any arrangement the client-attorney has with any party or parties he represents. Professor Lake will issue bills on a monthly basis, unless another interval is mutually agreed upon. Bills are due on receipt,

and shall be considered delinquent if unpaid more than thirty days after their date of issuance. Interest shall accrue to any delinquent balance at the maximum rate permitted by law, not to exceed 1.5 per cent per month. In the event that a bill remains unpaid for sixty or more days after the date of issuance, Professor Lake shall have the unrestricted right to resign from performing additional services for the client-attorney on any and all cases that Professor Lake is working on for the client-attorney's firm.  **Payments shall be made to Hierophant Enterprises, Inc., FEIN # 65-0855805.**

**Communications:**  Hard copies of materials and payments should be sent to:

Hierophant Enterprises, Inc.
c/o Peter Lake
8903 River Preserve Drive
Bradenton, FL  34212

Email communications should be sent to:

plake4@me.com and jlake@hierophantenterprises.com

Phone calls should be directed to:

Peter Lake's cell (941) 544-3361 or Jennifer Lake's cell (941) 961-4575

**Qualifications:** The client-attorney has had the opportunity to investigate and verify Professor Lake's credentials, and agrees that Professor Lake is qualified to perform the services described above.  Professor Lake is a court-qualified expert in legal education matters (testified at trial in 2011).